**FILED**
U.S. Bankruptcy Appellate Panel
of the Tenth Circuit

**April 3, 2018**

**Blaine F. Bates**
**Clerk**

PUBLISH

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE TENTH CIRCUIT

---

| | |
|---|---|
| IN RE FRED DALE VAN WINKLE,<br><br>Debtor. | BAP No. NM-17-031<br>BAP No. NM-17-032<br>BAP No. NM-17-033 |
| TAMMY SPRAGUE, personal representative of the estate of Fred Dale Van Winkle,<br><br>Plaintiff – Appellee,<br><br>v.<br><br>JOHN WILLIAMS, ELLEN B. WILLIAMS, and BELLEVIEW VALLEY LAND CO., INC.,<br><br>Defendant – Appellants. | Bankr. No. 13-11743<br>Chapter 7<br><br><br><br>OPINION |

---

Appeal from the United States Bankruptcy Court
for the District of New Mexico

---

W.T. Martin, Jr. (Jennie D. Behles, Albuquerque, New Mexico with him on the brief) of Martin, Dugan & Martin, Carlsbad, New Mexico, Attorneys for Defendant – Appellants.

R. "Trey" Arvizu, III Las Cruces, New Mexico, Attorney for Plaintiff – Appellee.

---

Before **KARLIN**, Chief Judge, **NUGENT**, and **MOSIER**, Bankruptcy Judges.

---

**KARLIN**, Chief Judge.

John Williams, Ellen Williams, and Belleview Valley Land Co., Inc. (the "Appellants") appeal three bankruptcy court rulings: (1) the *Order Denying*

Case 13-11743-t7    Doc 78-6    Filed 06/18/19    Entered 06/19/19 16:41:36 Page 1 of 23

*Motion to Dismiss for Lack of Jurisdiction*;[1] (2) the *Order Granting Partial Summary Judgment and Denying Other Relief*;[2] and (3) the *Final Judgment*,[3] which ordered Appellants to pay $50,000 in actual and punitive damages. Appellants contend the bankruptcy court erred in denying their motion to dismiss for lack of jurisdiction, failing to certify issues to the New Mexico Supreme Court, finding Appellants violated the discharge injunction and a court order, and awarding compensatory and punitive damages. Because we interpret New Mexico law to allow a judgment lien to reattach upon redemption by the owner of foreclosed property, we reverse the bankruptcy court's finding that Appellants violated the discharge injunction, affirm the finding that Appellants violated a court order, and remand for further findings regarding damages.

### I.    Facts

In 2008, Fred Van Winkle (the "Debtor") brought an action against the Appellants to quiet title in Otero County, New Mexico. Appellants counterclaimed and in 2010 ultimately obtained a money judgment against the Debtor for $261,656 (the "Judgment Lien"). Appellants filed transcripts of that judgment in Otero, Roosevelt, and Lincoln Counties, New Mexico because the Debtor owned two tracts in Otero County (one seven acre tract and one thirty acre tract—the "Otero Land"), his residence, a condominium, in Lincoln County (the "Condo"), and a one-half interest in 311 acres in Roosevelt County.

The Debtor filed this Chapter 7 proceeding in May 2013. The Debtor claimed as exempt $60,000 in equity in the Condo under New Mexico's homestead exemption. In Schedule D (Creditors Holding Secured Claims), the

---

[1]     Appellants' App. at 358.

[2]     Appellants' App. at 950.

[3]     Appellants' App. at 1051. Although the Appellants appealed the three orders separately, the Bankruptcy Appellate Panel entered an *Order Joining Appeals* on July 7, 2017. BAP ECF No. 4.

Case 13-11743-t7    Doc 78-6    Filed 06/18/19    Entered 06/19/19 16:41:36 Page 2 of 23

Debtor listed both the first mortgage on the Condo in the amount of $12,000 in favor of First National Bank of Ruidoso (the "First Mortgage") as well as the Judgment Lien.

Supports Sanctions

In September 2013, soon after receiving his discharge, the Debtor filed a motion to avoid the Judgment Lien on the Condo, seeking to avoid the lien to the extent it impaired the $60,000 homestead exemption allowed by New Mexico law. Appellants objected (as the record reveals they did at almost every turn), stating the obvious—that the Debtor could only exempt the $60,000 sought, and no more. Before the matter could be decided, the Debtor passed away (in April 2014).

The Debtor's daughter, Tammy Sprague, became the personal representative of his probate estate.[4] Sprague and the Appellants entered into a stipulated order resolving the *Motion to Avoid Judicial Lien* (the "Stipulated Order"). It valued the Condo at $100,000 and avoided the Judgment Lien to the extent it impaired the Debtor's $60,000 exemption—capping the Judgment Lien against the Condo to the remainder after payment of the First Mortgage and the $60,000 exemption.

### 1.    Foreclosure of the Otero Land

In August 2013, Appellants obtained stay relief to allow them to complete the 2010 action to foreclose the Judgment Lien against the Otero Land. In May 2014, the New Mexico court entered a final judgment of foreclosure; that judgment expressly provided that no *in personam* deficiency could be entered against the Debtor.

The appointed special master conducted a sale of the Otero Land in July 2014. Appellants Ellen and John Williams were the high bidders, credit bidding $67,000 of the Judgment Lien. The special master recorded a deed conveying the Otero Land to the Williamses. Appellants requested the New Mexico court amend

---

[4]    Even though the Debtor died in April 2014, we will continue to refer to him as "the Debtor," or as "Sprague," as appropriate for clarity.

the foreclosure judgment to specify that the deficiency judgment was then

$271,905 plus interest, after crediting the bid against the balance due (the

"Deficiency Judgment"). The Deficiency Judgment provided

> [t]he deficiency is a lien on the debtor's . . . real estate. While no
> deficiency judgment is granted on an *in personam* basis against the
> Estate of Fred Van Winkle, deceased, the lien created by the
> deficiency is collectable as provided . . . [by New Mexico law]. The
> deficiency also remains collectable by the [p]laintiffs through legal
> action, or actions, to enforce judgment liens as they may exist in
> other New Mexico counties.[5]

Appellants recorded a transcript of the Deficiency Judgment in Otero County in

August 2014 (although the only land the Debtor had owned in Otero County was

the subject of the foreclosure).

