UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

FRED DALE VAN WINKLE,

Case No. 13-11743 t7

Debtor.

TAMMY SPRAGUE, personal representative
of the estate of FRED DALE VAN WINKLE,

Plaintiff,

v.

Adv. No. 15-01047 t

JOHN WILLIAMS,
ELLEN B. WILLIAMS, and
BELLEVIEW VALLEY LAND CO., INC.,

Defendants.

## OPINION

Before the Court are various motions related to plaintiff's claim that defendants violated the discharge injunction and a court order when they took action, post-discharge, to foreclose judgment liens. Plaintiff seeks summary judgment on liability, and also asks the Court to sanction defendants for their unsuccessful attempt to challenge the Court's jurisdiction. Defendants seek to, inter alia, conduct more discovery, certify an issue to the New Mexico Supreme Court, and return to state court to litigate others issues. Partial summary judgment in Plaintiff's favor is appropriate, as undisputed facts establish a violation of the discharge injunction. All other requested relief will be denied or deferred.

I.  FACTS

1.  The Original State Court Action.

In 2008, Fred Van Winkle brought an action in the Twelfth Judicial District Court, Otero

Case 13-11743-t7   Doc 78-7   Filed 06/18/19   Entered 06/19/19 16:41:36 Page 1 of 17

County, New Mexico (the "State Court") against Belleview Valley Land Co., John Williams, and Ellen B. Williams, commencing cause no CV-2008-76. Defendants filed a counterclaim.

On August 13, 2010, Defendants obtained a money judgment against Van Winkle for $243,944.31 (the "Original Judgment"). This amount was augmented on February 4, 2011 by a $17,711.93 award of attorney fees and costs.

Defendants filed transcripts of judgment in Otero and Lincoln Counties on August 17, 2010, creating judgment liens on Van Winkle's real estate in those counties. At the time Van Winkle owned, inter alia, the following real estate:

> A tract of land in the Northeast Quarter (NE ¼) of Section 24, T15S, R9E, NMPM, Otero County, New Mexico, described metes and bounds as follows:
>
> Beginning at the East One-Quarter corner (E ¼) of Section 24 and going S 89 degrees 51 minutes 38 second W along the East/West centerline of said Section 24, a distance of 1525.75 feet; Thence N 00 degrees 37 minutes 16 second W, a distance of 858.92 feet; Thence S 89 degrees 50 minutes 08 seconds E, a distance of 1531.80 feet; Thence S 00 degrees 13 minutes 11 seconds East, a distance of 850.76 feet to the said place of beginning
>
> and
>
> Lot 5, Ranch's of Riata, Otero County, New Mexico, as shown on plat Book 65, Page 21, records of Otero County, New Mexico.
>
> and
>
> Any additional land within the Ranch's of Riata less lots 1, 2, 3, 4, 6, 7, 8, 9, 19, 11, 12, 13, 14, 15, 16
>
> Included in this conveyance is that certain Well and all water rights appurtenant thereof which is located on the above-described property

(the "Subdivision Property"); and

> Apartment 11, Building D, Palisades Condominium Project, Phase II, Ruidoso, Lincoln County, New Mexico, as shown by the plot plan thereof filed in the office of the County Clerk and Ex-Officio Recorder of Lincoln County, New Mexico, August 16, 1973 in Tube No. 490 and as further set forth, established and identified by those certain declarations, recorded in Miscellaneous Book 40, pages 967 to 993,

-2-

000829    54203000830014

both inclusive; together with said apartment's undivided interest in the common area and facilities attributable thereto; subject to easements, reservation, and restrictions of record. (Common address is 704 White Mountain Palisades #11, Ruidoso, New Mexico 88345)

(the "Condominium").

2. The Subdivision Foreclosure Action.

On December 16, 2010, Defendants filed a complaint in State Court to foreclose their judgment lien on the Subdivision Property, commencing CV-2010-01054 (the "Subdivision Foreclosure Action").

3. The Bankruptcy Case.

Van Winkle filed this chapter 7 case on May 21, 2013. Defendants received notice of the bankruptcy filing.

