# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW MEXICO

In Re Fred Dale Van Winkle,
    Debtor,

Tammy Sprague, personal representative
of the estate of Fred Dale Van Winkle,
    Plaintiff-Appellee,

v.

John Williams, Ellen B. Williams, and
Belleview Valley Land Co., Inc.,
    Defendants-Appellants.

Bankr. No. 13-11743
Adv. No 15-01047
Chapter 7

## RESPONSE TO MOTION TO REOPEN CASE

COME NOW, John Williams, Ellen B. Williams and Belleview Valley Land Co., Inc. *(collectively, "Defendants")*, and file this Response to the Motion to Reopen filed by **Brian Van Winkle and Tammy Sprague** ("*Movants*") on November 19, 2019 (the "*Motion*") and show:

## I. SUMMARY OF RESPONSE

This Court closed this case on June 18, 2019. Thereafter, Brian Van Winkle ("*Brian*") filed his motions requesting intervention as personal representative for the Estate of Fred Van Winkle (the "*Estate*"), removal and/or and stay of the district proceeding. This Court denied those Motions. In its Order dated August 8, 2019, this Court ruled it was "powerless to grant relief to the movant." This Court ruled the opinion of the Bankruptcy Appellate Panel ("*BAP*") is "the law of the case" and, "if, as it appears, the state court is simply implementing the ruling of the

Bankruptcy Appellate Panel, then it is doing no more than what it is bound to do." (*Order*, 8/8/19). Notably, the hearing that Brian was trying to stop was the very hearing that resulted in the orders that are now the subject of this Motion to Re-open. If this Court was powerless to prevent the hearings (which it was), this Court certainly lacks power now to contest the rulings from that hearing.

The BAP ruled the redemption right was not an estate asset and the Defendants, in trying to enforce the Deficiency Judgment against the Otero Land, did not commit any "act to collect, recover or offset any such [discharged] debt *as a personal liability of the debtor.*" (See Ex. 7, p. 11). Notably, the BAP Opinion italicized those last 7 words. To violate the bankruptcy stay, the creditor must seek to collect "as a personal liability of the debtor." The BAP found the motions and actions of the Defendants in State Court did not seek recovery "personally," in part, because Defendants consistently included requests in their pleadings that any judgment be "*in rem.*" In their subsequent pleadings in the two state court actions (Otero and Lincoln County), Defendants have been very careful to include language in all pleadings that they only seek "*in rem*" relief, not personal. Nevertheless, Movants again request that this Court revisit the rulings by the BAP, under the guise of another adversary proceeding.

Brian tried for months to find counsel to file another action in this Bankruptcy Court. He failed, with each attorney telling him the claims are erroneous. (See Ex. 7). Now, he somehow found a new attorney, Joel Gaffney, who apparently is willing to file an adversary proceeding against, not only Defendants, but also one of their attorneys, Kenneth Dugan. Movants seek to join

Mr. Dugan for the allegedly [outrageous?] conduct of actually drafting an order in a pending litigation matter - something every litigator does hundreds of times.[1] Mr. Dugan was merely seeking to "implement the ruling of the Bankruptcy Appellate Panel, [which he] is bound to do." (Order, 8-8-19).

The claims related to Mr. Dugan's conduct are pleaded "on information and belief." In fact, that information and belief is simply wrong. The State Trial Court - not Mr. Dugan - drafted the allegedly offensive language. Regardless, there simply is no basis in fact or law to re-open this case and rule that that the discharge injunction has been violated.

This Court may only re-open a case if the moving party has standing and the court has jurisdiction and authority to conduct the business being requested. In fact, standing, jurisdiction and authority are lacking. Accordingly, the Motion should be denied. Notably, the matters Movants seek to raise are up on appeal in the New Mexico Court of Appeals. That court has prior and primary jurisdiction of those matters, and the *Rooker-Feldman* doctrine likely precludes jurisdiction herein. This Court should not (and probably cannot) wrestle jurisdiction away from the Court of Appeals. Even if it could, there simply is no relief that could be granted to Movants herein, and the motion should be denied.

"The discharge prohibits prepetition creditors only from collecting their prepetition debts. It is not a lifelong shield against other acts—including

---

[1] Counsel for the Movants recently indicated by e-mail that, if the Court grants the Motion, he will likely not sue Mr. Dugan personally. However, Movants have not amended their Motion or proposed Complaint. Accordingly, this Response must address the original pleading. Defendants did, however, remove their request for sanctions in this Response as a result of opposing counsel's promise.

assertions of claims, and litigation—by those same creditors." *In re Schlichtmann*, 375 B.R. 41, 97 (Bankr. D. Mass. 2007).

## II. SUMMARY OF STATE COURT PROCEEDINGS

A brief procedural history of the state court proceedings may be helpful:

From June 30, 2015 through August 8, 2018, the state court proceedings were stayed pending this Court's review of the discharge injunction challenges to the Defendant's actions in state court. Following the BAP ruling in this case, on August 8, 2018, this Court entered its Order Terminating Automatic Stay. **Based on the stipulation of the parties**, this Court terminated the agreed, automatic stay to permit the parties to "complete the state court litigation and have a final determination of the rights of the parties vis-à-vis each other therein." (Exhibit 17). The parties expressly "stipulated," and this Court entered an order, allowing the state court to resolve the "pending state court matters in Otero County and Lincoln County." (Id.).

Accordingly, the State District Court Judge Counts again resumed the Otero and Lincoln County suits. In the Otero County suit, Judge Counts ruled the Estate of Fred Van Winkle had redeemed the real property and would be entitled to issuance of a certificate of redemption upon payment of the additional sums owing -- beyond the initial redemption payment. Judge Counts provided the Estate time to request the final hearing and pay the additional owing sums. The Estate subsequently chose not to pay the additional sums and, instead, to forfeit the redemption. Judge Counts ruled the Estate's payment for the redemption into the registry was unconditional and irrevocable under New Mexico state law.

Because the Estate voluntarily forfeited its redemption, Judge Counts was forced to decide under New Mexico law who was entitled to receive the redemption funds, which were paid into the Court's registry after the bankruptcy discharge. Judge Counts ruled the purchasers at the foreclosure sale were entitled to the redemption funds. *(It is that ruling that forms the basis of this Motion.)* Following issuance of the final judgment by Judge Counts, the Estate appealed to the New Mexico Court of Appeals. That case is now pending on appeal.

The Lincoln County suit also resumed. To avoid any issues that the suit involved violations of the discharge injunction, Defendants requested approval from counsel and the Court to amend the Complaint to expressly state that all relief was "in rem." On April 29, 2019, Judge Counts entered his Order granting Plaintiff's Motion to File Second Amended Complaint. (See Exhibit 15). The Order notes that Defendants submitted the proposed Second Amended Complaint to the Estate's attorney, Kyle Moberly, "for his review to assure compliance with the bankruptcy court orders." (Ex. 15, p. 2). In fact, the subsequently filed Second Amended Complaint has a "Caveat to Entire Pleading" that makes it crystal clear that Defendants seek only "*in rem*" recovery and that the entire pleading should be construed so as not to violate the discharge injunction. (Ex. 16, ¶ 19). Defendants could not have been clearer. The Lincoln County suit is progressing.

### III.    ARGUMENT AND AUTHORITIES

The Motion should be denied on many grounds.

