UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

FRED DALE VAN WINKLE,                                         Case No. 13-11743 tr7

   Debtor.

## OPINION

The personal representatives of the deceased chapter 7 debtor's probate estate moved to reopen this bankruptcy case so they can file an adversary proceeding alleging a violation of the discharge injunction and seeking other relief. The targets of the proposed proceeding objected to the motion. The parties stipulated that the Court could rule on the motion based on the current record, without an evidentiary hearing. Being sufficiently advised, the Court concludes that the case should be reopened.

I.    FACTS[1]

For the sole purpose of ruling on the motion to reopen, the Court finds:

Debtor owned 30 acres of grazing land/horse property with irrigation and water rights in Otero County, New Mexico (the "Property"). On January 24, 2008, he sued John Williams, Ellen B. Williams and Belleview Valley Land Company (together, the Creditors") in state court for reformation of deeds and to set aside conveyance.[2] The action was related to the Property. Creditors filed a counterclaim. On August 13, 2010, the state court entered a judgment, awarding

---

[1] The Court took judicial notice of the docket in the main case and the associated adversary proceeding 15-1047 t. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same). The Court also took judicial notice of the dockets of three state court actions involving the parties: D-1215-CV-200800076, D-1215-CV-201001054, and D-1226-CV-201900184.

[2] *Fred Van Winkle v. Belleview Valley Land Co., et al.*, no. D-1215-CV-200800076, filed in the Twelfth Judicial District Court, State of New Mexico.

the Property to Debtor and entering a money judgment in favor of Creditors against Debtor for $234,944.31. Creditors filed a transcript of the judgment in Otero County on August 17, 2010, encumbering the Property.

Creditors brought an action in the Twelfth Judicial District Court to foreclose their judgment lien on the Property, commencing *Belleview Valley Land Co., et al. v. Fred Van Winkle*, D-1215-CV-201001054 (the "Foreclosure Acton"). On August 29, 2011, shortly before a hearing on Creditors' motion for summary judgment, Debtor filed a chapter 13 bankruptcy case. Debtor confirmed a chapter 13 plan after substantial litigation with Creditors. On February 27, 2013, however, the Court granted the chapter 13 trustee's motion to dismiss the case. Creditors then asked for a trial setting in the Foreclosure Action. Debtor filed this chapter 7 case on May 21, 2013.

Among the assets in Debtor's bankruptcy estate was the Property. The case trustee determined that there might be assets in the estate available to creditors. Thus, while Debtor received a discharge on August 26, 2013, the Property remained in the estate.

On December 4, 2013, the Court entered an order modifying the automatic stay so Creditors could pursue foreclosure of their judgment lien on the Property in the Foreclosure Action.

The state court entered a final foreclosure judgment on May 22, 2014. The special master appointed by the state court conducted a sale on July 8, 2014. Creditors were the only bidder, with a credit bid of $67,000.

Debtor died in 2014. His bankruptcy counsel filed a suggestion of death in this case on July 21, 2014. The filing stated that Tammy Sprague was the personal representative of Debtor's probate estate.

-2-
Case 13-11743-t7    Doc 105    Filed 03/13/20    Entered 03/13/20 15:30:42 Page 2 of 10

On July 28, 2014, the state court entered an Amended Order Approving Special Master's Report & Granting Deficiency Judgment. The order approved the sale to Creditors for $67,000 and awarded them a deficiency judgment of $271,905.61.

On March 20, 2015, Ms. Sprague, on behalf of Debtor's probate estate, filed a motion in this case to compel the trustee to abandon the bankruptcy estate's right to redeem the Property. The motion was granted on April 15, 2015, and an order compelling abandonment was entered the same day. Upon abandonment, the right of redemption devolved to Debtor's probate estate.

On April 20, 2015, Ms. Sprague, as the personal representative of the Debtor's probate estate, filed a petition for redemption in the Foreclosure Action. She proposed to deposit $73,200.94 into the state court registry (the "Redemption Funds"), representing what she thought was needed to redeem the Property. On April 21, 2015, the state court entered an order authorizing the deposit of the Redemption Funds into the court registry. The deposit was made soon thereafter.