In March 2015, approximately eight months after the sale, Sprague

amended the Debtor's Schedule B (Personal Property) to add as an asset of the

bankruptcy estate the New Mexico statutory right of redemption in the Otero

Land. She then filed a motion seeking abandonment of the estate's interest in that

right of redemption. Neither Appellants nor the trustee objected, and the

bankruptcy court granted the motion. Immediately thereafter, Sprague timely filed

a petition in state court to redeem the Otero Land and deposited in the court

registry the $73,200 required by statute. Appellants responded first by asserting

Sprague was required to pay the entire remaining Deficiency Judgment to

successfully redeem. They also filed a new petition to foreclose the Deficiency

Judgment along with a motion for summary judgment. The petition to redeem

remains pending in the state court, and Appellants still hold title to the Otero

Land.

## 2.    Foreclosure of the Condo

Appellants were simultaneously trying to enforce the Judgment Lien

against the Condo. One of the Appellants, John Williams, purchased the First

---

[5]    *Amended Order Approving Special Master's Report & Granting Deficiency
Judgment* at 3-4, *in* Appellants' App. at 676-77.

-4-

Mortgage from First National Bank of Ruidoso in August 2013. In May 2015, Appellants filed a complaint in Lincoln County seeking to foreclose the First Mortgage and the Judgment Lien encumbering the Condo. The prayer for relief in the amended foreclosure complaint requested, among other things, that Williams be granted judgment on the note he claimed to have purchased for $15,034, plus "[i]nterest at the rate of 20% per annum . . . ; plus [] Late Charges . . . ; plus [] Rent in the amount of $13,650 through April 20, 2015."[6] Ultimately, Appellants prayed that the proceeds of any Special Master's sale be applied to satisfy (1) the First Mortgage to Williams; (2) the homestead exemption; and (3) "the balance of [Appellants'] judgment lien—payable to [Appellants]."[7]

### 3.    The Adversary Proceeding

Soon after the Condo foreclosure was filed, Sprague filed an adversary proceeding in the bankruptcy court alleging the Appellants violated the discharge injunction and the terms of the Stipulated Order. The parties agreed to a stay of both foreclosure actions. Appellants filed a motion to dismiss the adversary proceeding for lack of jurisdiction (the "Motion to Dismiss"),[8] which the bankruptcy court denied along with a motion to reconsider that dismissal.[9]

Sprague filed a *Motion for Partial Summary Judgment as to Liability* for violation of the discharge injunction and for failure to comply with the Stipulated

---

[6]    *Complaint for Judgment for Debt and Money Due on Promissory Note. to Foreclose Real Estate Mortgage and to Foreclose Judgment Lien* at 7, *in* Appellants' App. at 1481.

[7]    *Opinion* at 6, *in* Appellants' App. at 939.

[8]    *Motion to Dismiss for Lack of Jurisdiction*, *in* Appellants' App. at 320. Appellants argued (1) the adversary proceeding was not a core proceeding; (2) the bankruptcy court lacked jurisdiction under *Stern v. Marshall*, 564 U.S. 462 (2011); and (3) continuing in the bankruptcy court impaired Appellants' right to a jury trial. *Memorandum Opinion* at 4, *in* Appellants' App. at 349.

[9]    *Order Denying Motion to Reconsider*, *in* Appellants' App. at 620; *Memorandum Opinion*, *in* Appellants' App. at 611. The *Order Denying Motion to Dismiss for Lack of Jurisdiction* and the *Memorandum Opinion* are appealed in BAP appeal NM-17-033.

-5-

Order. Appellants responded, but also sought to rescind their agreement to stay the foreclosure cases[10] and to certify legal issues to the New Mexico Supreme.[11] The bankruptcy court entered the *Order Granting Partial Summary Judgment and Denying Other Relief* and the *Opinion* that: (1) denied certification of issues to the New Mexico Supreme Court; (2) granted partial summary judgment against Appellants for violation of the discharge injunction; (3) declined to enter summary judgment on the issue of violation of the Stipulated Order without additional factfinding; and (4) denied Appellants' motion to set aside the stay of the foreclosure actions.[12]

The bankruptcy court conducted a trial on the issue of whether Appellants violated the Stipulated Order and whether damages were warranted for violation of the discharge injunction and the Stipulated Order. In its *Final Judgment* and *Opinion*, the bankruptcy court held that Appellants had willfully violated the discharge injunction by their actions in the Otero Land foreclosure and had violated the Stipulated Order by their actions in the Condo foreclosure.[13] The bankruptcy court awarded Sprague $33,161.70 in actual damages and attorneys' fees, and $16,838.30 in punitive damages, for an even $50,000 in damages.

## II.    Appellate Jurisdiction & Standards of Review

"With the consent of the parties, this Court has jurisdiction to hear timely-filed appeals from 'final judgments, orders, and decrees' of bankruptcy courts

---

[10]    *Motion to Set Aside the Stipulated Order in Regard to Stay*, in Appellants' App. at 779.

[11]    *Petition for Certification to the New Mexico Supreme Court*, in Appellants' App. at 861.

[12]    *Order Granting Partial Summary Judgment and Denying Other Relief*, in Appellants' App. at 950; *Opinion*, in Appellants' App. at 934. These two orders are appealed in BAP NM-17-031.