On Van Winkle's Schedule A, he listed several parcels of real property, including the Subdivision Property and the Condominium.

Van Winkle lived in the Condominium when he filed bankruptcy, and he claimed $60,000 of the equity in the Condominium as exempt under New Mexico's homestead exemption, N.M.S.A. § 42-10-9. The Condominium is encumbered by a first mortgage, held at that time by First National Bank of Ruidoso.[1] The Condominium also is encumbered by Defendant's judgment lien.

On August 26, 2013, the Court granted Van Winkle a chapter 7 discharge (the "Discharge Order"). Defendants were aware of the Discharge Order.

4. The Stipulated Order.

On September 23, 2013, Van Winkle filed a motion in this Court to avoid Defendants'

---

[1] On August 6, 2013, Defendant John Williams bought the first mortgage loan.

-3-

judicial lien on the Condominium, arguing that the lien impaired his homestead exemption. Defendants responded on October 8, 2013.

Van Winkle died on April 28, 2014. His daughter, Tammy Sprague, was appointed as the personal representative of his probate estate.

On November 14, 2014, the Court ruled that Van Winkle's death did not affect his heirs' ability to exempt the Condominium or avoid the judicial lien. Sprague and Defendants thereafter entered into a Stipulated Order Resolving Motion to Avoid Judicial Lien of Belleview Valley Land Co., John Williams and Ellen B. Williams (the "Stipulated Order"). The Stipulated Order, entered January 27, 2015, provides in part:

[Finding #] 6. The parties have agreed that the Property shall be valued at $100,000 for purposes of determining the extent of Creditors' judicial lien.

[Decretal ¶] 1. The transcript of judgment lien of Creditors attached as Exhibit "A" hereto is hereby partially avoided and attaches only to the extent of any value over and above the stipulated value of the Property ($100,000) less the payoff of the First Mortgage less the Debtor's allowed Homestead Exemption ($60,000).

[Decretal ¶] 2. When the amount of the payoff of the First Mortgage is known, the Court will enter a further order establishing the exact amount of the Creditors' judicial lien that can be applied against the Property.

On March 20, 2015, Plaintiff filed a motion to compel the trustee to abandon the Condominium and the Subdivision Property right of redemption. The Court entered an order on April 15, 2015, deeming both assets abandoned.

5.   Completion of the Subdivision Property Foreclosure.

On December 4, 2013, the Court entered an order modifying the automatic stay so Defendants could complete the Subdivision Foreclosure Action. On May 22, 2014, the State Court entered a final judgment foreclosing Defendants' judgment lien on the Subdivision Property. The judgment provided that, in the event of a deficiency, the Court could not enter a deficiency

-4-

judgment against Van Winkle individually.

A special master held a sale of the Subdivision Property on July 8, 2014.[2] Defendants John and Ellen Williams were the high bidders, credit bidding $67,000 of their judgment. A special master's deed conveying the Subdivision Property to the Williamses was recorded July 25, 2014.

On July 28, 2014, the State Court entered an Amended Order Approving Special Master's Report & Granting Deficiency Judgment, which included a deficiency judgment of $271,905.61, plus 8.75% interest. The amended order, submitted by Defendants, provides:

> The deficiency is a lien on the debtor's ... real estate. While no deficiency judgment is granted on an in personam basis against the Estate of Fred Van Winkle, deceased, the lien created by the deficiency is collectable as provided ... [by New Mexico law]. The deficiency also remains collectable by the plaintiffs through legal action, or actions, to enforce judgment liens as they may exist in other New Mexico counties.

Defendants recorded a new transcript of judgment in Otero County on August 8, 2014.

6. Redemption of the Subdivision Property. On April 20, 2015, Plaintiff filed in the Subdivision Foreclosure Action a petition to redeem the Subdivision Property. She deposited $73,200.94 in the state court registry.

On May 14, 2015, Defendants filed: (i) a response to the petition for redemption, (ii) a complaint to foreclose their deficiency judgment lien on the redeemed Subdivision Property, and (iii) a motion for summary judgment of foreclosure. In these documents Defendants took the position that Plaintiff's right of redemption was subject to Defendants' right to full payment of the deficiency judgment, and/or their right to foreclose the remaining judgment lien on the redeemed property.