## A.  Movants Lack Standing to Re-Open this Case.

In its Order dated August 16, 2019, this Court informed Brian Van Winkle that, if he became the successor representative of the probate estate and hired counsel, it would entertain a motion to re-open. Bryan and Tammy Sprague have done so. Mrs. Sprague proposes to join individually, not as the bankrupt Debtor's personal representative. The Debtor has not moved to re-open this case. Accordingly, the issue is ripe to determine if someone other than the debtor has standing to re-open this case.

The bankruptcy court can re-open a closed bankruptcy file under 11 U.S.C.A. §350.  However, the Tenth Circuit has expressly limited standing to request re-opening of a bankruptcy case to the debtor, a creditor of the debtor, or the trustee. *In re Alpex Computer Corp.*, 71 F.3d 353, 354 (10th Cir. 1995). Only those parties "have a particular and direct stake in reopening cognizable under the Bankruptcy Code." Id., at 356. In *Alpex*, the Court held a defendant in an infringement suit brought by the debtor lacked standing to reopen the bankruptcy case because it was not the debtor, creditor or trustee of the bankrupt estate. Accordingly, the court ordered dismissal.

Brian Van Winkle and Tammy Sprague are not a debtor, creditor or trustee of the debtor.  Movants claim to have invested in the redemption right that the Trustee disclaimed in the bankruptcy. Attached hereto as Exhibit 1 is Movant's Motion filed in the State Court in August 2018 to substitute Tammy and Brian as the real parties in interest therein. Movants pleaded they "provided the funds to redeem the property and are the real parties in interest" in the foreclosure action.

(Ex. 1, p. 1). Movants attached an "Assignment of Right of Redemption" dated August 17, 2018 (the "*2018 Assignment*"). The 2018 Assignment expressly states that it assigns "the right to redeem the Property" and "all of the estate's right, title and interest in and to the [redemption] Funds" from the estate of Fred Van Winkle to Tammy Sprague, Brian Van Winkle and Haley Van Winkle. (Ex. 1, p. 5). According to Movants' own pleading and attached Assignment, in 2018, the Debtor transferred the legal rights to the assets that Movants rely on in this Motion. If it ever did, the Debtor Estate no longer has title to those assets.

The Estate may pursue those assets for the benefit of the assignees in the appeal in State Court, because the Estate was the named party in that action and is not required to be substituted under state law. The state court exercised its discretion under NMRA 1-025(c) to deny Brian's intervention and substitution. (See Exhibit 2).[2] Therefore, Tammy Sprague and the Estate are proceeding with the appeal for the benefit of the Estate's assignees.

---

[2] Movants relied on NMRA 1-025(C) to support their substitution. Rule 1-025(C) applies when there has been an assignment of an interest after an action has been commenced. *Citibank, N.A. v. Martinez*, No. 33,945, 2016 WL 2855523, at \*4 (N.M. Ct. App. Apr. 19, 2016)(unpublished opinion); *Daniels Ins., Inc. v. Daon Corp.*, 1987-NMCA-110, ¶ 13, 106 N.M. 328, 331. In fact, Rule 1-025(C) expressly provides that, in the event of a transfer of interest, "the action may be continued by or against the original party...." That rule is discretionary. Rule 25(c) "does not require that anything be done after an interest has been transferred." 7C Wright, Miller & Kane, Federal Civil Procedure § 1958 at 555 (2d ed. 1986); *Citibank, N.A.*, 2016 WL 2855523. "Even if not named, successors in interest are always bound by the judgment; therefore, substitution of parties pursuant to Rule 25(c) is never mandatory." *Barker v. Jackson Nat. Life Ins. Co.*, 163 F.R.D. 364, 366 (N.D. Fla. 1995) (citing Kloster Speedsteel AB v. Crucible, Inc., 793 F.2d 1565, 1582 (Fed.Cir.1986), cert. denied, 479 U.S. 1034, 107 S.Ct. 882, 93 L.Ed.2d 836 (1987)); Crown Life Ins. Co. v. Candlewood, Ltd., 1991-NMSC-090, ¶ 14, 112 N.M. 633 ("The most significant feature of Federal Rule 25(c) identical to our Rule 1-025(C) is that it does not require that anything be done after an interest has been transferred. The action may be continued by or against the original party, and the judgment will be binding on his successor in interest even though he is not named.").

However, to grant this Motion, this Court must first find the Movants have standing to re-open. As a result of the assignment, the Estate has no rights in those assigned assets that may be recognized in this action. And, the fact that Movants may have purchased the redemption right (long after it was exercised) or procured assignment of the Estate's rights (if any) to the deposited redemption funds does not somehow make them a debtor, a creditor of the debtor, nor the trustee. Thus, Movants lack standing to reopen, and the motion should be denied. *See In re Yoder Co.,* 158 B.R. 99, 100-01 (Bankr. N.D. Ohio 1993) (holding purchaser of bankruptcy assets lacks standing to re-open estate).

## B. This Court Lacks Jurisdiction Under the *Rooker-Feldman Doctrine* and/or Law of the Case.

Even if Movants had standing to request re-opening, this court lacks jurisdiction to challenge the involved state court rulings. Movants seek to re-open the case for the purpose of seeking sanctions based on orders issued by State District Court Judge Counts in the Otero County suit.[3] That is not sufficient cause to re-open a closed bankruptcy case. *In re Iannacone*, 21 B.R. 153

---

[3] Movants also ambiguously plead that the 2015 complaint in the Lincoln County action contains misrepresentations. (See Proposed Adversary Complaint, ¶ 21). The 2015 Complaints were filed before the ruling by the BAP. Any claims based on those pleadings are barred by *res judicata* by the BAP opinion, which was not appealed and is final. Also, those complaints are superseded. With district court approval, in 2019, Defendants amended that complaint to make clear that they only seek "*in rem*" relief, and even included a detailed caveat that the pleadings should be construed so as not to violate the discharge injunction. (Exhibit 16, p. 10). That amended pleading even requests that the court withhold judgment until a proper court determines the exact amount of the judgment lien. (Id., ¶ 17). The Estate's attorney expressly approved that form of complaint as complying with the bankruptcy requirements before it was filed. (Exhibit 15, p. 2 and 5). Accordingly, the Lincoln County action cannot possibly support re-opening of this file.

(Bkrtcy.D.Mass. 1982) (holding debtor's desire to litigate issue, of creditor's actual knowledge of bankruptcy proceeding, in bankruptcy court rather than state court was insufficient to "accord relief" or to constitute "cause" for reopening case).

Movants seek to reverse state court rulings pertaining to the post-bankruptcy redemption right and the deposited redemption funds. Those are issues over which the state court already exercised jurisdiction and entered final orders. And, because a competent state court has already addressed the issue, this court simply lacks authority to re-open the file to wrestle away that jurisdiction. *In re Strano*, 248 B.R. 493 (Bkrtcy. D.N.J. 2000) (bankruptcy court would not reopen no-asset Chapter 7 case to allow complaint to be filed for determination of nondischargeability of unscheduled debt, as one for debtor's intentional tort, where there was pending state court action); *In re Littlefield*, 17 B.R. 549 (Bkrtcy. D.Me. 1982) (bankruptcy court had only concurrent jurisdiction with state court to determine dischargeability of debtor's obligation to his former spouse and where that former obligation was found to be nondischargeable by state court of competent jurisdiction, debtor was not entitled to reopen his Chapter 7 case); *In re Raskin*, 78 B.R. 343 (Bkrtcy. S.D.Fla. 1987) (Chapter 7 debtors would not be allowed to reopen their case to avoid judicial lien on property claimed as homestead, where debtors could not obtain relief under Bankruptcy Code which was not also equally available under state law in state court).