On May 14, 2015, Creditors filed a response to the petition for redemption, arguing that if redemption were allowed, their judgment lien would attach to the redeemed Property. They also filed a second complaint in the Foreclosure Action, to foreclose their judgment lien on the redeemed Property.

Ms. Sprague filed an adversary proceeding on June 24, 2015, against Creditors, alleging violation of the discharge injunction and the Court's January 27, 2015, Stipulated Order Resolving Motion to Avoid Judicial Lien of Belleview Valley Land Co., John Williams, and Ellen B. Williams (the "Stipulated Order").

The Court entered a judgment in the adversary proceeding on June 23, 2017, ruling, inter alia, that Creditors' attempt to foreclose their judgment lien on the redeemed property violated the discharge injunction. The Tenth Circuit Bankruptcy Appellate Panel reversed this ruling on April

3, 2018.[3]

On February 22, 2019, the Court entered a final money judgment in favor of Ms. Sprague and against Creditors for $39,241.46 as a sanction for violating the Stipulated Order.

In the meantime, no action had been taken on the petition to redeem and the Redemption Funds remained in the state court registry. On July 24, 2019, Creditors filed in the Foreclosure Action an Amended Motion to Distribute Redemption Sums and Enter Final Judgment. In the motion Creditors argued that the deposit in 2015 was irrevocable. They argued that Ms. Sprague's only choices were to walk away from the Redemption Funds or to pursue redemption to its conclusion, in which case she would lose the Redemption Funds, the additional amount of money owed to complete the redemption, and the redeemed Property. The state court apparently agreed with this argument and gave Ms. Sprague ten days to choose which alternative she wished to pursue. Ms. Sprague did not make a choice, likely because she argued for a third alternative, i.e., a return of the Redemption Funds.

On August 12, 2019, the state court entered its Order on Plaintiffs' Amended Motion to Distribute Redemption Sums and Enter Final Judgment. The court ordered that the Redemption Funds be paid to Creditors.

On August 16, 2019, the Court ruled that movant Brian Van Winkle could appear on behalf of the Debtor's bankruptcy estate if he were recognized as the successor personal representative of the Debtor's probate estate. On October 30, 2019, the Twelfth Judicial District Court issued letters of administration recognizing Tammy Sprague and Brian Van Winkle as the co-personal representatives of Debtor's estate. *See Brian Van Winkle v. Tammy Sprague*, D-1226-CV-201900184. They filed the motion to reopen thereafter.

---

[3] For the Court's analysis of the appellate panel's reasoning on the discharge injunction violation, see doc. 145, page 2, n.2.

In their motion to reopen, movants argue that Creditors violated the discharge injunction by, inter alia, seeking and obtaining the Redemption Funds.

Creditors vigorously oppose the motion to reopen. Their response to the motion, including exhibits, is 139 pages, while their response to a supplement movants filed is 28 pages. Among other things, Creditors allege movants lack standing and that this Court is procedurally barred from reopening the case.

## II. DISCUSSION

### A. Reopening Closed Bankruptcy Cases.

Reopening a closed bankruptcy case is a ministerial act. *See, e.g., In re Mendoza*, 595 B.R. 849, 856 n.30 (10th Cir. BAP 2019); *In re Smith*, 426 B.R. 435, 440 (E.D.N.Y. 2010); *In re Menk*, 241 B.R. 896, 913 (9th Cir. BAP 1999).

Bankruptcy courts have broad discretion to reopen closed cases "for cause" under 11 U.S.C. § 350(b) and Fed. R. Bankr. P. 5010. *See In re Jester*, 656 F. App'x 425, 427 (10th Cir. 2016); *Hawkins v. Landmark Finance Co.*, 727 F.2d 324, 326–27 (4th Cir. 1984); *In re Haker*, 411 F.2d 568, 569 (5th Cir. 1969); *Bartle v. Markson*, 357 F.2d 517, 523 (2d Cir. 1966); *In re Johnson*, 291 F.2d 910, 911 (8th Cir. 1961); *In re McDonald*, 161 B.R. 697, 698 (D. Kan. 1993); *In re Smith*, 125 B.R. 630, 631 (Bankr. E.D. Okla. 1991).