[13]    *Final Judgment*, in Appellants' App. at 1051; *Opinion*, in Appellants' App. at 1037. These orders are appealed in BAP NM-17-032.

Case 13-11743-t7    Doc 78-6    Filed 06/18/19    Entered 06/19/19 16:41:36 Page 6 of 23

within the Tenth Circuit."[14] An order resolving all claims asserted in an adversary proceeding is a final order for purposes of appeal.[15] Neither party elected for these appeals to be heard by the United States District Court pursuant to 28 U.S.C. § 158(c). Accordingly, this Court has jurisdiction over these matters.

Appellate courts review the denial of a motion to dismiss for lack of subject matter jurisdiction *de novo*.[16] Similarly, a grant of summary judgment is reviewed *de novo*.[17] The denial of a motion for certification of a question of state law is reviewed for abuse of discretion.[18] Whether a creditor violated the discharge injunction is a question of law reviewed *de novo*.[19] Whether the violation of the discharge injunction was willful is a factual finding reviewed for clear error.[20] A determination that an action violated a court order is reviewed for an abuse of discretion.[21] Finally, an award of damages and attorneys' fees for

---

[14]    *Straight v. Wyo. Dep't of Trans. (In re Straight)*, 248 B.R. 403, 409 (10th Cir. BAP 2000) (quoting 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1)).

[15]    *Adelman v. Fourth Nat'l Bank & Tr. Co, N.A., of Tulsa (In re Durability, Inc.)*, 893 F.2d 264, 266 (10th Cir. 1990) ("the appropriate 'judicial unit' for application of [] finality requirements in bankruptcy is not the overall case, but rather the particular adversary proceeding . . . pursued within the broader framework cast by the petition."); *see Montgomery v. City of Ardmore*, 365 F.3d 926, 934 (10th Cir. 2004) (quoting *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1104 (10th Cir. 2002)) ("a notice of appeal which names the final judgment is sufficient to support review of all earlier orders that merge in the final judgment.").

[16]    *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004); *Smith v. Colo. Sup. Ct. (In re Smith)*, No. CO-07-028, 2007 WL 4227255, at *2 (10th Cir. BAP Dec. 3, 2007).

[17]    *Dillon v. Fibreboard Corp.*, 919 F.2d 1488, 1490 (10th Cir. 1990).

[18]    *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1235 (10th Cir. 2012).

[19]    *In re Houlik*, 481 B.R. 661, 668 (10th Cir. BAP 2012) (citing *Culley v. Castleberry (In re Culley)*, No. NM-05-105, 2006 WL 2091199, at *2 (10th Cir. BAP July 24, 2006)).

[20]    *Id.*

[21]    *In re Lucre Mgmt. Grp., LLC*, 365 F.3d 874, 875 (10th Cir. 2004) (citing *Fed. Trade Comm'n v. Kuykendall*, 312 F.3d 1329, 1333 (10th Cir. 2002)); *cf.*

(continued...)

-7-

violation of the discharge injunction or for violation of a court order is reviewed for abuse of discretion.[22]

### III. Analysis

#### 1. The Bankruptcy Court's Jurisdiction

Appellants argue the bankruptcy court erred in determining it had jurisdiction over the adversary proceeding in light of the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine "precludes federal district courts from exercising appellate jurisdiction over actually-decided claims in state courts" and "adjudicating claims inextricably intertwined with previously-entered state court judgments."[23] This is because the Supreme Court is the only federal court empowered to exercise appellate jurisdiction to reverse or modify a state court judgment.[24] As very recently clarified by the Tenth Circuit Court of Appeals in *Mayotte v. U.S. Bank, N.A.*,[25] a *Rooker-Feldman* issue only exists to the extent a federal action "tries to *modify or set aside* a state-court judgment because the

---

(...continued)
*Auto-Owners Ins. Co. v. Summit Park Townhome Assoc.*, ___ F.3d ___, Nos. 16-1348, 16-1352, 2018 WL 1559980, at *7 (10th Cir. Mar. 30, 2018) (giving deference to trial court's interpretation of its own orders (citing *Chi., Rock Island & Pac. R.R. v. Diamond Shamrock Ref. & Mktg. Co.*, 865 F.2d 807, 811 (7th Cir. 1988))).

[22]    *Peyrano v. Sotelo (In re Peyrano)*, No. EO-16-032, 2017 WL 2731299, at *3 (10th Cir. BAP June 26, 2017) (citing *Anchondo v. Anderson, Crenshaw & Assoc.*, 616 F.3d 1098, 1101 (10th Cir. 2010)) (reviewing award of attorneys' fees for abuse of discretion). Courts review the constitutionality of punitive damages *de novo*. *Culley*, No. NM-05-105, 2006 WL 2091199, at *2 (10th Cir. BAP July 24, 2006) (citing *Cooper Indus. Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 436 (2001)).

[23]    *Culley*, 2006 WL 2091199, at *2 (citing *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233 (10th Cir. 2006)) (explaining that in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005), the Supreme Court has limited the *Rooker-Feldman* doctrine to "cases brought by state-court losers complaining of injuries caused by state-court judgments.").

[24]    *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

[25]    *Mayotte v. U.S. Bank Nat'l Ass'n for Structured Asset Inv. Loan Tr. Mortg. Pass-Through Certificates, Series 2006-4*, 880 F.3d 1169, 1174 (10th Cir. 2018).

Case 13-11743-t7    Doc 78-6    Filed 06/18/19    Entered 06/19/19 16:41:36 Page 8 of 23

state proceedings should not have led to that judgment." In other words, there is a *Rooker-Feldman* issue if the federal suit alleges that a defect in the state court proceedings should invalidate the state judgment.