---

[2] The day before the scheduled sale, Plaintiff granted an ingress and egress easement to a third party. The State Court voided the easement and enjoined the third party from entering the Subdivision Property. The easement apparently was a gambit to delay foreclosure.

-5-

000829                              54203000830032

Case 13-11743-t7    Doc 78-7    Filed 06/18/19    Entered 06/19/19 16:41:36 Page 5 of 17

The redemption remains pending in State Court, and Defendants still have title to the Subdivision Property.

7. The Condominium Foreclosure.

On May 19, 2015, Defendants filed a complaint in the Twelfth Judicial District Court, County of Lincoln, commencing CV-2015-00065 (the "Condominium Foreclosure Action"). The prayer for relief states:

> The sequence for payment from the proceeds received at a Special Master's sale are (1) satisfaction of the Note and Mortgage-payable to John Williams; (2) $60,000 for homestead exemption-payable to the Estate; and (3) the balance on the BVL and Williams judgment lien-payable to BVL and Williams.

8. The Adversary Proceeding.

On June 24, 2015, Plaintiff filed this adversary proceeding. She asserts Defendants' positions taken after Plaintiff filed her petition for redemption violated the discharge injunction. Plaintiff also asserts Defendants violated the Stipulated Order by the relief requested in the Condominium Foreclosure Action. Plaintiff asked to enjoin the both foreclosure actions pending the outcome of this proceeding.

The parties stipulated to entry of an injunction on June 30, 2015, enjoining further litigation in the foreclosure actions (the "Injunction"). The Injunction provides that either party may ask the Court modify it at any time.

On August 7, 2015, Defendants sought to dismiss the adversary proceeding, arguing lack of subject matter jurisdiction. The Court denied the motion and a subsequent motion to reconsider.

9. The Pending Motions.

Plaintiffs filed a motion for summary judgment on liability for violating the discharge injunction, and a motion seeking Rule 11 sanctions, arguing Defendants' jurisdictional challenge was frivolous. Defendants filed motions to: (i) set aside the Injunction and allow them to try the

-6-

issues in State Court; (ii) compel discovery responses; and (iii) certify legal issues to the New Mexico Supreme Court (the "NMSC"). The Court took all of the motions under advisement.

## II. DISCUSSION

### A. Certification.

The key issue in this dispute is whether Defendants violated the discharge injunction by taking action to collect their deficiency judgment after Plaintiff sought to redeem the Subdivision Property. Defendants asks the Court certify that question to the NMSC pursuant to N.M.S.A. § 38-7-4 and N.M.R.A. § 12-607 rather than ruling on summary judgment. Those sections allow the NMSC to answer a question certified to it by a court of the United States if the answer is determinative of a pending issue and there is no controlling state law on point. *Id.*

The decision to certify rests in the sound discretion of the trial court. *Albert v. Smith's Food & Drug Centers, Inc.*, 356 F.3d 1242, 1254 n.7 (10th Cir. 2004). Courts must "apply judgment and restraint before certifying," and should not do it "every time an arguably unsettled question of state law" arises. *Colony Ins. v. Burke*, 698 F.3d 1222, 1235-6 (10th Cir. 2012). *See also Kan. Judicial Review v. Stout*, 519 F.3d 1107, 1119 (10th Cir. 2008) ("Absent some recognized public policy or defined principle guiding the exercise of the jurisdiction conferred, federal courts bear a duty to decide questions of state law when necessary to render a judgment"). The issue must be "sufficiently novel that [the Court] feel[s] uncomfortable attempting to decide it without further guidance." *Pino v. U.S.*, 507 F.3d 1233, 1236 (10th Cir. 2007).

The Court sees no reason to certify any issue in this case to the NMSC. As discussed below, state law is reasonably clear about whether a judgment lien attaches to redeemed property. The novel issue is whether, and how, the discharge injunction changes the analysis. This Court is in as good a position as the NMSC to analyze the interplay between state and federal bankruptcy

-7-

54203000830041

law. The motion to certify will be denied.