In the BAP Opinion in this case, the Court noted the *Rooker-Feldman* doctrine "precludes federal district courts from exercising appellate jurisdiction

over actually-decided claims in state courts" and "adjudicating claims inextricably intertwined with previously-entered state court judgments." *In re Van Winkle*, 583 B.R. 759 (10th Cir. BAP 2018). "This is because the Supreme Court is the only federal court empowered to exercise appellate jurisdiction to reverse or modify a state court judgment." *Id.*

"What is prohibited under *Rooker-Feldman* is a federal action that tries to modify or set aside a state-court judgment because the state proceedings should not have led to that judgment." *Mayotte v. U.S. Bank Nat'l Ass'n for Structured Asset Inv. Loan Tr. Mortg. Pass-Through Certificates, Series 2006-4*, 880 F.3d 1169, 1174 (10th Cir. 2018). We determine whether *Rooker-Feldman* applies by looking to the injury alleged in the plaintiff's federal complaint. *Berry v. Schmitt*, 688 F.3d 290, 299 (6th Cir. 2012). "If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction." *In re Isaacs*, 895 F.3d 904, 912 (6th Cir. 2018); *Tal v. Hogan*, 453 F.3d 1244, 1256 (10th Cir. 2006) ("A claim is inextricably intertwined if 'the state-court judgment caused, actually and proximately, the injury for which the federal-court plaintiff seeks redress.'").

Even a cursory review of the Movants' proposed Adversary Complaint shows they are simply trying to get this Court to overrule Judge Counts' two orders in state court. (Exs. 3 and 10). That is improper and violates *Rooker-Feldman*. *Issacs*, 895 F.3d at 912 (holding *Rooker-Feldman* doctrine deprived bankruptcy court of jurisdiction, following entry of state court foreclosure judgment, to address Chapter 13 debtor-mortgagor's claims pertaining to the state court's

orders); *Jester v. Wells Fargo Bank N.A.*, 297 F. Supp. 3d 1233, 1242 (E.D. Okla. 2018) (finding bankruptcy court lacked jurisdiction to review the state court's final order in the foreclosure proceeding).

This Court has already ruled it was "powerless" to prevent the state court from entering its order in August 2018. (Order, 8-8-18). The fact that Movants do not like the ruling of the state court simply is not adequate grounds to re-open this file and wrestle away jurisdiction from that state court proceeding. *In re Gianopolous*, 584 B.R. 598 (Bkrtcy. S.D.N.Y. 2018) (reopening debtor's Chapter 7 case to obtain order staying creditor from prosecuting state court action, which sought to enforce guaranty executed by debtor's brother and claimed that debtor fraudulently induced creditor to make loan, was not permitted); *In re Hepburn*, 27 B.R. 135 (E.D.N.Y. 1983) (case in which trustee did not assume residential lease would not be reopened to provide for declaration that lease was at an end, as state courts, in a dispossessory proceeding, were as able as bankruptcy court to apply the law of bankruptcy); *In re Jester*, No. 11-80627-TRC, 2014 WL 7408943, at *2 (Bankr. E.D. Okla. Dec. 30, 2014), aff'd, 2015 WL 6389290 (B.A.P. 10th Cir. Oct. 22, 2015), *aff'd*, 656 F. App'x 425 (10th Cir. 2016) (refusing to re-open case because court lacked authority to reverse state court foreclosure judgment).

In its August 8, 2019, Order, this Court recognized that it was bound by "law of the case" and that it cannot readdress the issues decided by the BAP in this case. This court ruled it is "powerless" to prevent the state court or to the parties from "simply implementing the ruling of the Bankruptcy Appellate Panel." (Order, 8-8-19). The BAP specifically addressed whether Defendants' efforts to re-

foreclose after the redemption and 2015 Motion for Summary Judgment violated the discharge injunction. (See BAP Opinion, Ex. 7, p. 9-11). That Motion for Summary Judgment and the redemption were the subject of the Trial Court's orders that Movants now seek to attack. (See Exs. 3 and 10). This Court lacks jurisdiction or power to reverse or re-visit those Orders or the BAP ruling. *In re Spurlin*, No. 7-90-03958-ML, 1999 WL 35809883, at \*3 (D.N.M. Jan. 21, 1999) (unpublished opinion) ("Thus, re-litigation of the question of whether Jacob's claims were post-petition and the issue of whether the claims should be tried in the state court action are barred by the doctrine of law of the case.").

### C. Re-Opening Will Violate This Court's Stipulated Order.

Importantly, on August 8, 2018, this Court entered its stipulated, Order Terminating Automatic Stay. (Exhibit 17). The parties stipulated, and this Court ordered, that the parties would resume the Lincoln County and Otero County suits "to complete the state court litigation and have a final determination of the rights of the parties vis-à-vis each other therein." (Id.) That stipulation and order are binding on the parties and this Court. Movants may not defeat that stipulation by now trying to usurp the jurisdiction and very rulings of that State Court that this Court sanctioned. Judge Counts and the parties are simply doing what this Court ordered them to do: "[C]omplete the state court litigation and have a final determination of the rights of the parties vis-à-vis each other therein."

### D. This Court Lacks Authority to Conduct the Requested Business.

The question of whether a bankruptcy court may reopen a debtor's case is dependent upon whether the court has authority to conduct the business that the

party is requesting once the case is reopened. *Matter of Hanks*, 182 B.R. 930 (Bkrtcy.N.D.Ga. 1995). If it does not, the case may not be re-opened. *Id.*

## 1. The Discharge Injunction Does Not Protect Non-Debtors.

Movants seek to file an adversary complaint for sanctions for violating the Section 524 discharge injunction. Section 524 expressly provides that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). Based on that language, courts have repeatedly held the discharge injunction does not apply to non-debtors and a creditor may not be enjoined from taking actions to collect funds of or assets of non-debtors. *In re Christian*, 180 B.R. 548 (Bkrtcy.E.D.Mo.1995); *In re Czuba*, 146 B.R. 225 (Bkrtcy.D.Minn.1992); *Pettibone Corp. v. Hawxhurst*, 163 B.R. 989, 995 (N.D.Ill.1994), *affirmed* 40 F.3d 175 (7th Cir. 1994). Specifically, the discharge injunction does not preclude a determination of the debtor's liability in order to allow the claimant to access indemnification or payment from a third party; the discharge serves only as an injunction against actions commenced to recover debt as "personal liability" of the debtor. *Pettibone*, 163 B.R. 989 (N.D.Ill.1994); *In re Walker*, 927 F.2d 1138 (10th Cir. 1991)(holding plaintiffs may proceed against discharged debtor to establish their right to recover under Utah's Real Recovery Fund"); *Shade v. Fasse (In re Fasse)*, 40 B.R. 198, 200 (Bankr.D.Colo.1984) (suit against debtor permitted to establish right to recovery from Colorado Real Estate Recovery Fund).

As a result of the Assignment, the Debtor may not claim legal interest in the redemption or the redemption funds. The Debtor did not file this motion;

Movants did. However, the discharge injunction does not apply to them. Whether they claim a right to the redemption funds or not, this Court simply lacks authority to open its doors for Movants. Accordingly, the discharge injunction cannot apply, and Movant's claims are frivolous on their face.