Motions to reopen should be liberally granted. *In re MacIntyre,* 2019 WL 1035683, at *3 (10th Cir. BAP); *In re Collis*, 223 B.R. 814, 815 (Bankr. M.D. Fla. 1997) (motions to reopen are liberally granted give debtors relief and further the "fresh start" policy); *In re Potes*, 336 B.R. 731, 732 (Bankr. E.D. Va. 2005) (same). When a debtor files a motion to reopen to pursue alleged rights or claims, he should not be forced to prove his claim twice, once at reopening and again at a hearing on the merits. *See, e.g., Potes*, 336 B.R. at 732; *In re Covelli*, 550 B.R. 256, 263 (Bankr. S.D.N.Y.

2016) (quoting *Potes*); *In re Jones*, 367 B.R. 564, 567 (Bankr. E.D. Va. 2007) (citing *Potes*). Rather, the court should avoid ruling on the merits of the claim when granting or denying a motion to reopen. *Jones*, 367 B.R. at 567; *In re Kennedy*, 2016 WL 6649200, at *2 (Bankr. M.D.N.C.).

Nevertheless, it is appropriate for a bankruptcy court to review the underlying claim when considering a motion to reopen. *Smith*, 426 B.R. at 440; *In re Lois C. Hardy*, 209 B.R. 371, 374 (Bankr. E.D. Va. 1997). It is not an abuse of discretion to deny a motion to reopen if the underlying claim is completely lacking in merit. *Smith*, 426 B.R. at 440; *Arleaux v. Arleaux,* 210 B.R. 148, 149 (8th Cir. BAP 1997); *In re Carter,* 156 B.R. 768, 770–71 (Bankr. E.D. Va. 1993); *In re Herzig,* 96 B.R. 264, 267 (9th Cir. BAP 1989); *Jones*, 367 B.R. at 567 ("a court should refrain from opening a closed case where there is no relief to be accorded the debtor"); *Kennedy*, 2016 WL 6649200, at *2 ("as granting a motion to reopen does not afford the movant relief . . .the court should not reopen the case").

B.  Reopening a Case Because of an Alleged Discharge Injunction Violation.

Debtors may seek contempt of court sanctions for violations of the discharge injunction. *Taggert v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019) (bankruptcy court may "impose civil contempt sanctions when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order"); *In re Ahn*, 2020 WL 838032, at *1 (9th Cir. 2020) (citing *Taggert*); *Grogan Trustee of Cole v. Renfrow*, 2019 WL 2764404, at *2 (N.D. Okla.) (citing *Taggert*). Such motions are appropriately brought before the bankruptcy court. *See In re Unioil*, 948 F.2d 678, 682 (10th Cir. 1991) ("bankruptcy court had the inherent power to enforce its order"); *Alderwoods Grp., Inc., v. Garcia*, 682 F.3d 958, 970 (11th Cir. 2012) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991), the Eleventh Circuit held that "the court that issued the injunctive order alone possesses the power to enforce compliance with and punish contempt of

that order"); *In re Curtis*, 2013 WL 6799053, at *2 (Bankr. N.D. Iowa) (citing *Alderwoods*); *Redner's Markets, Inc. v. Joppatowne G.P. Ltd. Partnership*, 608 Fed. App'x 130, 131 (4th Cir. 2015) (citing *Alderwoods*).

Litigation of an alleged violation of the discharge injunction is a common ground for reopening a closed case. *In re Roberts*, 2013 WL 1844709, at *2 (Bankr. W.D. Va. 2013); *Potes*, 366 B.R. at 733; *Jones*, 367 B.R. at 567; *In re Presley*, 288 B.R. 732 (Bankr. W.D. Va. 2003); *In re Lapin*, 226 B.R. 637, 640 (9th Cir. BAP 1998). Again, however, courts have discretion to deny motions to reopen if it is clear that the alleged discharge injunction violation did not occur. *See, e.g., In re Pennington-Thurman*, 499 B.R. 329, 332 (8th Cir. BAP 2013); *In re Jester*, 2014 WL 7408943, at *2 (Bankr. E.D. Okla.); *In re Henneghan*, 2017 WL 6371340, at *1 (Bankr. D.D.C.).

C.  <u>Movants Have Standing to Reopen the Case</u>.

Creditors argue that movants lack standing to enforce the discharge injunction. The argument must be overruled: movants represent Debtor's interests in their capacity as the personal representatives of his probate estate. Because Debtor is dead, his personal representatives stand in his shoes and may properly seek enforcement of the discharge injunction.