Applying this reasoning here, we must consider whether the success of the claims Sprague raised in the adversary proceeding was contingent upon demonstrating any prior state court judgment was reached in error. Sprague's adversary complaint sought damages for Appellants' violation of the discharge injunction under 11 U.S.C. § 542[26] and for violation of the Stipulated Order. Appellants admit no state court has made findings or entered a decision determining those issues. The only state court findings centered around whether Appellants could foreclose the Judgment Lien and the amount of the Deficiency Judgment; Sprague's complaint challenged none of those findings.

Furthermore, bankruptcy courts clearly have jurisdiction to review alleged violations of their own orders, including civil contempt matters arising out of core matters.[27] Issuing an order to enforce its own orders—the discharge order and the Stipulated Order—neither required the bankruptcy court to challenge the state court proceedings nor to set aside or unwind any state court decision as explained in *Mayotte*. Appellants argue that even if the state court had not yet issued a decision, *Rooker-Feldman* was nonetheless implicated because the parties had briefed some overlapping issues that the bankruptcy court might need to decide. They are wrong. The state court did not have the opportunity to enter a decision on those issues because the parties had agreed to stay the state court matters pending resolution of the adversary proceeding in bankruptcy court.

---

[26]    All future references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated.

[27]    *In re Skinner*, 917 F.2d 444, 447-8 (10th Cir. 1990) (concluding bankruptcy court had authority to issue sanctions for violation of automatic stay); *see also In re Unioil*, 948 F.2d 678, 682 (10th Cir. 1991) (holding "bankruptcy court had the inherent power to enforce its [own] order").

Case 13-11743-t7    Doc 78-6    Filed 06/18/19    Entered 06/19/19 16:41:36 Page 9 of 23

In light of *Mayotte*, which was issued after the parties briefed the issue, but before oral argument (at which time Appellants still argued the doctrine applicable), it is simply frivolous to argue the bankruptcy court lacked jurisdiction.[28] Accordingly, the bankruptcy court committed no error in determining it had jurisdiction over Sprague's adversary complaint.

### 2.    Certification of Issues to the New Mexico Supreme Court

"Whether to certify a question of state law to the state supreme court is within the discretion of the federal court."[29] Federal courts must "'apply judgment and restraint before certifying,' and 'will not trouble our sister state courts every time an arguably unsettled question of state law" arises.[30] Federal courts are bound to apply state law when necessary and "must determine what decision the state court would make if faced with the same facts and issue."[31]

As a preliminary matter, it is unclear whether Appellants are challenging the bankruptcy court's decision declining to certify questions, or this Court's own motions panel decision, which also denied certification. They elected not to brief the issue in their opening brief, instead incorporating by reference earlier briefing

---

[28]    Appellants argued this Court should apply *Gogola v. Zingale*, 141 F. App'x 839 (11th Cir. 2005), an unpublished decision from the Eleventh Circuit, instead of *Mayotte*.

[29]    *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988) (first citing *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974); and then citing *Holler v. United States*, 724 F.2d 104, 105-06 (10th Cir. 1983)) (affirming denial of certification of issue to New Mexico Supreme Court); *Massengale v. Okla. Bd. of Exam'rs in Optometry*, 30 F.3d 1325, 1331 (10th Cir. 1994) ("Certification of state law questions is not automatic . . . but discretionary.").

[30]    *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1235-36 (10th Cir. 2012) (quoting *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007)); *Armijo*, 843 F.2d at 407 ("Certification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law.") (citing *L. Cohen & Co. v. Dun & Bradstreet*, 629 F.Supp. 1419, 1425 (D. Conn. 1986)).

[31]    *Armijo*, 843 F.2d at 407 (first citing *Farmers All. Mut. Ins. Co. v. Bakke*, 619 F.2d 885, 888 (10th Cir. 1980); and then citing *Hartford v. Gibbons & Reed Co.*, 617 F.2d 567, 569 (10th Cir. 1980)).

-10-

on the motion made to this Court.[32] They also elected not to address the issue at
oral argument. Because Appellants have failed to sufficiently set forth the
bankruptcy court's error in denying certification, and because "[a]n issue or
argument insufficiently raised in the opening brief is deemed waived,"[33] we
decline to consider the certification argument.

### 3.    Violation of the Discharge Injunction

Appellants argue that their actions in recording the Deficiency Judgment,
after the foreclosure sale of the Otero Land, and then demanding payment in full
in response to the Debtor's petition for redemption, do not constitute
postdischarge attempts to collect a prebankruptcy debt against the Debtor,
notwithstanding the original debt's prebankruptcy origins. They base this
argument on New Mexico case law interpreting New Mexico's redemption statute
(New Mexico Statute § 39-5-18), which they claim allows judgment lienholders to
re-foreclose, on an *in rem* basis, any remaining balance due on the already
foreclosed property even after redemption by the former property owner.

In New Mexico, the holder of a money judgment can create a judgment lien
against a debtor's real property by filing a transcript of the judgment with the
clerk of the county where the real estate is located.[34] That lien can be foreclosed
"in the same manner as ordinary suits for the foreclosure of mortgages."[35] After
foreclosure, a debtor may redeem the property within nine months by paying the

---

[32]    Appellants' Br. 48 ("The issue was fully briefed and argued in the
*Motion for Certification*. For that reason, Issue III will not be further briefed.").

[33]    *Becker v. Kroll*, 494 F.3d 904, 913 n.6 (10th Cir. 2007) (citing *Headrick v.
Rockwell Int'l Corp*, 24 F.3d 1272, 1277-78 (10th Cir. 1994)); *Krumm v. Holder*,
594 Fed. App'x 497, 501 (10th Cir. 2014) (stating party waives an inadequately
briefed issue); *Mooring Capital Fund, LLC v. Knight*, 388 F. App'x 814, 823 n.4
(10th Cir. 2010) (stating where brief does not develop issue beyond cursory
identification, issue is considered waived).