B. Summary Judgment Standards.

Summary judgment is appropriate if the pleadings, discovery papers, admissions, and any affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Rule 56 applies in adversary proceedings. *See* Fed. R. Bankr. P. 7056. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and ... [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant carries this burden, Rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *F.D.I.C. v. Lockhaven Estates, LLC*, 918 F. Supp. 2d 1209, 1231 (D.N.M. 2012) (citing *Celotex*). Further, the party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) (citing *Celotex*, 477 U.S. at 324).

To deny a motion for summary judgment, genuine fact issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A mere "scintilla" of evidence will not avoid summary judgment. *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993). Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party. *See Anderson*, 477 U.S. at 251; *Vitkus*, 11 F.3d at 1539.

C. Additional Discovery.

As an initial matter, Defendants ask the Court to defer ruling on summary judgment to allow them to conduct additional discovery under Rule 56(d). That rule requires the nonmovant

-8-

000829    54203000830041

to identify by affidavit "the probable facts not available and what steps have been taken to obtain these facts." *F.D.I.C. v. Arciero*, 741 F.3d 1111, 1116 (10th Cir.2013). No such affidavit was proffered, so the request will be denied.

D. <u>Did Defendants' Actions After Plaintiff Sought to Redeem the Subdivision Property Violate the Discharge Injunction</u>?

1. <u>The Discharge Injunction</u>. Section 524(a)(2)[3] provides that a bankruptcy discharge:

> operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

In other words, the discharge injunction "prohibits efforts to collect a [prepetition] debt *as a personal liability of the debtor*[.]" *In re Paul*, 534 F.3d 1303, 1309 n. 6 (10th Cir. 2008) (emphasis in original) (citing 11 U.S.C. § 524(a)).

There is no private right of action under § 524(a)(2) when a creditor violates the discharge injunction. *In re Otero*, 498 B.R. 313, 319 (Bankr. D.N.M. 2013) (surveying the case law). The remedy lies in contempt proceedings, in which the Court may assess sanctions pursuant to § 105(a). *Paul*, 534 F.3d at 1306-1307 ("Under 11 U.S.C. § 105(a), bankruptcy courts have the equitable power to enforce and remedy violations of substantive provisions of the Bankruptcy Code, including in particular the discharge injunction in § 524(a)(2)... Thus, a bankruptcy court may sanction a party for violating the discharge injunction....").

Certain actions, such as collection calls, are facially impermissible and plainly prohibited by § 524(a)(2). *In re Montano*, 488 B.R. 695, 708 (Bankr. D.N.M. 2013) (listing facial violations).

---

[3] Unless otherwise noted, all statutory references are to 11 U.S.C.

-9-

000829                                54203000830050

Case 13-11743-t7    Doc 78-7    Filed 06/18/19    Entered 06/19/19 16:41:36 Page 9 of 17

Commencing or continuing a lawsuit to collect a discharged debt is among the facially impermissible actions. *Id.* at 708. *See also In re Ziv*, 2014 WL 5426729 (Bankr. C.D. Cal.) (same).

2. <u>Absent a bankruptcy discharge, Defendants' judgment lien could attach to redeemed property.</u> N.M.S.A. § 39-1-6 provides that, upon entry of a money judgment, the clerk of court shall docket the judgment and, upon request, issue a transcript of judgment. The statute also provides that upon filing the transcript of judgment with a New Mexico county clerk, it becomes a lien on real property of the judgment debtor. *Id.* N.M.S.A. § 39-4-13 provides that judgment liens may be foreclosed like mortgages, with similar procedures for sale and redemption of the foreclosed property. Finally, N.M.S.A. § 39-5-18 gives foreclosed debtors a statutory right to redeem their property, in accordance with the procedures set forth therein.