### 2. Movants Claims Are Barred by the Doctrines of Rule of the Case and *Res Judicata.*

Movants are requesting this Court to overrule Judge Counts and hold that the lien on the Otero County property was discharged entirely in bankruptcy and should not be allowed to re-attach through the redemption process and/or that the redemption funds should not be distributed to the purchasers at the foreclosure sale. Brian recently requested similar relief from this Court in his motion filed on June 18, 2019. (Motion Request, " The state court under Judge Counts has just recently allowed a Discharged debt set forth by this Bankruptcy court to be allowed In state court, in doing so, the state court has upset the balance provided by this court between Debtor and Creditor. This has also put Redemption funds deposited with the state court at risk. This ruling allows perpetual lien reattachment if left as is."). This Court denied that motion. In fact, the Bankruptcy Appellate Panel ("BAP") already resolved the relevant issues.

The BAP addressed the issue of the reattachment of the lien upon redemption by the debtor in its opinion in this case issued on April 3, 2018. The BAP ruled that, under New Mexico law, a judgment lien follows real property in bankruptcy and the debtor can re-foreclose property redeemed by the original debtor in state court. (Ex. 7, pp. 9-11). Accordingly, the BAP reversed this court

and held that Defendants' efforts to re-foreclose and "pursue any remaining value in the non-exempt real estate" in the state court proceeding did not violate the automatic stay. Id.

The BAP opinion is final. *In re Van Winkle*, 583 B.R. 759 (10th Cir. BAP 2018). This court and the parties herein are bound by the BAP opinion under rule of the case, collateral estoppel and *res judicata* principles. *Jester v. Wells Fargo Bank N.A.*, 297 F. Supp. 3d 1233, 1244 (E.D. Okla. 2018) (holding claims of violation of discharge injunction were barred by prior appeal to Tenth Circuit BAP arising out of the same transaction or occurrence). Therefore, this Court simply cannot open back up to conduct the business Movants are requesting.

### 3. Movants' Claims Are Patently Erroneous.

Movants purport to seek to re-open to seek sanctions against Defendants and Mr. Dugan (personally) for procuring orders in the state court that allegedly violate the bankruptcy discharge. Those claims are patently groundless.

Discharge affects only personal obligations: Unavoided liens survive a discharge with regard to the debtor's pre-petition property to the value of the lien...." Hon. Joan N. Feeney, Hon. Michael G. Williamson and Michael J. Stepan, Esq., *Bankruptcy Law Manual*, § 8:2 Vol. 2 (5th ed. 2016), p. 9-11. A secured creditor's right to foreclose on a pre-petition lien against a debtor's property survives through the bankruptcy unaffected by the discharge. *Johnson v. Home State Bank*, 501 U.S. 78, 82-83, 111 S.Ct. 2150, 2153 (1991). "Thus, a creditor may enforce a prepetition judgment lien after the discharge, if the automatic stay is no longer in effect and the lien has not been avoided, paid, or modified so as to

15

preclude enforcement." See Alan N. Resnick & Henry J. Sommer, 4 *Collier on Bankruptcy* ¶ 524.02[1](16th ed. 2016). A mortgagee's lien survives and is unaffected by the discharge. "Further, a secured creditor is permitted to proceed with post-discharge foreclosure proceedings without any prior application to the bankruptcy court." *In re McConnie Navarro*, 563 B.R. 127, 141 (Bankr. D.P.R. 2017).

This Court authorized Defendants to proceed with the foreclosure in State Court. Yet, now, Movants again claim that those foreclosure proceedings violate the bankruptcy discharge. Those claims are erroneous on their face.

### a. Mr. Dugan Did Not Draft the Language in the July 19 Order.

Movants plead that, "on information and belief," Mr. Dugan, as the attorney for Defendants, prepared the July 19, 2019, order that contains the following language that allegedly violates the bankruptcy discharge stay: "Plaintiffs have the right to seek satisfaction of their judgment, *in rem*, from the former defendant owner." That July 19, 2019 Order (the "*July 2019 Order*") is attached hereto as Exhibit 3. In fact, the concerned language in the July 2019 Order derived from a prior Minute Order prepared by State Judge Counts on his own. (*See Exhibit 4*). In that Minute Order, Judge Counts ordered, "Mr. Dugan shall prepare an order that reflects the Court's ruling herein." (Ex. 4, p. 3). Mr. Dugan did prepare such an order. However, Mr. Dugan corrected Judge Counts' Minute Order to make sure the judgment was only "in rem" and not personal.

In the Minute Order, Judge Counts ruled in paragraph B: "Plaintiffs have the right to seek satisfaction of their judgment from the former defendant owner." (Ex. 4, p. 3, ¶ B). To avoid bankruptcy discharge issues, Mr. Dugan corrected Judge Counts' ruling and proposed that the Court insert the words, "*in rem.*" (See Ex. 6). The District Judge accepted that recommendation. The executed July 19 Order instead states, "Plaintiffs have the right to seek satisfaction of their judgment, *in rem,* from the former defendant owner." (Ex. 3). Incredibly, Movants now claim Mr. Dugan "prepared" that allegedly offensive sentence. In fact, Mr. Dugan corrected the Judge's sentence in accordance with the BAP's opinion that seeking *in rem* enforcement of the lien did not violate the bankruptcy stay.

Practically, however, it is a farce to try to join Mr. Dugan herein for "preparing" an order that he was ordered by the Court to prepare. Movants had counsel representing their interests in the District Court. If they did not like the form of the order, they certainly could have objected. Mr. Dugan first presented a form of order to the estate's attorney, Kyle Moberly, on May 8, 2019. (*Exhibit 5*). After Mr. Moberly objected, Mr. Dugan tried to reach a compromise with the Estate. The June 20, 2019 e-mail to the estate's attorney, Mr. Moberly, with the attached draft is attached hereto as Exhibit 5. Mr. Dugan proposed a compromise form of order that left the resolution of entitlement of the redemption funds for another hearing. (Id.). Mr. Moberly did not respond in writing. Mr. Dugan asked again on July 8. (Id.). Mr. Moberly still did not respond. However, at the hearing, the Movant's counsel made no objection to that form of order. If the Movants

objected that the order violated the bankruptcy discharge, they should have objected.

While the parties were discussing the form of order, Brian Van Winkle filed his motion herein to remove the case and take it from the State Court. (Ex. 7). Mr. Dugan forwarded that filing to Mr. Moberly on June 20. (Exhibit 8). In fact, in his pleading to this Court in June 2019, Brian Van Winkle tried to wrestle away jurisdiction from the State Court because, in his opinion, the trial court was about to award the Defendants the property and the redemption monies. (Ex. 7). This Court refused to wrestle the case away. So, instead, the Estate simply did not object to the form of order, and now Movants claim "Mr. Dugan" drafted the offensive language (that, in fact, the Court drafted itself).

In fact, the Movants (through the Estate, who represented their interests), pleaded in the state court that awarding the property and redemption funds to the Defendants would violate the bankruptcy discharge. (See Exhibit 9, pp. 3-8). Movants even attached the Bankruptcy Discharge, dated August 26, 2013. (Ex. 9, p. 11). The District Court rejected those arguments and granted summary judgment for Defendants. (Exs. 3 and 10). *Res judicata* and/or collateral estoppel apply. In fact, law of the case applies, because the BAP already decided the bankruptcy discharge does not apply to the redemption right. Clearly, Movants' claims are groundless.