Further, the alleged violation relates to property of Debtor's probate estate—i.e., the Redemption Funds. If Creditors violated the discharge injunction and damaged the probate estate, it would be unfair to deny the estate an opportunity to be made whole.

While other parties in interest (e.g., the bankruptcy trustee or a creditor) may or may not have standing to enforce the discharge injunction, movants certainly do.

D.  <u>Creditors' *Rooker-Feldman* Argument is Without Merit</u>.

Creditors next argue that movants cannot be granted relief by this Court because of the *Rooker-Feldman* doctrine and/or res judicata. This argument lacks merit. Movants have appealed

the state court's order awarding the Redemption Funds to Creditors. In light of the appeal, the state court action has not ended so *Rooker-Feldman* does not apply. *See Guttman v. Khalsa*, 446 F.3d 1027, 1032 (10th Cir. 2006) (*Rooker-Feldman* inapplicable where a party's petition for certiorari was pending before the New Mexico Supreme Court). Likewise, res judicata does not bar the proposed claim because no court has ruled on whether Creditors' actions violated the discharge injunction. Defendants have not sufficiently or persuasively argued that res judicata or other preclusive principles prevent or limit this Court's authority to enforce the discharge injunction.

E.  <u>Movants Have Made a Sufficient Showing to Reopen the Case</u>.

The facts of this convoluted case raise the following questions about a possible violation of the discharge injunction:

- Did the Creditors have a lien on the Redemption Funds? If not, why wouldn't paying the funds to Creditors be collection of a discharged debt?

- Is the probate estate of Fred Van Winkle a separate entity from Mr. Van Winkle, such that a judgment lien on Mr. Van Winkle's property would not attach to property purchased by the probate estate?

- Did the Creditors file a claim in the probate action? If not, did they lose the right to assert that their judgment lien attached to after-acquired property?

- Who owned the Redemption funds on and after April 21, 2015? Debtor's probate estate? Creditors? The Williamses?

- What would have happened to the Redemption Funds if the state court had held a hearing on the petition for redemption in 2019 and determined that the Redemption Funds were insufficient to redeem the Property?

- Does it matter how much the Redemption Funds were? What if Debtor's probate

estate had tendered $500? $5,000? $50,000? $500,000?

- Even if the state court's rulings on ownership of the Redemption Funds are not subject to collateral attack, do they preclude Debtor's probate estate from arguing that Creditors violated the discharge injunction?

- Could the deposit of the Redeemed Funds be "irrevocable" under state law, yet title to those funds still remain with Debtor's probate estate?

- When John H. Williams and Ellen B. Williams bought the Property at the special master's sale on July 8, 2014, they credit bid $67,000 of the judgment awarded to Creditors in D-1215-CV-200800076. Does it matter that the Williamses took title to the Property rather than the Creditors?

- Why the four-year delay is finalizing the redemption? Does the delay show that the parties explicitly or implicitly agreed to put the redemption on hold until their rights were adjudicated? If so, what are the implications of the four-year "stand-still" agreement?

On the current record, it is not clear whether Creditors violated the discharge injunction. Movants should be given an opportunity to litigate their claim.

In a related matter, movants complain that Creditors have not paid any portion of the $39,241.46 money judgment this Court entered against Creditors. It is not clear to the Court that Creditors' failure to pay the judgment is actionable or a violation of the discharge injunction. Nevertheless, reopening the case would allow the Debtor's probate estate to pursue post-judgment remedies, such as foreclosing a judgment lien, execution, attachment, garnishment, depositions in aid of execution, and the like.[4]

---

[4] There should be $73,200.94 available to pay the judgment.

III. CONCLUSION

Given the fairly low standard for cause to reopen a closed case, the Court concludes that the motion to reopen is well taken and should be granted. By a separate order, the Court will reopen the case. Movants may file an adversary proceeding asserting a violation of the discharge injunction. Movants may also pursue their post-judgment remedies to collect their money judgment.

Granting the motion to reopen is not and should not be construed as a ruling on the merits of any claim movants may assert.

                                                      */s/ David T. Thuma*

Honorable David T. Thuma
United States Bankruptcy Judge

Entered: March 13, 2020

Copies to: Counsel of Record