[34]    N.M. Stat. Ann. § 39-1-6 (1978).

[35]    N.M. Stat. Ann. § 39-4-13 (1978).

-11-

purchaser the amounts set forth in New Mexico Statute § 39-5-18, or by filing a petition for redemption that is accompanied by payment of the same amounts to the county clerk.[36]

In *Construction Engineering & Manufacturing Co. v. Don Adams Mining Co.*,[37] the New Mexico Supreme Court held that, although a debtor need only pay the amount paid at a foreclosure sale, plus taxes, interest, and penalties, in order to redeem a foreclosed property, "[o]nce the mortgagor redeems foreclosed property, it again becomes part of his real estate and thus subject to the [prior] judgment lien and foreclosure. A foreclosure suit would then be the proper remedy to effect payment of the amount of the deficiency."[38]

In *Turner v. Les File Drywall*,[39] the New Mexico Supreme Court effectively reiterated its holding that redeemed property is again subject to a previously foreclosed judgment lien. In *Turner*, the debtor/original owner of the foreclosed property sold his right of redemption to a third party. The third party then exercised the right of redemption. When the holder of the lien tried to re-foreclose the property now owned by the third party, the state court denied the requested relief. On appeal, the New Mexico Supreme Court rejected the lienholder's argument that a debtor can assign no greater rights than he possessed, instead favoring application of the rule that the property of one is not subject to the payment of debts held by another. As a result, it held that the judgment lien would not follow the redeemed real estate if the debtor owner transferred the property (in good faith) to a third party who then redeemed it. The clear implication of this decision is that while a creditor *cannot* re-foreclose on property redeemed by a third party, that same creditor *can* re-foreclose on

---

[36]    N.M. Stat. Ann. § 39-5-18 (1978).

[37]    572 P.2d 1246 (N.M. 1977).

[38]    *Id.* at 1248. *See also* N.M. Stat. Ann. § 39-4-13 (1978).

[39]    868 P.2d 652 (N.M. 1994).

Case 13-11743-t7    Doc 78-6    Filed 06/18/19    Entered 06/19/19 16:41:36 Page 12 of 23

property redeemed by the original debtor.

To rebut these holdings, Sprague relies on § 524(a)(2), which "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such [discharged] debt as a personal liability of the debtor."[40] Sprague argued, and the bankruptcy court concluded, that when the Debtor received his discharge, that discharge intervened to eliminate any part of the judgment that was not satisfied by the first sale of the property. The bankruptcy court noted that it would not make policy sense to allow the repeated foreclosure of property postredemption, and it ultimately held that once the Debtor redeemed the property from the sale, it became "after-acquired" property. As such, Appellants could not then seek to attach the Judgment Lien to the redeemed property since it was not property owned on the date of the bankruptcy petition. From that reasoning, the bankruptcy court held that Appellants' actions to pursue collection of its Deficiency Judgment against that "after-acquired" property violated the discharge injunction.

These conclusions misapply the New Mexico Supreme Court's holdings in *Construction Engineering* and *Les File Drywall* that redeemed real property "*once again* becomes part of the mortgagor's real estate subject to prior judgment liens."[41] In New Mexico, judgment liens attach to real property acquired by a judgment debtor after the date a transcript of judgment is filed, including property lost at foreclosure but reacquired through redemption.[42] However, nothing in the New Mexico Supreme Court's interpretation of the law indicates property redeemed is newly acquired property—rather, the property "again becomes part of

---

[40]    11 U.S.C. § 524(a)(2).

[41]    *Turner*, 868 P.2d at 653 (citing *Constr. Eng'g*, 572 P.2d at 1248) (emphasis added).

[42]    *Opinion* at 10, *in* Appellants' App. at 943. *See also Const. Eng'g*, 572 P.2d at 1248.

-13-

[a debtor's] real estate."[43] While this statutory scheme, which allows repeated foreclosures, appears to conflict with New Mexico's stated public policy behind redemptions,[44] it is nonetheless the law of New Mexico.

The *Special Master's Deed* indicates title to the Otero Land passed to Appellants on July 8, 2014.[45] Sprague timely filed a petition to redeem on April 20, 2015.[46] Appellants objected to Sprague's redemption in the state court and simultaneously filed another action to foreclose the Deficiency Judgment. While Appellants were admittedly procedurally premature in seeking to re-foreclose their Deficiency Judgment, as they still held title to the Otero Land because the state court redemption proceeding was stayed pending resolution of the bankruptcy issues, their complaint did not seek collection of the discharged debt *in personam*.[47] As a result, the filing of the postredemption foreclosure action was not in violation of § 524(a)(2) because, under New Mexico law, a deficiency judgment may become a postredemption lien on the real property once properly transcribed. So long as Appellants were not seeking to hold the Debtor personally liable for the deficiency judgment, and were instead merely pursuing any remaining value in the non-exempt real estate, their actions did not constitute a

---

[43]    *Const. Eng'g*, 572 P.2d at 1248.

[44]    *See Chase Manhattan Bank v. Candelaria*, 90 P.3d 985, 987 (N.M. 2004) ("One of the purposes of the redemption statute is to give the property owner . . . a reasonable opportunity to redeem the property.") (citing *W. Bank. of Las Cruces v. Malooly*, 895 P.2d 265, 271 (N.M. Ct. App. 1995); *see also Mortg. Elec. Registration Sys., Inc. v. Montoya*, 186 P.3d 256, 258 (N.M. Ct. App. 2008) (quoting *HSBC Bank USA v. Fenton*, 125 P.3d 644, 646 (N.M. Ct. App. 2005) *superseded by statute*, N.M. Stat. Ann. § 39-5-18 (2007)) ("[T]he commonly stated purposes of statutory redemption are to encourage full value bidding at foreclosure sales and to protect mortgagors.").