Judgment liens attach to property acquired by a judgment debtor after the date the transcript of judgment is filed. N.M.S.A. § 39-1-6; *Construction Engineer. & Manu. Co. v. Don Adams Mining Co., Inc.*, 572 P.2d 1246, 1247-8 (N.M. 1978); *Chapel v. Nevitt*, 203 P.3d 889 (Ct. App. 2009). That includes property lost through a judgment lien foreclosure and reacquired via redemption. *Don Adams Mining*, 572 P.2d at 1248 ("Once the mortgagor redeems foreclosed property, it again becomes part of his real estate and thus subject to the judgment lien and foreclosure"); *Chapel*, 143 N.M. at 685 (same). *Don Adams* and *Chapel* found no reason to treat redeemed property differently than other after-acquired property. Thus, unless bankruptcy intervenes, there is no dispute that judgment lienholders may continue to pursue redeemed property to satisfy any post-foreclosure deficiency judgment.

3. <u>The bankruptcy discharge alters the analysis by cutting off lien attachment on after-acquired property.</u> Entry of a chapter 7 bankruptcy discharge discharges the unsecured portion of a judgment lien. §727(b); § 524(a). Of course, creditors may still exercise their *in rem*

-10-

000829    54203000830050

rights on their pre-discharge collateral. *Chandler Bank of Lyons v. Ray*, 804 F.2d 577, 579 (10th Cir. 1986) (secured creditor not barred by the discharge injunction from enforcing *in rem* obligation after debtor's discharge); *Paul*, 534 F.3d at 1308 n.6 ("The discharge injunction prohibits efforts to collect a debt 'as a personal liability of the debtor,' ... and thus in rem rights are not affected.").

After discharge, however, a prepetition judgment lien cannot attach to property acquired by the debtor post-discharge. *See Collier on Bankruptcy* ¶ 524.02[1] (prepetition deficiency judgment that is discharged cannot be the basis for claiming a lien on property that was not subject to the lien before bankruptcy); *In re Rourke*, 288 B.R. 50 (Bankr. E.D.N.Y. 2003); *In re Thomas*, 102 B.R. 199 (E.D. Cal. 1989); *In re Paeplow*, 972 F.2d 730, 735 (7th Cir. 1992); *In re Kitzinger*, 1999 WL 977076, at *2 (Bankr. N.D. Ill.); *In re Ogburn*, 212 B.R. 984 (Bankr. M.D. Ala. 1995). This is because once the debtor's underlying liability is discharged, the creditor is only left with whatever *in rem* rights it had pre-discharge; there is no basis for a judgment lien to attach to newly-acquired property. Thus, § 524 cuts off a judgment creditor's ordinary rights under N.M.S.A. § 39-1-6, such that the lien only attaches to property owned between the date the transcript of judgment is filed and the date the judgment debtor obtains a discharge. *Id.*

4. <u>The redeemed Subdivision Property would not be subject to the judgment lien</u>. The key point in this dispute is that property redeemed after entry of the discharge is not prepetition property. Plaintiff lost title to the Subdivision Property on July 28, 2014, when the State Court entered its amended order approving the Special master's sale. *See, e.g., Plaza Nat. Bank v. Valdez*, 745 P.2d 372, 373 (N.M. 1987) (title transfers upon entry of order approving special master's sale); *In re Milasinovich*, 2014 WL 644455, at *5 (Bankr. D.N.M.) (same). The Williamses have had title and continuous possession for two and a half years. If the State Court

-11-

000829                    54203000830069

approves Plaintiff's petition for redemption, title to the Subdivision Property would be reconveyed to Plaintiff at that time. In such an event, the Subdivision Property would be acquired post-discharge, the same as if Plaintiff had purchased it on the open market. Defendant's judgment lien could never attach.

Defendants' argument that redemption "revives" the pre-petition nature of the property, and hence their judgment lien, is unpersuasive. There is no reason to treat the redeemed Subdivision Property differently than any other real estate Plaintiff acquired post-discharge. Doing so would allow a creditor's *in rem* rights to exist in perpetuity, providing a loophole to collect discharged deficiencies. After bankruptcy, only *in rem* rights survive, and then only until the lien is foreclosed, to be replaced with a right to payment from the proceeds. *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991) (post-discharge, the mortgage holder is limited to a "'right to payment' in the form of its right to the proceeds from the sale of the debtor's property").