### b. The August 12, 2019 Order Does Not Distribute the Funds to the "Plaintiffs."

Movants further seek sanctions under the bankruptcy discharge injunction based on the Order issued by the State Court on August 12, 2019 (the "*August 2019 Order*"). The August 2019 Order is attached as Exhibit 10. Movants plead that Order requires the redemption funds deposited in the court "must be paid over to Belleview and the Williamses." That is patently frivolous. The August 2019 Order reads: "The Clerk is hereby ordered to disburse to Plaintiffs **John H. Williams and Ellen B. Williams** the Deposited Sums ($73,200.94)...." (Ex. 9, p. 3). The Order did not award the funds to Plaintiff Belleview. Why not? Belleview did not purchase the property at the redemption foreclosure: John and Ellen Williams were the purchasers at the redemption foreclosure.

On July 23, 2014, the State Court had approved the Special Master's Report and vested title in the foreclosed property in only two of the Plaintiffs: John H. Williams and Ellen B. Williams. (Ex. 11, p. 3). All of the Plaintiffs were granted a deficiency judgment, including Belleview. (Ex. 11, p.3, ¶ 6). However, that judgment was expressly limited to only "*in rem*" enforcement and excluded "in personam" recovery. (Id., p. 2, ¶5 and p.3, ¶ 6). That language was what caused the BAP to conclude Defendants did not violate the bankruptcy injunction. (Ex. 7, p. 11: "Nothing in the record suggests Appellants sought *in personam* relief, and in fact, the Deficiency Judgment expressly indicated it was a lien on the Debtor's real estate and 'no deficiency judgment [was] granted on an *in personam* basis against the Estate of Fred Van Winkle.").

Notably, the state court only took the matter up again because on August 8, 2018, this Court ordered the parties to return to state court and complete "a final

determination of the rights of the parties vis-à-vis each other therein." (Ex. 17).

Defendants' 2015 Motion for Summary Judgment was the subject of the prior BAP

Opinion, reversing this Court's prior ruling on the redemption right. In response

to that Motion for Summary Judgment in the Otero County suit, Movants pleaded

it would be improper due to the bankruptcy discharge. (Ex. 9, pp. 3-8). The BAP

rejected that argument in its opinion herein. When Judge Counts then ruled upon

that pending 2015 Motion in 2019, Defendants were very careful in procuring the

August 2019 Order from the State Court to make clear that only the purchasers of

the foreclosed property - not Belleview - were entitled to recover the redemption

monies.

Why does that matter? Because, as this Court held in its February 10, 2017

Order, the discharge injunction "prohibits efforts to collect a [prepetition] debt *as*

*a personal liability of the debtor[.]*" *(Opinion on February 10, 2017, p. 9)*(quoting

*In re Paul*, 534 F.3d 1303, 1309, n. 6) (10th Cir. 2008)).     The "debt" the

purchasers collected through the redemption sums only arose post-bankruptcy

when the purchasers paid for the foreclosed real property at the 2014 foreclosure

sale. There is no "prepetition" debt involved, and the discharge injunction simply

cannot apply as a matter of law.

### c. The State Trial Court Properly Ruled the Purchasers Were Entitled to the Redemption Funds.

Attached as Exhibit 12 are relevant pages of Defendants' Amended Motion

to Distribute Redemption Sums and Enter Final Judgment (the *Motion to*

*Distribute*").     That Motion to Distribute expressly argued and cited the law

supporting the conclusion that, "The purchaser at the foreclosure sale is indisputably entitled to receive the redemption funds." (Ex. 12, p. 8); *In re LaMont*, 740 F.3d 397, 407-08 (7th Cir. 2014)(citing numerous cases). The court adopted that finding and awarded the redemption funds to the purchasers, Mr. and Mrs. Williams. That was the right result. This Court should not revisit that finding. *In re Hopp*, 606 B.R. 889, 899 (Bankr. D. Colo. 2019)(holding bankruptcy court may not re-visit ruling of state court on non-dischargeability under guise of discharge injunction). If it is inclined to do so, however, the case law is overwhelming in support of Defendants.

If Movants had elected to proceed with their redemption and pay the additional amounts owing under NMSA § 39-5-18 to get the property back, the redemption funds would have been distributed to the judgment-lien creditors as provided in the BAP opinion herein. Because Defendants elected not to proceed with procuring the redemption certificate in the state court, the Trial Court was forced to decide how to distribute the monies in the court's registry. The state court property awarded those funds (which were *in rem*) to the purchasers.

New Mexico law clearly holds a redemption under Subsection (B) is effectuated by (1) filing of the Petition and (2) tender of the redemption funds. *Nationstar Mortgage LLC v. Chenoweth*, 2018 WL 2213641 (N.M. App., April 2, 2018) (unpublished opinion); *Chapel v. Nevitt*, 2009-NMCA-017, ¶ 27, 145 N.M. 674 (holding "if the debtor chooses to redeem under subsection (A)(2) and not pay the purchaser directly... the debtor must (1) petition the district court and (2) deposit a sum of money in the court registry within nine months from the date of

sale"). Upon substantial compliance with those two requirements, the redemption is effectuated and the debtor is entitled to a hearing setting the final redemption amount, including interest from the date of sale, taxes, etc. *Chapel*, ¶ 27, 36. The Estate filed its Petition and deposited the funds in April 2015. (Exs. 13 & 14). That effected the redemption. **"The statute does not require any further action for a party to redeem."** *Nationstar*, 2018 WL 2213641. Movants could have proceeded with their redemption and procured the property – subject to re-foreclosure as order by the BAP. However, they expressly chose not to. (Ex. 10, p. 2–3).

The Movants presumably elected to withdraw their redemption request to avoid paying additional fees, interest from the date of sale, taxes, etc. However, that withdrawal did not permit return of the redemption sums. "The right to redeem foreclosed property merely protects the debtor's right to try to ... regain possession of the property." *Chapel*, ¶ 41. The Trial Court ruled that, by withdrawing their request for a certificate of redemption, Movants forfeited their right to regain possession and legal title of the property. (Ex. 10, ¶ 5). However, there simply was no method for Movants to procure the redemption funds.

"The general rule at common law and under some statutes is that a party pays money into court on a tender at their peril, and the tenderer cannot ordinarily withdraw it." 86 C.J.S. § 47. Monies tendered into the registry of the court "pass irrevocably to his adversary." *Weinchel v. Adamic*, 125 Colo. 235, 242 P.2d 219 (1952). "[N]ot only does the party paying it into court lose all right to it, but the court itself has no power to make an order in the same action, which, in

effect, retransfers the title." *Mann v. Sprout*, 185 N.Y. 109, 77 N.E. 1018, 1019 (N.Y. Ct. App. 1906). "The payment into the court is then deemed as acceptance by the plaintiff of the amount tendered." Id. Notably, whether that is the law or not, that is how Judge Counts ruled.