[45]    Appellants' App. at 450.

[46]    *Opinion* at 5, *in* Appellants' App. at 938.

[47]    *Id.* at 6, *in* Appellants' App. at 939.

-14-

discharge violation.[48]

Nothing in the record suggests Appellants sought *in personam* relief, and in fact, the Deficiency Judgment expressly indicated it was a lien on the Debtor's real estate and "no deficiency judgment [was] granted on an in personam basis against the Estate of Fred Van Winkle."[49] We thus find that Appellants did not, in trying to enforce the Deficiency Judgment against the Otero Land, commit any "act, to collect, recover or offset any such [discharged] debt *as a personal liability of the debtor*." under § 524(a)(2). We therefore REVERSE the bankruptcy court's holding of a discharge violation. / *But Now it Would Not Be Reversed.*

### 4.    Violation of the Stipulated Order

Although we hold that Appellants did not violate the discharge injunction, we now review whether their actions taken in the Condo foreclosure violated the terms of the Stipulated Order. This question is quickly answered by a careful review of two documents: the Stipulated Order and the complaint Appellants filed in state court to foreclose Williams' first mortgage and Appellants' Judgment Lien on the Condo.[50]

The parties agreed by the terms of the Stipulated Order that the Judgment Lien was "partially avoided and attache[d] only to the extent of any value over and above the stipulated value of the [Condo] ($100,000) less the payoff of the First Mortgage less the Debtor's allowed Homestead Exemption ($60,000)."[51] In

---

[48]    *Turner*, 868 P.2d at 653; *Const. Eng'g*, 572 P.2d at 1248; *see also Dewsnup v. Timm*, 502 U.S. 410, 417-18 (1992) (explaining lien rights pass through bankruptcy unaffected).

[49]    *See Opinion* at 5, *in* Appellants' App. at 938 (quoting the *Amended Order Approving Special Master's Report & Granting Deficiency Judgment* at 3, *in* Appellants' App. at 448).

[50]    *First Amended Complaint for Judgment for Debt and Money Due on Promissory Note, to Foreclose on Real Estate Mortgage and to Foreclose Judgment Lien*, *in* Appellants' App. at 1521.

[51]    Stipulated Order at 2, *in* Appellants' App. at 121. The Order also provided
(continued...)

-15-

their prayer for relief in the subsequent foreclosure complaint, however, Appellants requested the proceeds of the foreclosure sale be distributed in the following priority: "(1) satisfaction of the [First Mortgage]-payable to John Williams;[52] (2) $60,000 for the homestead exemption-payable to the [Debtor's] Estate; and (3) the balance of [Appellants'] judgment lien-payable to [Appellants]."[53]

The bankruptcy court correctly determined that Appellants violated the Stipulated Order by requesting payment of the entire remaining balance of the Judgment Lien, instead of limiting the amount due on the First Mortgage and Judgment Lien to a combined total of $40,000, as the Stipulated Order clearly contemplated. This example illustrates the distribution contemplated by the Stipulated Order. If the Condo sold for $110,000 on the date of the foreclosure complaint (thus using the numbers in that complaint), Williams should have received approximately $20,199 on the First Mortgage (assuming no advances, etc.), the Debtor would have received the $60,000 representing the homestead exemption, the Appellant Judgment Lienholders would have received $19,801 ($100,000 stipulated value minus $20,199 then minus $60,000), and all sale proceeds in excess of $100,000—or $10,000 in this example—would have

---

[51]    (...continued)
this: "when the amount of the payoff of the First Mortgage is known, the Court will enter a further order establishing the exact amount of [Appellants'] judicial lien that can be applied against the [Condo]." *Id.* It does not appear that subsequent order has been entered.

[52]    The complaint indicated the note balance was $15,034 (purchase price), plus $5,125 interest through April 20, 2015, plus daily accrual of $8.24, plus $40 in late charges. It also generally referenced amounts advanced and attorney fees. At oral argument, Appellants counsel indicated the balance on the note now "exceeds $50,000." As an aside, Appellants also incorrectly sought a finding that on top of the principal and interest due on the note, accrued rents in the amount of $13,650 through April 20, 2015 should be added to its judgment. However, Appellants' interest in any rents is limited to security for repayment of the promissory note, not an additional obligation to be added to principal, as Appellants' counsel admitted during oral argument.

[53]    *Opinion* at 5, *in* Appellants' App. at 1041.

Case 13-11743-t7    Doc 78-6    Filed 06/18/19    Entered 06/19/19 16:41:36 Page 16 of 23

belonged to the Debtor.

Because Appellants' demand for payment of the entire remaining balance of the Judgment Lien disregarded the limitations in the Stipulated Order, the bankruptcy court correctly found Appellants in contempt of that order.

### 5.     Damages

The bankruptcy court awarded $33,161.70 in actual damages and attorneys' fees and $16,838.30 in punitive damages, for a total judgment of $50,000. The actual damages were derived from the attorneys' fees and costs itemized at trial; the bankruptcy court did not explain how it arrived at the punitive damage award. The bankruptcy court based the actual damage award on its determination that Appellants willfully violated the discharge injunction. It elected not to also assess damages for the contempt of the Stipulated Order, effectively finding that the time spent by the Debtor's counsel in prosecuting the discharge injunction essentially overlapped the time spent on the contempt of the Stipulated Order.