Defendants must have known, when they prepared their special master's sale bid, that redemption was possible.[4] If Defendants wished to avoid a "low-ball" redemption, they should have taken care to bid enough that, upon redemption, they would be satisfied with the price. Instead, Defendants are now going to great lengths to prevent the relatively straightforward working of the Bankruptcy Code and New Mexico's judgment, lien foreclosure, and redemption laws.

5. <u>The judgment lien did not attach to Plaintiff's right of redemption.</u>

Defendants may argue that their judgment lien encumbered Plaintiff's right of redemption. If so,

---

[4] The Court gathers from the evidence that Van Winkle sold the Subdivision Property to Defendants, in violation of New Mexico's Subdivision Act, N.M.S.A. § 47-6-1, *et. seq.*, for about $235,000. The State Court ordered the property reconveyed to Van Winkle (which it was), and entered a money judgment against Van Winkle for the purchase price. Thus, Defendants bid about $168,000 less at the special master's sale than they paid for the property initially.

-12-

Case 13-11743-t7    Doc 78-7    Filed 06/18/19    Entered 06/19/19 16:41:36 Page 12 of 17

the argument must be overruled. First, if Defendants were correct that judgment liens could encumber both real property and the right to redeem that property, N.M.S.A. § 39-4-13's provision allowing redemption would be eviscerated. Such an interpretation of a statute must be avoided if possible. *See* Scalia & Garner, *Reading Law* (2012), p. 63 (Fundamental principle #4: "A textually permissible interpretation that furthers rather than obstructs the document's purpose should be favored"). The New Mexico legislature set out to allow judgment debtors to be able to redeem foreclosed property, just like mortgage debtors. Under Defendants' interpretation of the statute, that right would not exist.

Second, the redemption right was inchoate until well after entry of the Discharge Order. By the time the right became substantial enough to be even arguably attachable (*i.e.* post-foreclosure), the discharge prevented Defendants' judgment lien from attaching to after-acquired property.

Finally, judgment liens only attach to real estate. N.M.S.A. § 39-1-6. No New Mexico case has ever held that a mortgagor's or judgment debtor's redemption right qualifies as real property. After foreclosure, redemption rights are akin to an option to purchase real estate. The majority rule is that such contracts do not create legal or equitable interests in land. *See* 1 Tiffany Real Property (3d ed.), § 310b, note 64 and accompanying text; *Coyle v. CIR*, 17 B.T.A. 368, 376 (U.S. Bd. Tax Appeals 1929) (citing Thompson on Real Property, vol. 5, the board held that an option does not pass to the optionee any interest in land). Because the right to redeem is not an interest in real estate, Defendants' judgment lien did not attach.

6.  **Defendants' actions violated the discharge injunction.** Defendants judgment lien did not attach to the right of redemption, was foreclosed against the Subdivision Property on July 28, 2014, and was never "revived." After entry of the discharge, Defendants

-13-

54203000830078

were enjoined from collecting the deficiency from Plaintiff and any property she acquired post-discharge. Defendants' actions in response to Plaintiff's petition for redemption therefore violated the discharge injunction.

7.  **Defendants' additional arguments are overruled.** Defendants contend that Plaintiff's discharge injunction violation claims are barred by the doctrines of issue preclusion, claim preclusion, judicial estoppel, fraud on the court, and/or waiver. Defendants also ask the Court to use its equitable powers to force Plaintiff to pay the discharged deficiency amount.[5] The Court has considered these arguments and overrules them.

E.  **Did Defendants Violate the Stipulated Order?**

Plaintiff argues that Defendants violated the Stipulated Order when, in the Condominium Foreclosure Action, they asked for all special master's sale proceeds other than $60,000 payable to Plaintiff. Plaintiff argues that a correct summary of the agreement reflected in the Stipulated Order would be:

(1)  First, sales proceeds are applied to pay the mortgage loan (now owned by John Williams);
(2)  Second, the proceeds are applied to the Plaintiff's $60,000 homestead exemption;
(3)  Third, the proceeds are applied to the judgment lien amount fixed by the Stipulated Order; and
(4)  Fourth, any remaining proceeds are paid to Plaintiff.