Defendants previously accepted the tendered deposit in their Response to Petition for Redemption in May of 2015, and then again confirmed acceptance of the redemption payment in the Court's registry in their Amended Motion filed on July 24, 2019. (Ex. 12, p. 7). Whether Defendants had "accepted" the tender or not, the Movants simply lacked any claim to the redemption sums. Because the redemption sums were paid unconditionally into the Court's registry, those sums were required to be paid to the purchasers at the foreclosure sale. *In re LaMont*, 740 F.3d 397, 407-08 (7th Cir. 2014)(citing numerous cases).

In *Chapel*, the Court of Appeals cited several New Mexico cases expressly concluding that the debtor may not "condition" a redemption. *Chapel*, ¶¶ 41-43 (citing *Brown v. Trujillo*, 2004-NMCA-040, 135 N.M. 365 (holding debtor could not "condition" his petition and tender upon the purchaser's execution of a quitclaim deed to the property) and *Union Esperanza Mining Co. v. Shandon Mining Co.*, 18 N.M. 153, 135 P. 78 (N.M. 1913)(holding debtor cannot impose any conditions upon his tender of money pursuant to the redemption statute)). The *Chapel* court ruled a debtor may not "condition[] his redemption of the property on the district court's assuring that there was a clear title." *Chapel*, ¶ 43. The Court forbid a redemption that is, "in effect, a conditional offer of redemption." Id.

Because Defendants lost in the BAP and presumably did not desire to pay the additional sums the trial court would have ordered owing to procure the redemption certificate, the Movants elected to withdrew their request for issuance of a certificate of redemption. That forfeited their right to regain legal title to the real property. However, that withdrawal could not convert their unconditional tender of the redemption funds into a conditional tender. That is forbidden under *Brown*, *Union* and *Chapel*.

Movants took a calculated gamble and reaped the results of that gamble. They had the right to force a re-sale of the property and could have even bid and purchased the property at the re-foreclosure. They chose not to do that. However, as noted above, New Mexico makes no provision for a redemptioner to procure return of tendered redemption funds. The redemptioner pays his money "at his peril." *First State Bank of Taos v. Wheatcroft*, 1931-NMSC-047, ¶ 18, 36 N.M. 88 (holding redemptioner who paid wrong party redemption did so "at his peril"). A redemption "is to be considered as a payment for the mortgage or sale which is redeemed." 59A C.J.S. Mortgages § 1507. The purchaser has an "absolute interest" in the money paid on redemption. *In re Gonzalez*, 550 B.R. 711, 717 (Bankr. E.D. Pa. 2016); *In re LaMont*, 740 F.3d 397, 407-08 (7th Cir. 2014)(holding, "purchaser has a right to payment from the money paid to redeem the property"); *In re Hammond*, 420 B.R. 633, 635 (Bankr. W.D. Pa. 2009) ("The purchaser's only absolute interest in the property until the redemption period expires is to receive the money paid on redemption."). A debtor takes a "calculated risk" in depositing sums into the court registry for a redemption and is

not entitled to restitution simply because the tender does not result in clear title to the property. *FarmPro Servs., Inc. v. Finneman*, 2016 S.D. 72, ¶¶ 14-19, 887 N.W.2d 72, 77-79.

"[O]ne who makes a voluntary payment to another has no right to restitution." *Cheesecake Factory, Inc. v. Baines*, 1998-NMCA-120, ¶ 6, 125 N.M. 622. Because Movants voluntarily and unconditionally tendered the redemption sums into the court registry, they simply had no right to return of those monies. Their sole right would have been to demand a hearing on the certificate of redemption and then follow through with payment of the ordered sums and procure the certificate, subject to re-foreclosure. They chose not to do so.

The fact of the matter is that all of the Defendant Creditors did not procure the redemption funds. Instead, the State District Judge Counts properly disbursed the redemption funds to only the purchasers at the foreclosure sale, as he was required to do under New Mexico law. This Court should not revisit that decision.

### d. No Bankruptcy Assets Are Involved.

This court should also not open its doors again because no bankruptcy assets are involved. This Court entered its Order abandoning the redemption right back to the Estate on April 15, 2015. Accordingly, the redemption is not a bankruptcy asset. Moreover, the redemption funds are not bankruptcy assets.

The bankruptcy discharge was in 2013. The Estate filed its Petition for Redemption on April 20, 2015. (Ex. 13). On April 21, 2015, the Estate procured the Order authorizing the Estate to tender into the court's registry the "amount of money necessary to redeem that real estate...." (Exhibit 14). Movants pleaded

they provided the funds for that deposit, not the Debtor. (Ex. 1). Clearly, the only two assets at issue – the redemption and the redemption funds – are not bankruptcy assets.

Even if they were bankruptcy assets at some point, they certainly are not today. The Assignment, Exhibit 1, p. 5, states that it transfers the rights in the redemption and the redemption funds to the Movants. That assignment is dated August 17, 2018. The State Court entered its July 2019 Order and August 2019 Order in 2019. There simply is no way those assets could have been estate assets when those orders were entered in 2019. And, because no estate assets are involved, this Court should not open its doors to conduct further business.

### e. The Debts and Causes of Action Accrued After Bankruptcy.

Also, there are no assets that were pursued in discharge of a pre-bankruptcy debt. Bankruptcy discharge operates as an injunction against the plaintiff asserting a claim for a debt incurred, or cause of action that arose, before the date of the bankruptcy discharge. "It does not act as an injunction against a plaintiff asserting a claim for a debt incurred, or cause of action that arose, after the date of bankruptcy discharge." *Hazelquist v. Guchi Moochie Tackle Co., Inc.*, 437 F.3d 1178, 1180 (Fed. Cir. 2006). According to Section 727(b), the protection provided by a discharge is only from "debts that arose before the date of the order for relief." *In re Neier*, 45 B.R. 740, 743 (Bankr. N.D. Ohio 1985) (holding acts were post–discharge and not subject to discharge). The court in *Neier* noted, "Somewhere the plaintiff has lost sight of the fact that a fresh start begins after

the petition is filed, not at some arbitrary date selected by the debtor when he decides to get serious." Id. at 743.

The discharge was issued on August 26, 2013. Plaintiffs John and Ellen Williams purchased the foreclosed property in 2014, after the bankruptcy. Thereafter, the Estate engaged in every act that created the Williamses' causes of action: (1) Acquiring the abandoned right of redemption; (2) exercising the right of redemption; (3) acquiring funds from Movants to tender into the state court; (4) tendering the redemption funds into the court registry; and (5) withdrawing the request for a redemption certificate. Those post-bankruptcy actions created Plaintiffs John and Ellen Williams' right to the redemption funds, not as creditors of the Debtor, but rather as purchasers of the foreclosed property post-bankruptcy.

The hearings on the right to those redemption funds were held in 2019. The Debtor forfeited its redemption in 2019. Every single relevant fact occurred after the 2013 discharge. Accordingly, the claims arose post-bankruptcy, and there simply cannot be a discharge violation. *See, e.g., Hedges v. Resolution Trust Corp.*, 32 F.3d 1360 (9th Cir. 1994) (discharge injunction did not preclude collection for debtor's post-petition use of the property); *Opinion By Judge Thuma*, dated February 10, 2017, p. 9 (noting discharge injunction only applies to "efforts to collect a [prepetition] debt *as a personal liability of the debtor*").

## f. No Personal Liability Was Involved.

To violate the discharge under § 524(a)(2), the creditor must seek recovery "*as a personal liability of the debtor.*" (Ex. 7, p. 11). Defendants did not do that.