Appellants first argue the bankruptcy court erred in assessing any damages because no violation of the discharge or the Stipulated Order occurred. While we reverse the bankruptcy court's finding of a violation of the discharge injunction, we affirm the bankruptcy court's determination that Appellants violated the Stipulated Order, so some damage award is undoubtedly appropriate. Bankruptcy courts clearly have the power to enter monetary sanctions against a party for civil contempt,[54] and the amount of sanctions awarded for civil contempt is reviewed for abuse of discretion.[55]

---

[54]     *In re Skinner*, 917 F.2d 444, 448 (10th Cir. 1990) (holding bankruptcy courts may impose sanctions for civil contempt to compel compliance with a court order or compensate parties for losses caused by noncompliance pursuant to § 105); *In re Scrivner*, 535 F.3d 1258, 1265 n.3 (10th Cir. 2008) (same).

[55]     *Auto-Owners Ins. Co. v. Summit Park Townhome Assoc.*, ___ F.3d ___, Nos. 16-1348, 16-1352, 2018 WL 1559980, at 8 (10th Cir. Mar. 30, 2018) (holding abuse of discretion standard requires appellate court to "consider whether the [trial] court's determination appears reasonable in light of the

(continued...)

Appellants next argue the bankruptcy court erred in awarding any fees without receiving expert testimony regarding the reasonableness of the attorneys' hourly rates and hours billed. We reject this argument as Appellants neither objected to the reasonableness of the itemized hours nor to the $200-225 hourly rate sought. Instead, in their post-trial brief, they argued that the reasonableness of fees must be shown through expert testimony, and because no such testimony was received, no fees could be allowed.

The bankruptcy court is authorized "to independently determine reasonable fees" under the Bankruptcy Code.[56] As a result, we see no reason why expert testimony is necessary for the court to determine whether the attorneys' fees were reasonable in this case. This is especially the case when the objecting party fails to object to either any specific time entries or to the hourly rate.

Appellants also argue the bankruptcy court did not have jurisdiction to award actual damages for Sprague's time, instead arguing her fees should be determined by the probate court.[57] We disagree. First, because her time was incurred in prosecuting the adversary filed in the bankruptcy court, the bankruptcy court was in the best position to determine what fee should be allowed. Second, awarding fees for that personal representative's time in the

---

[55]    (...continued)
complexity of the case, the number of strategies pursued, and *the responses necessitated by the other parties maneuvering.* But we do not require the [trial] court to identify and justify every hour allowed or disallowed.") (emphasis added) (citations omitted) (first citing *AeroTech, Inc. v. Estes,* 110 F.3d 1523, 1528 (10th Cir. 1997); and then citing *Malloy v. Monahan,* 73 F.3d 1012, 1018 (10th Cir. 1996))).

[56]    *In re Market Ctr. E. Retail Prop., Inc.,* 730 F.3d 1239, 1246 (10th Cir. 2013) (citing *In re Commercial Fin. Servs., Inc.,* 427 F.3d 804, 810 (10th Cir. 2005)) (holding § 330 authorizes bankruptcy court to determine reasonableness of fees).

[57]    Appellants also claim a personal representative's compensation is "limited to the statutory rate of $35.00 a day and approximately $.50 per mile." Appellants' Br. 71. They cite no authority for this proposition, and the Court could find none.

-18-

probate estate would result in those fees being paid by the Debtor's beneficiaries out of estate assets, not by Appellants—the parties responsible for so much unnecessary time and labor their actions caused the probate estate's representative.

The bankruptcy court has discretion to enter monetary sanctions for contempt of the Stipulated Order, and it is competent to determine whether the damages originally awarded, including attorneys' fees and the representative's costs and fees, remain reasonable, upon remand, in light of these holdings.[58] But because we reverse the bankruptcy court's finding that Appellants violated the discharge injunction, and the bankruptcy court did not make specific findings for damages related solely to the violation of the Stipulated Order, we remand for the calculation of actual and punitive damages resulting only from Appellants' contempt of the Stipulated Order.

Finally, specifically with regard to punitive damages, we do not suggest—by noting the bankruptcy court did not indicate how the punitive damage award was arrived at—that the bankruptcy court's decision to award punitive damages was in error. We agree that the record is replete with examples where positions taken by the Appellants appeared to be an unnecessarily relentless pursuit to collect the Judgment Lien, often without regard to the law or the practicalities of litigation.

This Court identified, in a thorough review of the record on appeal, numerous actions that support the bankruptcy court's conclusion that Appellants were "litigious" and "aggressive," including: the premature filing of the second foreclosure on the Otero Land prior to the state court declaring the redemption

---

[58]    *In re Skinner*, 917 F.2d 444, 448 (10th Cir. 1990); *see  Commercial Fin. Servs.*, 427 F.3d at 810  (citing *In re Miniscribe Corp.*, 309 F.3d 1240, 1244 (10th Cir. 2002)) ("bankruptcy courts have wide discretion in awarding compensation to attorneys, trustees, and professionals so long as it is reasonable.").

DELAY

effective and while it still held title; improperly delaying the redemption process by arguing Sprague must pay the entire amount due on the First Mortgage to properly redeem, which was clearly unsupported by state law;[59] seeking rents in addition to the balance of the First Mortgage on the Condo when not entitled to do so under the loan documents; seeking a writ of mandamus from the United States District Court for the District of New Mexico to obtain a ruling on the *Rooker-Feldman* jurisdictional issues when it was clear that doctrine was not applicable;[60] continuing to assert that the bankruptcy court lacked jurisdiction when the disputes clearly involved violations of the discharge order and contempt of the bankruptcy court's own order, none of which had been decided by the state court; originally arguing, against clear Tenth Circuit authority, that the Debtor's estate lost its homestead exemption upon the Debtor's post-petition death;[61] agreeing to a stipulation as to the Condo and then attempting to set the agreement aside; and agreeing to stay the state court foreclosures and then attempting to set that agreement aside. Even in this Court, Appellants submitted a voluminous (1,679 pages), internally redundant, and mostly unnecessary record on appeal.