Plaintiff also argues that, while the exact amount of the mortgage and judgment liens is not in evidence, their sum cannot exceed $40,000. Plaintiff submits that Defendants should have asked for sales proceeds of not more than $40,000, paid in the order set out above, rather than for all proceeds in excess of $60,000.

Plaintiff's reading of the Stipulated Order may be correct. It certainly is supported by

---

[5] This request also violates the discharge injunction.

-14-

finding #6 and Decretal paragraph 2. It is arguably contradicted by Decretal paragraph #1, however. The Court declines to enter summary judgment that Defendants committed contempt by taking the position they did. The Court will take evidence before entering a judgment on the meaning of the order.

F. Motion to Set Aside Injunction.

Defendants ask the Court to set aside the Injunction and allow them to proceed with the Condominium Foreclosure Action. The request is denied. The Condominium's disposition depends on the meaning of the Stipulated Order, which the Court will construe after taking more evidence. Once the Court rules on the proper interpretation of the Stipulated Order, it likely will dissolve the Injunction so the parties can proceed in State Court.

G. Rule 11 Sanctions.

Plaintiff seeks sanctions under Bankruptcy Rule 9011, arguing Defendants' motion to dismiss for lack of jurisdiction was frivolous. Rule 9011 "requires that a pleading be, to the best of the signer's knowledge, well grounded in fact, warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and ... not interposed for any improper purpose." *Predator Intern., Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1182 (10th Cir. 2015). "Even if a legal position in a pleading is clearly contrary to current law, it is not sanctionable if the position is warranted by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." *Id.* at 1182. The Court has discretion in determining whether to award sanctions. *Id.*

In their motion to dismiss, Defendants argued that the Bankruptcy Court lacked jurisdiction to hear claims that they violated the discharge injunction and the Stipulated Order. The Court had no trouble denying the motion. However, the case involves a somewhat complex intersection

-15-

between bankruptcy and state law, and was filed in the midst of ongoing State Court litigations. For these reasons, Defendants' jurisdiction arguments, although quite weak, were not frivolous.

H.   Motion to Compel.

In light of the foregoing, the parties likely will need to reassess their discovery needs. The Court therefore will defer ruling on Defendants' motion to compel until after it conducts an additional scheduling conference.

## III.   CONCLUSION

Defendants' actions taken in response to Plaintiff's petition for redemption violated the discharge injunction. A separate partial summary judgment to that effect will be entered. The Court needs more evidence to construe the Stipulated Order. All other requested relief will be denied by separate orders.

/s/ David T. Thuma

David T. Thuma
United States Bankruptcy Judge

Entered: February 10, 2017

Copies to:

R. Trey Arvizu, III
P.O. Box 1479
Las Cruces, NM 88004

Jennie Behles
P.O. Box 7070
Albuquerque, NM 87194

-16-

000829       54203000830087

Case 13-11743-t7    Doc 78-7    Filed 06/18/19    Entered 06/19/19 16:41:36 Page 16 of 17

4. Defendants' motion to set aside the stipulated injunction, doc. 47, is denied without prejudice.

5. The Court defers its ruling on Defendants' motion to compel discovery, doc. 58 until the next scheduling conference.

6. A continued scheduling conference is set for February 27, 2017 at 9:30 a.m. on a trailing docket, in the Court's Hearing Room Courtroom, 13th Floor, Dennis Chavez Federal Building and United States Courthouse, 500 Gold Avenue, SW, Albuquerque, New Mexico 87102.

*[signature]*

David T. Thuma
United States Bankruptcy Judge

Entered: February 10, 2017

Copies to:

R. Trey Arvizu, III
P.O. Box 1479
Las Cruces, NM 88004

Jennie Behles
P.O. Box 7070
Albuquerque, NM 87194

000829    54203000830096

Case 13-11743-t7    Doc 78-7    Filed 06/18/19    Entered 06/19/19 16:41:36 Page 17 of 17