The discharge injunction does not prevent a creditor from collecting against the collateral that secures its debt. *See Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) ("a bankruptcy discharge extinguishe[s] only one mode of enforcing a claim—namely, an action against the debtor in personam—while leaving intact another—namely, an action against the debtor in rem"); *Paul v. Iglehart (In re Paul)*, 534 F.3d 1303, 1309 n.6 (10th Cir. 2008) ("The discharge injunction prohibits efforts to collect a debt 'as a personal liability of the debtor,' 11 U.S.C. § 524(a)(2) (emphasis added), and thus in rem rights are not affected."). "Thus, a creditor may obtain *in rem* relief without violating the discharge injunction." *In re Fontaine*, 603 B.R. 94, 113 (Bankr. D.N.M. 2019); *Chandler Bank of Lyons v. Ray*, 804 F.2d 577, 579 (10th Cir. 1986) (per curiam) (the discharge injunction "does not preclude in rem actions by secured creditors.").

Our Supreme Court recognized the difference between *in rem* and *in personam* proceedings long ago. *See, e.g., Hanson v. Denckla*, 357 U.S. 235, 246, 78 S. Ct. 1228, 1235 (1958). A judgment imposing obligations on persons is "in personam"; a judgment affecting interests in property is "in rem." *Id.* When the court is deciding ownership or title to property within its control or power, the action is "*in rem.*" 16 Tex. Jur. 3d Courts § 66. "The effect of a judgment in an *in rem* or *quasi in rem* case is limited to the property that supports jurisdiction and does not impose a personal liability on the property owner." 16 Tex. Jur. 3d Courts § 66; *Shaffer v. Heitner*, 433 U.S. 186, 199, 97 S. Ct. 2569, 2577, 53 L. Ed. 2d 683 (1977) ("If jurisdiction is based on the court's power over property within

its territory, the action is called "*in rem*" or "*quasi in rem*." The effect of a judgment in such a case is limited to the property that supports jurisdiction and does not impose a personal liability on the property owner....").

In fact, the actions at issue in the state court were exclusively *in rem*. Defendants recovered the redemption funds "*in rem*" only. The funds were tendered into the court's registry as part of the *in rem* proceeding and never became the personal liability of anyone, certainly not the debtor. *Miner v. Smith*, 53 Vt. 551, 552 (1881) (holding suit on equity of redemption was an *in rem* proceeding and did not involve the personal liability of the debtor).

In August of this year, the Tenth Circuit BAP reaffirmed that "an act taken *in rem* to enforce a prepetition lien against collateral in which the debtor has an interest is not enjoined by the discharge injunction." *In re Bednar*, No. AP 18-01096, 2019 WL 3928844, at *9 (B.A.P. 10th Cir. Aug. 20, 2019). In that case, the debtor creatively argued that "credit bidding up" the collateral somehow converted the case into an *in personam* action. The BAP disagreed. The Court explained:

> [T]he discharge injunction does not constitute a blanket prohibition against all actions undertaken by creditors after the entry of discharge. Actions to collect against the debtor personally are enjoined. In contrast, in rem actions, which include actions to enforce a lien against encumbered property, are not prohibited by the discharge injunction.

*In re Bednar*, 2019 WL 3928844, at *9 (quoting *In re Jester*, No. EO-15-002, 2015 WL 6389290, at *5 (10th Cir. BAP October 22, 2015), aff'd 656 Fed. App'x 425 (10th Cir. 2016)).

Movants made a calculated gamble to redeem the Otero real estate by payment of the funds into the state court registry AFTER the bankruptcy

discharge. That was a business decision made in 2015 that subsequently failed when the BAP ruled the redemption was not an estate asset. By statute and applicable case law, those funds were required to be paid over to the purchasers of the foreclosed real estate, not as creditors of the debtor, but as the purchasers of the property. (See Ex. 12). No "personal liability" was involved. The suit remained an *in rem* proceeding, with the *res* being the real estate and redemption funds. Accordingly, Movants' claims regarding a violation of the bankruptcy discharge are erroneous on their face. *In re Isaacs*, 895 F.3d 904, 913 (6th Cir. 2018)("When a creditor forecloses on a lien, the debtor's personal liability is not at stake, and therefore § 524(a) does not come into the picture.").

The redemption funds were "*in custodial legis*." *In custodia legis*, meaning "in the custody of the law," Black's Law Dictionary 885 (10th ed. 2014), is a common law doctrine that governs property in the hands of a public official or officer of the court. *Nelson v. Furrer*, 373 Wis. 2d 766, 895 N.W.2d 855 (2017). The placement of property *in custodia legis* divests those who would otherwise own such property of title thereto. *See Davis v. Cox*, 356 F.3d 76, 94 (1st Cir.2004). Once property is placed in custodia legis, "the possession of such property could not be interfered with, without the consent of the court." *Historical Soc. of N.M. v. Montoya*, 1964-NMSC-132, ¶ 11, 393 P.2d 21, 25-26.

The Estate never had title to the redemption funds. Even if it did, it irrevocably relinquished title when it deposited the funds into the court's registry. At that point, the funds served as collateral and became the *res* in the *in rem* proceeding. *Gen. Atomic Co. v. Duke Power Co.*, 553 F.2d 53, 57 (10th Cir. 1977)

(noting an action where the res is delivered to the registry of the court is an "in rem" action). No personal liability of the debtor was ever involved. "An *in rem* proceeding is not a violation of the discharge injunction." *In re Bednar*, 2019 WL 3928844, at *10. Accordingly, the discharge injunction simply cannot apply.

### g. Mr. Dugan Has Immunity From Suit.

Moreover, Mr. Dugan, as the attorney for the Defendants, has immunity from suit herein. Attorneys are entitled a judicial proceedings immunity or privilege from liability to third persons, other than the attorneys' client, for the attorneys' communications and actions in representing a client's interests in the course of judicial proceedings. 7A C.J.S. Attorney & Client § 230; *Stryker v. Barbers Super Markets, Inc.*, 1969-NMCA-119, ¶ 6, 81 N.M. 44 ("Judicial pleadings are privileged.").

The Texas Supreme Court identified the reasons for the immunity well:

.... Texas case law has discouraged lawsuits against an opposing counsel if the lawsuit is based on the fact that counsel represented an opposing party in a judicial proceeding. *Bradt v. Sebek*, 14 S.W.3d 756, 766 (Tex.App.–Houston [1st Dist.] 2001, pet. denied). An attorney has a duty to zealously represent his clients within the bounds of the law. *Bradt v. West*, 892 S.W.2d 56, 71-72 (Tex.App.–Houston [1st Dist.] 1994, writ denied). **In fulfilling this duty, an attorney has the right to interpose defenses and pursue legal rights that he deems necessary and proper, without being subject to liability or damages.** Id. If an attorney could be held liable to an opposing party for statements made or actions taken in the course of representing his client, he would be forced constantly to balance his own potential exposure against his client's best interest. *See id.* Such a conflict hampers the resolution of disputes through the court system and the attainment of justice. Thus, to promote zealous representation, courts have held that an attorney is "qualifiedly immune" from civil liability, with respect to non-clients, for actions taken in connection with representing a client in litigation. *See, e.g., Butler v. Lilly*, 533 S.W.2d 130, 131-34 (Tex.App.–Houston [1st Dist.] 1976, writ dism'd).

*Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex. App. 2005). In *Alpert*, the Supreme Court upheld a sanctions award against the opposing party for wrongfully suing the adverse attorney.