Accordingly, by remanding, we only suggest this Court is unable to ascertain how the bankruptcy court arrived at the punitive damage award and whether the amount remains appropriate in light of our reversal of the bankruptcy

---

[59]    *Exhibit E, Plaintiffs' Motion for Summary Judgment to Foreclose Judgment Lien and Supporting Brief* at 16, *in* Appellants' App. at 278.

[60]    While Appellants' argument to the bankruptcy court that it did not have jurisdiction over clearly core matters–the discharge injunction and enforcement of its own orders–was in itself a stretch, seeking a writ of mandamus in the district court, and then continuing to assert at oral argument that this Court should follow Eleventh Circuit precedent instead of binding Tenth Circuit precedent (*Mayotte v. U.S. Bank Nat'l Ass'n for Structured Asset Inv. Loan Tr. Mortg. Pass-Through Certificates, Series 2006-4*, 880 F.3d 1169, 1174 (10th Cir. 2018)), is even more troubling.

[61]    *Order Regarding to Motion to Avoid Judicial Lien and Setting Scheduling Conference* at 1-2, *in* Appellants' App. at 110-11. *See Mansell v. Carroll*, 379 F.2d 682, 684 (10th Cir. 1967) (holding exemptions are fixed on date of filing petition); *Grattan v. Trego* 225 F. 705 (8th Cir. 1915) (holding debtor's estate entitled to homestead exemption after death).

-20-

court's finding that Appellants also violated the discharge injunction with its actions regarding the Otero Land.[62] Because we remand for a recalculation of damages, we do not further review the award of punitive damages.

### 6.    Abandonment

To the extent Appellants allege Sprague acted in bad faith by obtaining an order abandoning the right of redemption for lack of value and then redeeming the Otero Land, we dismiss these allegations outright. Appellants and the Chapter 7 Trustee had the opportunity to object to the abandonment if they believed the property had value to the estate; neither elected to do so. And given the years of litigation surrounding that property, Appellants are hard-pressed to argue they were unaware of its value when faced with that motion to abandon.

It is also well settled that property may be burdensome to the bankruptcy estate despite retaining some value—especially when the asset at issue is embroiled in litigation, as it was here.[63] The Chapter 7 Trustee clearly did not believe the right of redemption retained any value for the estate, as evidenced by the filing of his final report,[64] noting that the Judgment Lien encumbered the Otero Land—which lien, by then, Appellants claimed exceeded $271,905, and for which land they only bid $67,000 at the foreclosure sale. It is this kind of

---

[62]    *See e.g. BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996) (explaining to meet due process requirements regarding notice of the severity of potential penalty, an award of punitive damages must not be excessive). *See also Diviney v. Nationsbank of Texas, N.A. (In re Diviney)*, 225 B.R. 762 (10th Cir. BAP 1998) (holding a court should both analyze, in determining whether punitive damages are warranted, whether a party acted with actual knowledge (or reckless disregard) that he was violating a federally protected right and the nature of the defendant's conduct, his ability to pay, his motives, and whether there was provocation by the debtor).

[63]    *In re Eurogas, Inc.*, 560 B.R. 574, 585-86 (Bankr. D. Utah 2016) (finding Chapter 7 Trustee exercised reasonable business judgment in determining asset involved in litigation was burdensome to the estate).

[64]    *Chapter 7 Trustee's Final Account and Distribution Report Certification that the Estate has been Fully Administered and Application to be Discharged*, in Appellants' App. at 141; *Order Approving Trustee's Final Report, Court Costs, and Trustee's Commission and Expenses*, in Appellants' App. at 139.

-21-

Case 13-11743-t7    Doc 78-6    Filed 06/18/19    Entered 06/19/19 16:41:36 Page 21 of 23

allegation that furthers our finding that Appellants seem willing to make most any argument, regardless of its merits, to impede the Debtor's—and now his probate estate's—opportunity for the fresh start anticipated by the Bankruptcy Code.

## 7.    Appeal-related attorney fees.

The last issue we address concerns Sprague's prayer for appeal-related attorney fees. The Tenth Circuit has held that a prevailing party on appeal is not automatically entitled to an award of appeal-related attorney fees. Generally, the Tenth Circuit looks to see if attorneys' fees are allowed by a specific statute, and in the absence of a statutory provision, a party must make a specific application for appeal-related attorneys' fees.[65] In either case, the decision to award appeal-related attorneys' fees falls within the appellate court's discretion. If the court determines such fees are appropriate, it may then remand to the trial court the determination of the appropriate amount of fees.[66]

This Court denies Sprague's general request for appeal-related attorneys' fees for three reasons: (1) there is no explicit statutory provision entitling her to appeal-related attorneys' fees; (2) there was no separate application for fees as required; and (3) she is not the prevailing party on a significant issue that requires remand.

## IV.    Conclusion

Because we find that New Mexico redemption law mandates it, we REVERSE the bankruptcy court's determination that Appellants violated the discharge injunction. And although we AFFIRM the bankruptcy court's

---

[65]    *Crumpacker v. Kan. Dept. of Human Res.*, 474 F.3d 747, 755 (10th Cir. 2007) (quoting *Hoyt v. Robson Cos.*, 11 F.3d 983, 985 (10th Cir. 1993) (holding the district court does not have jurisdiction to award appeal-related attorneys' fees without a remand to do so)); Fed. R. Bankr. P. 8020(a) ("If the . . . BAP determines that an appeal is frivolous, it may, after a *separately filed motion or notice* from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee.") (emphasis added).

[66]    *Hoyt*, 11 F.3d at 985.

-22-

determination that Appellants violated the Stipulated Order, we REMAND the award of actual and punitive damages to the bankruptcy court to determine what damages are attributable to the violation of the Stipulated Order.

Case 13-11743-t7    Doc 78-6    Filed 06/18/19    Entered 06/19/19 16:41:36 Page 23 of 23