Movants proposed to sue Mr. Dugan for an improper purpose: To harass him. The claims are frivolous. Movants recently lost to Mr. Dugan in the State Court several times. Their effort to join him as a Defendant herein is a thinly disguised plan to deprive Mr. Williams of his chosen counsel. This Court should not condone such tactics. Notably, Mr. Dugan has not had an ethical charge or lawsuit filed against him in his 27 years of practice. Not one.

Violations of Section 524 are treated as civil contempt. Mr. Dugan did not appear in this bankruptcy case before 2019, and certainly was not a party to the bankruptcy. He is probably not even subject to jurisdiction since he is not a creditor and was not part of the proceeding. Regardless, to hold a party in contempt for violation of the discharge injunction, the burden is on "the movant to show by clear and convincing evidence that the creditor (1) had actual or constructive knowledge of the discharged debt and (2) intended the actions which were taken in violation of the injunction." *In re Slater*, 573 B.R. 247, 256 (Bankr. D. Utah 2017).

The attached letters and draft orders show conclusively that Mr. Dugan did not intend on taking any actions to violate the discharge injunction. If this Court opens its doors for an adversary proceeding for a discharge injunction violation, it should be against the judgment creditors – not their attorneys. But, therein lies the problem. The State Court did not award the judgment creditors anything.

The State Court awarded the purchasers of the property the real property and the redemption funds.[4]  The August 2019 Order granted Belleview only its deficiency judgment, *in rem*. (Ex. 10). This Court cannot open its doors to sanction the "judgment creditors" because they did nothing wrong.   It is true that the Williamses wore two hats in the State Court proceeding: Judgment creditor and purchaser. If the redemption had proceeded, the Williamses (along with Belleview) would have been entitled to re-foreclose on the real property as judgment creditors *in rem*, as found by the BAP in this case. However, the redemption did not proceed to conclusion, because the Movants chose to waive that right to redemption. As a result, the Trial Court ruled the redemption funds were forfeited to the foreclosure sale purchasers: Two of the Plaintiffs.   The fact that the Williamses were also pre-bankruptcy creditors of the debtor simply cannot preclude them from exercising their acquired rights as post-foreclosure and post-bankruptcy purchasers.   Accordingly, this court lacks jurisdiction, authority and/or power to overturn the state court ruling. Even if this Court could overturn that ruling, it certainly should not.

### E.   This Court Should Decline Jurisdiction Based on Comity and/or the Abstention Doctrine.

Finally, even if this Court could exercise jurisdiction, it should decline to do so based on comity to state courts and/or the abstention doctrine.

This Court should decline the invitation to accept the adversary proceeding under 28 U.S.C. § 1334(c)(1), which permits a bankruptcy court "in the interest of

---

[4] As explained above, this anomaly of the purchasers receiving the real property and the redemption funds occurred because the Estate waived its redemption rights after it exercised the redemption.

justice, or in the interest of comity with State courts or respect for State law" to abstain from hearing a proceeding. *In re Neighbors*, No. 11–21003, 2013 WL 145040, at *1 (Bankr. D. Kan. Jan. 14, 2013). "The federal courts' duty of comity to the state courts is the focus of discretionary abstention." *In re Notary*, 547 B.R. 411, 419 (Bankr. D. Colo. 2016).

As identified above, the State Court is proceeding on the foreclosure action, and a final judgment was entered by the trial court. The state court judgment is now up on appeal. This Court authorized the state court to proceed, and the state court simply did what it was required to do under state law. There is no basis for this federal court to usurp that state court ruling.

The federal courts have developed a list of relevant factors to consider when deciding whether to abstain. *1 Norton Bankr.L. & Prac.3d § 8.6 (Thompson/West 2010); In re Notary*, 547 B.R. 411, 419 (Bankr. D. Colo. 2016). Those factors favor abstention herein:

1. **The effect or lack of effect on the efficient administration of the estate if a court abstains** – This case has been fully administered and is already closed. *Notary,* 547 B.R. at 419. Exercise of jurisdiction herein will be inefficient.

2. **The extent to which state law issues predominate over bankruptcy issues** – Because the BAP has already ruled on the redemption and discharge issues, there simply are no "bankruptcy" issues remaining to be resolved.

3. **The difficulty or unsettled nature of the applicable state law** – The primary issue is the entitlement to the redemption funds upon waiver of the request for a redemption certificate. That is purely a state law question.

4. **The presence of a related proceeding commenced in the state court or other nonbankruptcy court** – The state court appeal is still pending in state court.

5. **The jurisdictional basis, if any, other than 28 U.S.C.A. § 1334** – Absent federal bankruptcy jurisdiction, there would be no basis for federal jurisdiction herein. *In re Notary.*

6. **The degree of relatedness or remoteness of the proceeding to the main bankruptcy case** – There is little to no relatedness to the "main" bankruptcy case. It is now final and closed. Also, the sole remaining issues are state law issues.

7. **The substance rather than form of an asserted "core" proceeding** – This is simply another attempt at wrestling away jurisdiction from the state court (i.e., forum shopping).

8. **The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court** – That was already done, and the state court was required to proceed. It would be improper to usurp that separation and re-take jurisdiction in the bankruptcy court.

9. **The burden on the bankruptcy court's docket** – This case is closed. Obviously, re-opening would be burdensome on this court's docket. That is especially true since the claims are frivolous and already being handled by the New Mexico Court of Appeals.

10. **The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties** – There simply is no doubt that the Movants are merely forum shopping. Brian tried to remove the case to this court while the motions were pending. Now that Judge Counts ruled against him, he is merely trying again. That is improper.

11. **The existence of a right to a jury trial** – There is no right to a jury trial on the proposed complaint.

12. **The presence in the proceeding of nondebtor parties** – The debtor has not joined in this Motion. The proposed complaint involves only nondebtor parties.

13. **Any unusual or other significant factors.** The fact that the Defendants and Judge Counts were merely doing what the BAP ordered they should do is conclusive in this case.

35

In *In re Notary*, 547 B.R. 411, the Court abstained from exercising jurisdiction for alleged violations in seeking to foreclose judgment liens in state court. The court said, "The Attorneys' efforts in the state courts involve their efforts to foreclose their Judgment Liens. Those liens have been wholly unaffected by the Debtor's bankruptcy case and the Attorneys are free to take whatever measures are available to them in the state courts to realize on those liens." *Id.* at 419.

That quote summarizes this case. Similarly, Defendants have only exercised their rights under New Mexico state law to foreclose their judgment liens. On August 8, 2018, this Court ordered the parties to seek a final determination of their rights in the Lincoln and Otero County suits. Those court-ordered activities should not now be usurped by exercise of bankruptcy jurisdiction.

**WHEREFORE**, the Motion should be denied and Defendants should receive such other relief to which they are entitled.

**Martin, Dugan & Martin**

By_____

    W. T. Martin, Jr.
    Kenneth D. Dugan
    509 W. Pierce St.
    P.O. Box 2168
    Carlsbad, NM 88221-2168
    (575) 887-3528
    Fax (575) 887-2136
    e-mail: martinlaw@zianet.com
    Attorneys for BVL & Williams

## CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2019, I served copies of the foregoing pleading on opposing counsel by electronic filing.

**Martin, Dugan & Martin**

By_____

W. T. Martin, Jr.