## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

In re:

FRED DALE VAN WINKLE,

Debtor.

No. 13-11743-j7

TAMMY SPRAGUE as PERSONAL
REPRESENTATIVE OF THE ESTATE
OF FRED DALE VAN WINKLE,

Plaintiff,

v.

Adv. No. _____

BELLEVIEW VALLEY LAND CO., INC.,
JOHN WILLIAMS and ELLEN B.
WILLIAMS,

Defendants.

## COMPLAINT FOR DECLARATORY JUDGMENT, DAMAGES FOR BOTH VIOLATION OF BANKRUPTCY COURT'S DISCHARGE ORDER AND VIOLATION OF STIPULATED ORDER RESOLVING MOTION TO AVOID JUDICIAL LIEN AND FOR EMERGENCY ORDER ENFORCING THE DISCHARGE INJUNCTION TO STAY ANY FURTHER STATE COURT PROCEEDINGS PENDING RESOLUTION OF THESE MATTERS

COMES NOW, Plaintiff, Tammy Sprague as personal representative of the Estate

of Fred Dale Van Winkle (hereinafter referred to as "Van Winkle") through undersigned

counsel, and for its Complaint, states as follows:

1.    Plaintiff resides in Las Cruces, New Mexico.

2.    Defendant, Belleview Valley Land Co., Inc. ("BVL") is a Missouri

Corporation unauthorized to do business in New Mexico. BVL was a

secured creditor in the Chapter 7 bankruptcy of Fred Dale Van Winkle.

## EXHIBIT "11"

3. Defendants, John and Ellen Williams (hereinafter jointly referred to as "Williams") are believed to be residents of the state of Missouri. The Williams were also secured creditors in the Chapter 7 bankruptcy of Fred Dale Van Winkle.

4. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334 and the United States District Court for the District of New Mexico's Administrative Order 84-0324 (D.N.M. March 19, 1992) (referring all cases under Title 11 and all proceedings arising under Title 11 or arising in or related to Title 11 to the Bankruptcy Court), and 11 U.S.C. §§524 and 105.

5. This Court has the authority to enter a final order regarding this matter since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A) and (O). *See also, Mountain States Credit Union v. Skinner (In re Skinner)*, 917 F.2d 444, 448 (10th Cir. 1990) (Contempt proceedings arising out of a core matter are also core matters.)

## FACTS AND ALLEGATIONS

6. On August 13, 2010, BVL and Williams obtained judgment against Van Winkle in the amount of $243,944.31 in an Otero County State Court proceeding. On February 4, 2011, the state court awarded further attorney's fees and costs.

7. BVL and Williams filed a Transcript of the Judgment in Otero County on August 17, 2010. A judgment lien attached to the Otero County real property Van Winkle owned.

8. BVL and Williams filed a Transcript of the Judgment in Lincoln County on August 17, 2010.

9. Van Winkle filed his Chapter 7 bankruptcy petition on May 21, 2013. (See Docket Entry # 1 in Bankruptcy Case)[1]

10. On May 21, 2013 contemporaneously with the filing of his Chapter 7 Petition, Van Winkle filed his Bankruptcy Schedules and Statement of Financial Affairs with the Court. These schedules and statements listed the Defendants as a creditor in the case on Schedule D and listed the debt as disputed. Docket Entry #1.

11. On May 23, 2013, the Defendants were given notice of the Debtor's bankruptcy proceeding as reflected in the Court's BNC Certificate of Service. Docket Entry #9.

12. BVL and the Williams were aware of the Debtor's bankruptcy as they filed a Motion for Relief of Stay on August 30, 2013 through their counsel W.T. Martin, Jr. Docket Entry #21.

13. On August 26, 2013 the Bankruptcy Court entered an order granting Debtor a bankruptcy discharge. Docket Entry #19. As a result, the Judgment against Van Winkle was voided as to the personal liability of Van Winkle.[2]

---

[1] Van Winkle had also attempted to reorganize the debt in a prior chapter 13 proceeding (11-13861) but was unsuccessful and the case was dismissed.

[2] 11 U.S.C. §524(a)(1) states, "A discharge in a case under this title (1) **voids any judgment** at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727....of this title, whether or not discharge of such debt is waived;" (Emphasis Added)

14. The Discharge Order was mailed to the Defendants through their counsel on August 28, 2013 as indicated by the Court's BNC Certificate of Service. Docket Entry #20.

15. The Debtor, Van Winkle, became deceased on April 28, 2014 after receiving his discharge but prior to the case being closed. A suggestion of death was filed on July 21, 2014. Docket Entry #35.

## The Otero County Property

16. On December 4, 2013, the Bankruptcy Court entered an order lifting the automatic stay as to Debtor's Otero County Property (Docket #33).

17. Shortly thereafter, BVL and Williams filed suit to foreclose their judgment lien on the Debtor's Otero County property.

18. On May 22, 2014, the state court entered a Final Judgment foreclosing the judgment lien. See Final Judgment attached as Exhibit "A" hereto.

19. On July 8, 2014, a foreclosure sale was conducted by a special master. The Defendants were the high bidders upon bidding $67,000.00 of their Judgment of $338,905.61.

20. On July 28, 2014, the state court entered an Amended Order Approving Special Master's Report & Granting Deficiency Judgment even though the underlying Judgment was void as a result of Van Winkle's discharge. See Amended Order attached as Exhibit "B" hereto.

21. A special master's deed transferring title to the property to the Defendants was approved and recorded. See Deed attached as Exhibit "G" hereto.

22. Even though the underlying Judgment was void as to Van Winkle's personal liability and uncollectible against Van Winkle, on August 8, 2014, Defendants further recorded a Transcript of Deficiency Judgment reflecting the deficiency judgment of $271,905.61 with the Otero County Clerk of Otero County which begs the question of "How can Van Winkle owe a deficiency on an otherwise void judgment?" See Transcript attached as Exhibit "C" hereto.

23. On April 20, 2015, Plaintiff filed a Petition for Redemption and placed $73,200.94 in the state court registry as required by law.

24. On May 14, 2015, Defendants filed a Response to the Petition for Redemption objecting to the Redemption. See Response attached as Exhibit "D" hereto.

25. On May 14, 2015, Defendants also filed Motion for Summary Judgment to Foreclose the (invalid and unenforceable post-discharge) Judgment Lien and Supporting Brief. See Motion and Brief attached as Exhibit "E" hereto.

**The Lincoln County Property**

26. Van Winkle owned a condominium at 702 White Mountain, #11, Ruidoso, NM (hereinafter referred to as "Condo"). Van Winkle resided in the Condo at the time his petition was filed and he claimed a $60,000 homestead exemption on the property.

27. The Condo was subject to a mortgage held by First National Bank of Ruidoso in the approximate amount of $12,000.00.

28. On September 23, 2013, Debtor filed a Motion to Avoid the Judicial Lien of BVL and Williams as it impaired the exemption claimed by Van Winkle. Docket Entry #23.

29. BVL and Williams filed a response through their counsel on October 8, 2013. Docket Entry #27.

30. The Court first ordered that Van Winkle's death did not affect his ability to exempt the property for purposes of avoiding the judicial lien. Docket Entry #45.

31. The parties then stipulated to entry of an Order which valued the Condo and partially avoided the pre-discharge judicial lien held by BVL and Williams. Docket Entry #45.

32. The Order indicates that the pre-discharge judicial lien is avoided to the extent of $100,000 (value) less the payoff of the first mortgage less the Van Winkle's homestead exemption ($60,000). BVL and Williams have since purchased the note and first mortgage from First National Bank of Ruidoso and claim that as of April 20, 2015 the amount owed on principal and interest is $20,164.05 thereby avoiding all but $19,835.95 of the pre-judgment lien against the Condo.[3]

33. On March 20, 2015, Van Winkle filed a Motion to Compel Abandonment of the Condo and of any redemption rights held by Van Winkle as a result of the Otero Property foreclosure discussed above. The Motion was

---

[3] It is important to note that Williams purchased the note and mortgage on August 6, 2013 (before the bankruptcy discharge was granted) for the amount of $15,034.77. No notification from BLV or Williams has ever been received by Van Winkle nor was Van Winkle ever sent any billing notifications for the mortgage payments raising possible RESPA and/or TILA violations.

properly noticed out and all parties including BLV and Williams were given the opportunity to object. No objections were filed. Docket Entry #64 and #65.

34. On April 15, 2015, the Bankruptcy Court entered an Order Granting the Motion to Compel. Docket Entry #67.

35. On April 15, 2015, the Bankruptcy Court entered an Order Abandoning Assets which included the Condo and Otero foreclosure redemption rights. Docket Entry #68.

36. On May 19, 2015, BVL and Williams filed an Amended Complaint for Judgment for Debt and Money Due on Promissory Note, to Foreclose Real Estate Mortgage and to Foreclose Judgment Lien. See Complaint attached as Exhibit "F" attached hereto.

37. Even though the amount of their lien had been avoided except for $19,835.95, Exhibit F seeks to enforce the entire judgment lien as it requests, "If the proceeds are insufficient to satisfy the balance owed on the Otero County judgment, then a deficiency judgment for the **unpaid balance** be entered in accordance with the deficiency judgment previously entered by the Otero County District Court." Exhibit F, Page 10, Paragraph 6(c). (Emphasis Added)

## Count I

### Violation of The Bankruptcy Court's Discharge Order

38. The Order of Discharge is a federal court order and it operates as an injunction against creditors who commence or continue an action against a debtor to recover or to collect a discharged debt. *See, Tennessee Student Assistance Corp. v. Hood,* 541 U.S. 440, 449 n.4 (2004).

39. A Creditor's continued attempts to collect the discharged debt places it in contempt of this Court. This Court can impose sanctions under the bankruptcy code. See 11 U.S.C. §105. *See, Schott v. WyHy Federal Credit Union (In re Schott),* 282 B.R. 1, 6 (10th Cir. BAP 2002); *Skinner,* 917 F.2d at 447.

40. In this case, Van Winkle's debt to BLV and Williams was discharged on August 26, 2013.

41. Van Winkle does not dispute that the BLV and Williams' pre-discharge Judgment Liens survived the bankruptcy, and that BLV and Williams were allowed to collect as against the real property of Van Winkle with the limitation that the judgment lien in Lincoln County was partially avoided and only attached in the approximate amount of $19,835.95.

42. BLV and Williams have violated the Court's discharge order, however, by misleading and basically committing fraud upon the Otero County state court by filing a false transcript of judgment which ignores the voiding of the pre-bankruptcy judgment post-discharge in the Otero County case. See Paragraph 22 *supra.* BLV and Williams argue in many of the state court filings that because the Court granted a further "deficiency judgment" which they transcribed as a further lien against the Otero

property, that Van Winkle should be prohibited from redeeming the Otero property free and clear of their post-discharge "deficiency judgment." In other words, BLV and Williams are attempting to impose and enforce an invalid post discharge "deficiency lien" against post Van Winkle's newly acquired property. This is a clear violation of 11 U.S.C. §524(a)(2).

43. BLV and Williams have violated the Bankruptcy Court's discharge order as follows:

A. By submitting the Amended Order Approving Special Master's Report & Granting Deficiency Judgment to the state court in the Otero County foreclosure case. See Exhibit B. Van Winkle submits that Exhibit B is an attempt to collect on a discharged debt. BLV and Williams were entitled to collect as to the Otero property. Upon foreclosing on the Otero property, BLV and Williams bid a portion of their judgment in the amount of $67,000.00 and the lien was terminated as to its *in rem* status. There remained no further *in rem* or *in personam* obligation at that time as Van Winkle no longer owned any real estate in Otero County. Since the underlying debt had previously been discharged, there could be no further "deficiency." The language contained in Exhibit B, Page 3, Paragraph 6(a) is an attempt to collect on a discharged debt even though deceptively coined an "in rem" deficiency judgment.

B. By filing a further Transcript of Judgment for $271,905.61 in the records of Otero County on the claimed "deficiency judgment." Again, there can be no deficiency on an otherwise void Judgment.

C. By filing Plaintiffs' Response to Petition for Redemption in the Otero County case.

D. By filing a further Complaint to Foreclose Judgment Lien and/or Deficiency Judgment Lien in the Otero County case.

E. By filing Plaintiffs' Motion for Summary Judgment to Foreclose Judgment Lien and Supporting Brief in the Otero County case.

44. The Debtor should be awarded her costs, attorney fees, and damages caused by the violations.

45. The acts by BLV and Williams are willful, wanton, malicious, or taken in clear disregard or disrespect of the bankruptcy laws; therefore, punitive damages should be awarded.

46. Van Winkle did not "reaffirm" the debt with the defendant pursuant to 11 U.S.C. §524.

47. Van Winkle has suffered injury and harm as a result of the Defendants' failure to comply with the Court's discharge order in an amount to be proven at trial.

## Count II

### Violation of the Stipulated Order Resolving Motion to Avoid Judicial Lien

48. BLV and Williams have violated the Stipulated Order Resolving Motion to Avoid Judicial Lien by filing the Complaint for Judgment for Debt and

Money Due on Promissory Note, to foreclose real estate mortgage and to Foreclose Judgment Lien in the Lincoln County case. In this case, BLV and Williams have simply ignored the Stipulated Order regarding the lien avoidance that was entered by the Bankruptcy Court by asking the state court for a deficiency if the judicial lien is not satisfied in full.

## Count III

### Declaratory Judgment

49. A Declaratory Judgment is necessary from this Court in order to rule on the effect of the Van Winkle's bankruptcy discharge as it applies to the legality of the tactics of BLV and Williams in the state court lawsuits. A Declaratory Judgment may be necessary in order to further challenge and to have those orders set aside on Rule 60 grounds in the state court proceedings since the action was taken in violation of the discharge injunction.

## Count IV

**Request for Emergency Hearing for Order Enforcing Discharge Injunction to Stay State Court Proceedings Pending Resolution Herein**

50. Van Winkle requests that this matter be set for Emergency Hearing to Enforce the Discharge Injunction already in place due to Van Winkle's bankruptcy discharge.

WHEREFORE, for the foregoing reasons, the Van Winkle respectfully requests this Court to:

1. Enter a Declaratory Judgment indicating that, 1) Defendants are not entitled to any post discharge "deficiency judgment;" 2) that their judgment liens expired with the foreclosure of the Otero property; 3) that the underlying debt was discharged in Van Winkle's bankruptcy proceeding; and 4) that only $19,835.95 of the Defendants' judgment lien attaches to the Lincoln County property.

2. Find the Defendant violated the Court's discharge order as set forth in this Complaint;

3. Find that the Defendant's violations were willful, intentional, and malicious in nature as they are in clear violation of the law;

4. Enter an Order enforcing the discharge injunction which can be filed in the state court proceedings which will stay those proceedings until these matters are determined by this Court;

5. Award the Plaintiff all actual damages incurred including attorney's fees, costs, and expenses incurred by them;

6. Award the Plaintiff punitive damages to the extent necessary to prevent this type of conduct by this creditor and other creditors that appear before this Court.

7. Grant any further relief deemed necessary by this Court.

Respectfully Submitted,

/s/ filed electronically
R. "Trey" Arvizu, III
Attorney for Plaintiff
P.O. Box 1479

Las Cruces, NM  88004
(575)527-8600
(575)527-1199 (fax)

Case 15-01047-t   Doc 1   Filed 06/24/15   Entered 06/24/15 09:24:29 Page 13 of 13

Case 13-11743-t7    Doc 122-2    Filed 10/29/20    Entered 10/29/20 17:03:37 Page 13 of 63

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

FRED DALE VAN WINKLE,                                              Case No. 13-11743 t7

        Debtor.

TAMMY SPRAGUE, personal representative
of the estate of FRED DALE VAN WINKLE,

        Plaintiff,

v.                                                                 Adv. No. 15-01047 t

JOHN WILLIAMS,
ELLEN B. WILLIAMS, and
BELLEVIEW VALLEY LAND CO., INC.,

        Defendants.

## OPINION

As set out in an opinion entered February 10, 2017, the Court concluded that Defendants

violated the discharge injunction under 11 U.S.C. § 524 by attempting to foreclose on real property

that Plaintiff redeemed post-discharge. The Court entered partial summary judgment on that issue.

Now before the Court is whether to award Plaintiff damages for Defendants' violation of the

discharge injunction, and/or for violating a separate Court order.[1] The Court held an evidentiary

hearing and has considered the law and the evidence. The Court will award $33,161.70 in

compensatory damages and $16,838.30 in punitive damages for violation of the discharge

injunction and court order.

---

[1] Previous orders limited the evidentiary hearing to matters not already decided in the opinion
granting partial summary judgment. See docs. 77, 86.

## I.    FACTS[2]

### 1.    The Original State Court Action.

In 2008, Fred Van Winkle brought an action in state court against Belleview Valley Land Co., John Williams, and Ellen B. Williams. Defendants filed a counterclaim.

On August 13, 2010, Defendants obtained a money judgment against Van Winkle for $243,944.31 (the "Original Judgment"). This amount was augmented on February 4, 2011 by a $17,711.93 award of attorney fees and costs.

Defendants filed transcripts of judgment in Otero and Lincoln Counties on August 17, 2010, creating judgment liens on Van Winkle's real estate in those counties. At the time Van Winkle owned, inter alia, certain land in Otero County, New Mexico (the "Subdivision Property") and a condominium in Ruidoso, New Mexico (the "Condominium").

### 2.    The Bankruptcy Case.

Van Winkle filed this chapter 7 case on May 21, 2013. Defendants received notice of the bankruptcy filing.

On Van Winkle's Schedule A, he listed several parcels of real property, including the Subdivision Property and the Condominium.

Van Winkle claimed $60,000 of the equity in the Condominium as exempt under New Mexico's homestead exemption, N.M.S.A. § 42-10-9. The Condominium is encumbered by a first

---

[2] To the extent any finding of fact is construed as a conclusion of law, it is adopted as such, and vice versa. The Court took judicial notice of the docket in the adversary case and in the main bankruptcy case. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).

-2-

mortgage, held at that time by First National Bank of Ruidoso.[3] The Condominium also is encumbered by Defendant's judgment lien.

On August 26, 2013, the Court granted Van Winkle a chapter 7 discharge (the "Discharge Order"). Defendants were aware of the Discharge Order, and referred to it in state court filings.

3. The Stipulated Order.

On September 23, 2013, Van Winkle filed a motion in this Court to avoid Defendants' judicial lien on the Condominium, arguing that the lien impaired his homestead exemption. Defendants responded on October 8, 2013.

Van Winkle died on April 28, 2014. His daughter, plaintiff Tammy Sprague, was appointed as the personal representative of his probate estate.

On November 14, 2014, the Court ruled that Van Winkle's death did not affect his heirs' ability to exempt the Condominium or avoid the judicial lien. On January 27, 2015, Plaintiff and Defendants thereafter entered into a Stipulated Order Resolving Motion to Avoid Judicial Lien of Belleview Valley Land Co., John Williams and Ellen B. Williams (the "Stipulated Order"). The Stipulated Order provides in part:

[Finding #] 6. The parties have agreed that the Property shall be valued at $100,000 for purposes of determining the extent of Creditors' judicial lien.

[Decretal ¶] 1. The transcript of judgment lien of Creditors attached as Exhibit "A" hereto is hereby partially avoided and attaches only to the extent of any value over and above the stipulated value of the Property ($100,000) less the payoff of the First Mortgage less the Debtor's allowed Homestead Exemption ($60,000).

[Decretal ¶] 2. When the amount of the payoff of the First Mortgage is known, the Court will enter a further order establishing the exact amount of the Creditors' judicial lien that can be applied against the Property.

---

[3] In August 2013, Defendant John Williams bought the first mortgage loan. At that time, the loan balance was about $13,000.

-3-

On March 20, 2015, Plaintiff filed a motion to compel the trustee to abandon both the Condominium and a statutory right to redeem the Subdivision Property.[4] The Court entered an order on April 15, 2015, deeming both assets abandoned.

4. The Subdivision Property Foreclosure.

In December, 2010, Defendants had commenced an action in state court to foreclose their judgment lien on the Subdivision Property (the "Subdivision Foreclosure Action"). The action was stayed by the bankruptcy filing.

On December 4, 2013, the Court entered an order modifying the automatic stay so Defendants could complete the Subdivision Foreclosure Action. On May 22, 2014, the state court entered a final judgment foreclosing Defendants' judgment lien on the Subdivision Property. The judgment provided that, in the event of a deficiency, the Court could not enter a deficiency judgment against Van Winkle individually.

A special master held a sale of the Subdivision Property on July 8, 2014. Defendants John and Ellen Williams were the high bidders, credit bidding $67,000 of their judgment. On July 28, 2014, the state court entered an Amended Order Approving Special Master's Report & Granting Deficiency Judgment, which included a deficiency judgment of $271,905.61, plus 8.75% interest. The amended order, submitted by Defendants, provides:

> The deficiency is a lien on the debtor's ... real estate. While no deficiency judgment is granted on an in personam basis against the Estate of Fred Van Winkle, deceased, the lien created by the deficiency is collectable as provided ... [by New Mexico law]. The deficiency also remains collectable by the plaintiffs through legal action, or actions, to enforce judgment liens as they may exist in other New Mexico counties.

---

[4] *See* N.M.S.A. § 39-5-18(A), which states in part "After sale of real estate pursuant to the order, judgment or decree of foreclosure in the district court, the real estate may be redeemed by the former defendant owner of the real estate or by any junior mortgagee or other junior lienholder whose rights were judicially determined in the foreclosure proceeding."

-4-

Case 13-11743-t7 Doc 122-2 Filed 10/29/20 Entered 10/29/20 17:03:37 Page 17 of 63

Defendants recorded a new transcript of judgment in Otero County on August 8, 2014.

    5.    Redemption of the Subdivision Property.

On April 20, 2015, Plaintiff filed in the Subdivision Foreclosure Action a petition to redeem the Subdivision Property. She deposited money in the court registry.

Defendants responded to the petition for redemption by, inter alia, filing a complaint to foreclose their deficiency judgment lien on the redeemed Subdivision Property, and asking for a summary judgment of foreclosure. Defendants took the position that Plaintiff's right of redemption was subject to Defendants' right to full payment of the deficiency judgment, and/or their right to foreclose the remaining judgment lien on the redeemed property.

The redemption remains pending; Defendants still have title to the Subdivision Property.

    6.    The Condominium Foreclosure.

On May 19, 2015, Defendants filed an amended complaint in state court to foreclose their mortgage and judgment lien on the Condominium (the "Condominium Foreclosure Action"). The prayer for relief states:

> The sequence for payment from the proceeds received at a Special Master's sale are (1) satisfaction of the Note and Mortgage-payable to John Williams; (2) $60,000 for homestead exemption-payable to the Estate; and (3) the balance on the BVL and Williams judgment lien-payable to BVL and Williams.

    7.    Attorney Fees.

Plaintiff has incurred attorney fees as follows:

    a.    Law Office of Kyle H. Moberly

| Invoice Date | Fees | Interest, Costs and Tax | Total |
|---|---|---|---|
| August 12, 2015 | $7,000 | $617.88 | $7,617.88 |
| October 5, 2015 | $60 | $207.86 | $ 267.86 |
| April 6, 2017 | $1,000 | $118.13 | $1,118.13 |
| Total | $8,060 | $943.87 | $9,003.87 |

-5-

Mr. Moberly charged an hourly rate of $200, and spent a total of approximately 43.1 hours on the

Otero and Lincoln county cases.

    b.    Arvizu law Office, P.C.

| Invoice Date | Fees | Costs and tax | Total |
|---|---|---|---|
| June 6, 2017 | $24,502.50 | $2,225.53 | $26,728.02 |

Mr. Arvizu billed $225 per hour, and spent 108.90 hours on this case.

    8.    Personal Representative Time.

Plaintiff has spent 84.61 hours working on this matter. She asks the Court to award her

compensation at the rate of $40 per hour, for a total of $3,384.50.

    9.    Damages to the Subdivision Property.

Plaintiff asserts that, during the time redemption has been delayed by Defendants' violation

of the discharge injunction, the Subdivision Property has suffered the following damage:

- Wind damage to the roofs of two mobile homes attached to the property ($18,000); and
- Damages to a dirt berm on the property, caused by Defendants' failure to properly maintain the berm ($2,500).

## II.    DISCUSSION

### A.    Power to Sanction for Violations of the Discharge Injunction.

There is no private right of action under § 524(a)(2) when a creditor violates the discharge

injunction. *In re Otero*, 498 B.R. 313, 319 (Bankr. D.N.M. 2013) (surveying the case law). The

remedy lies in a contempt proceeding, pursuant to which the Court may assess sanctions. *In re

Paul*, 534 F.3d 1303, 1306-1307 (10th Cir. 2008) ("Under 11 U.S.C. § 105(a), bankruptcy courts

have the equitable power to enforce and remedy violations of substantive provisions of the

Bankruptcy Code, including in particular the discharge injunction in § 524(a)(2).... Thus, a

bankruptcy court may sanction a party for violating the discharge injunction...."). *See also*

-6-

*Bessette v. Avco Financial Services, Inc.*, 230 F.3d 439, 445 (1ˢᵗ Cir. 2000) (collecting cases for the proposition that sanctions are the generally recognized remedy). Bringing a contempt proceeding to sanction the creditor for violating the discharge injunction is the generally recognized remedy. *Paul*, 534 F.2d at 1306-07. *See Bessette*, 230 F.3d at 445; *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 506 (9th Cir. 2001); *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 917 (7th Cir. 2001).

### B.    Burden of Proof.

Plaintiff has the burden of proving a violation of the discharge injunction by clear and convincing evidence. *In re Zilog, Inc.*, 450 F.3d 996, 1007 (9ᵗʰ Cir. 2006); *In re Al-Jiboury*, 344 B.R. 218, 225 (Bankr. D. Mass. 2006); *Musslewhite v. O'Quinn (In re Musslewhite)*, 270 B.R. 72, 79 (S.D. Tex. 2000). *See generally Reliance Ins. Co. v. Mast Const. Co.*, 159 F.3d 1311, 1315 (10ᵗʰ Cir. 1998) (to prevail in a civil contempt proceeding, plaintiff must prove elements by clear and convincing evidence). Damages in a civil contempt proceeding, however, need only be proved by a preponderance of the evidence. *Reliance*, 159 F.3d at 1315.

### C.    Willful Violation.

To sanction a party for violating § 524(a), a court must determine that the creditor's actions were willful, "i.e., whether the creditor deliberately acted with [actual] knowledge of the bankruptcy case." *In re Martin*, 474 B.R. 789, at *6 (6ᵗʰ Cir. BAP 2012 (unpublished), quoting *In re Waldo*, 417 B.R. 854, 891 (Bankr. E.D. Tenn. 2009); *In re Gunter*, 389 B.R. 67, 72 (Bankr. S.D. Ohio 2008).

> [A] willful violation [of § 524(a) ] does not require any specific intent. Rather, the question is simply whether, having knowledge of the ... discharge injunction, the creditor's actions were intentional." *McCool*, 446 B.R. at 823 (citations omitted). A creditor's mistaken belief that its actions were lawful or did not violate § 524(a) is not a defense to a contempt action. *Id.* ("[A] willful violation of the ... discharge

-7-

injunction may still exist even though the creditor believed in good faith that its
actions were lawful."); *Waldo*, 417 B.R. at 892.

*Martin*, 474 B.R. 789, at *6. *See also In re Culley*, 347 B.R. 115, *5 (10th Cir. BAP 2006) (citing
*In re Diviney*, 225 B.R. 762 (10th Cir. BAP 1998 for the proposition that violation of the automatic
stay is willful if creditor knew about the injunction and intended the actions that violated it); *In re
Hardy*, 97 F.3d 1384, 1390 (11th Cir. 1996) (same, with respect to the discharge injunction);[5] *In re
Nibbelink*, 403 B.R. 113, 120 (Bankr. M.D. Fla. 2009) (citing and following *Hardy*). *See also In
re Johnson*, 501 F.3d 1163, 1173 (10th Cir. 2007) (reasonableness of creditor's belief that it did
not violate automatic stay has no bearing on willfulness).

D.       Damages Recoverable.

"In cases in which the discharge injunction was violated willfully, courts have awarded
debtors actual damages, punitive damages and attorney's fees." 4 Collier on Bankruptcy (16th ed.)
¶ 524.02[2][c], citing *Hardy v. IRS (In re Hardy)*, 97 F.3d 1384 (11th Cir. 1996); *In re Elias*, 98
B.R. 332 (N.D. Ill. 1989); *Cherry v. Arendall (In re Cherry)*, 247 B.R. 176 (Bankr. E.D. Va. 2000);
*In re Arnold*, 206 B.R. 560 (Bankr. N.D. Ala. 1997). *See also McGlynn v. Credit Store, Inc.*, 234
B.R. 576, 583 (D.R.I. 1999) (collecting cases). In *In re Culley*, the Bankruptcy Appellate Panel
for the Tenth Circuit upheld Judge Starzynski's award of actual damages, attorney fees, and
punitive damages as a sanction for violating the discharge injunction. 347 B.R. 115, at *5.

1.       Defendants' Violation of the Discharge Injunction was Willful.

The Court finds and/or concludes that Defendant willfully violated the discharge
injunction. Defendants were well aware that the injunction had been entered. They were active

---

[5] In the Tenth Circuit, the standards for sanctioning violations of the automatic stay and the
discharge injunction appear to be identical, or nearly so.

in the bankruptcy case, and never denied knowledge of the injunction. Their state court pleadings show that they knew about the discharge injunction.

Further, Defendants' actions that violated the discharge injunction (e.g. seeking to foreclose on the redeemed Subdivision Property) were intentional, as opposed to accidental or unintended. Defendants' argue that they thought their actions did not violate the discharge injunction. This is a difficult position to defend, given the lack of supporting authority. Regardless, Defendants' beliefs about legality are irrelevant. "A creditor's mistaken belief that its actions were lawful or did not violate § 524(a) is not a defense to a contempt action." *Martin*, 474 B.R. 789, at *6, citing *McCool v. Beneficial (In re McCool)*, 446 B.R. 819, 823 (Bankr. N.D. Ohio 2010). *See also In re Atlantic Medical Management Services, Inc.*, 387 B.R. 654, 662 (Bankr. E.D. Pa. 2008), *citing Cuffee v. Atlantic Business and Community Development Corporation (In re Atlantic Business and Community Corporation)*, 901 F.2d 325 (3rd Cir.1990); *In re Bloom*, 875 F.2d 224, 227 (9th Cir. 1989).

Defendants argue that it is not a willful violation of the discharge injunction if even a minority of courts support their position. Whether or not that argument has any merit, there are no cases supporting Defendants' position.

2.    Attorney Fees.

The Court concludes that Plaintiff is entitled to recover reasonable[8] fees incurred in state and bankruptcy court to respond to and stop the discharge injunction violation.

---

[8] "To determine a reasonable attorneys fee, the district court must arrive at a 'lodestar' figure by multiplying the hours plaintiffs' counsel reasonably spent on the litigation by a reasonable hourly rate." *Case v. Unified Sch. Dist. No. 233, Johnson Cty., Kan.*, 157 F.3d 1243, 1249 (10th Cir. 1998).

-9-

Case 13-11743-t7   Doc 122-2   Filed 10/29/20   Entered 10/29/20 17:03:37   Page 22 of 63

In determining a reasonable sanction, courts do not distinguish between state court attorney fees spent responding to a violation and bankruptcy court attorney fees incurred to stop it. *See, e.g., In re Martin*, 474 B.R. 789 (6th Cir. BAP 2012) (unpublished) (attorney fees incurred in state court and bankruptcy court as a result of discharge violation were compensable); *In re Hambrick*, 481 B.R. 105, 118 (Bankr. E.D. Okla. 2012) (awarding attorney fees incurred in bankruptcy case as contempt sanction); *In re Cherry*, 247 B.R. at 190 (awarded both state and bankruptcy court attorney fees).

    a.    Kyle Moberly fees. The Court has reviewed Mr. Moberly's fee bills. All of the fees are reasonable. Of the total fees, costs, and taxes billed, the Court finds that $4,318.42 was incurred in connection with the discharge injunction violation.

    b.    Arvizu Law Office Fees. Arvizu Law Office charged $26,728.03 to represent Plaintiff in this matter. The Court finds that all of the charges were incurred to remediate Defendants' violations of the discharge injunction and Stipulated Order. The Court also finds that the fees would have been a fraction of amount charged if Defendants had agreed to let the Court rule on the discharge injunction issue when it first arose. The hours spent on the case are reasonable in light of the complexity of the case and the Defendants' litigiousness. The Court will award $26,728.03 as part of its sanction.

    3.    Personal representative time and expenses.

Plaintiff seeks to recover damages for her time and expense as personal representative of the Van Winkle probate estate, but does not seek lost profits from her personal business.

N.M.S.A. § 45-3-719 provides:

> A personal representative is entitled to reasonable compensation for his services. If a will provides for compensation of the personal representative and there is no contract with the decedent regarding compensation, he may renounce the provision before qualifying and be entitled to reasonable compensation. A personal

-10-

> representative also may renounce his right to all or any part of the compensation. A written renunciation of the fee may be filed with the court.

The Court finds that under this provision, Plaintiff would be entitled to reimbursement from the probate estate for the time she spent in this matter. The Court further finds that $25 per hour is reasonable compensation for Plaintiff's time. Since Plaintiff spent 84.61 hours working on the matter, the Court will include in the sanction $2,115.25 for the time spent. The Court will require Plaintiff's counsel to file a short statement in this proceeding that, upon Defendants' payment of the sanction, Plaintiff will waive her right to seek reimbursement of $2,115.25 from the probate estate.

### 4. Damages to the Subdivision Property.

The Court finds that Plaintiff did not carry her burden of proving the alleged damages to the Subdivision Property.

With respect to the mobile home roofs, Plaintiff is not an expert, and could not testify about how much it would cost to repair them. She had personal experience about what it recently cost her to fix her "brick and mortar" house, but the costs are not translatable.

Similarly, the only evidence in the record about the cost of repairing the dirt berm is hearsay,[7] to which Defendants' timely objected. In any event, the testimony was too vague and general to be of much use.

The Court cannot award any amounts for property damage, but notes that Plaintiff may have recourse from the following New Mexico statute:

> Whenever any property shall be redeemed under the terms or provisions of any section of this act, the purchaser, his personal representatives or assigns shall have the growing crops upon such lands and shall not be responsible for rents and profits, but shall account only for waste.

---

[7] Plaintiff testified about what her father told her it cost to rent a bulldozer to repair the berm.

-11-

N.M.S.A. § 39-5-22. If Defendants have committed waste on the Subdivision Property, they would be liable to Plaintiff for that.

E. Punitive Damages.

"If the violation is willful or in reckless disregard of the law, punitive damages are proper. A creditor may be assessed punitive damages if it knew of the federally protected right and acted intentionally or with reckless disregard of that right." *In re Culley*, 347 B.R. 115 (10th Cir. BAP 2006) (affirming bankruptcy court's award of punitive damages several times higher than actual damages).

As set forth above, the Court found and concluded that Defendants' violation of the discharge injunction was willful. That finding appears to be sufficient to allow an award of punitive damages.[8] Furthermore, the Court finds and concludes that Defendants acted with reckless disregard of Plaintiff's rights under the discharge injunction. Defendants knew or should have known that their legal position was weak and lacked statutory or case law support.[9] A responsible party, faced with such a dearth of authority, would have sought a ruling from this Court before proceeding. Defendants instead pursued their doubtful course aggressively, without court

[8] It is not completely clear that the "willfulness" standard for awarding actual damages and attorney fees is the same as the willfulness standard for awarding punitive damages. Similarly, it is not clear whether, in *Culley*, the court meant to use "willfully" and "intentionally" interchangeably.

[9] The authority Defendants rely upon, cited in both the state court and this Court, does not support their position that a judgment lien, post-discharge, can reattach to redeemed property. The weakness of their position can be summed up by the following:

- Redemption rights are not real property, as shown by, inter alia, the fact that they are never foreclosed. Indeed, it is not possible to foreclose on redemption rights under a mortgage or judgment lien;
- Because they are not real property rights, Defendants did not have a lien on the redemption right at issue;
- Foreclosure of the judgment lien eliminated all of Defendants' *in rem* lien rights in the Subdivision Property;
- Therefore, post-discharge the Defendants had no more rights to the redeemed Subdivision Property than to any other after-acquired property.

-12-

guidance. Worse, when Plaintiff complained about the discharge injunction violation, Defendants should have stopped everything and asked for a ruling on the issue. Defendants chose a different path, namely to ignore Plaintiff, barrage the state court with unhelpful or misleading legal argument, and to do everything possible to avoid a ruling from the Court.

An alternative test to determine whether punitive damages are awardable is to consider (i) the defendant's conduct, (ii) the defendant's ability to pay, (iii) the motives for the defendant's actions, and (iv) any provocation by the debtor. *In re Culley*, 347 B.R. 115, at *4 (10th Cir. 2006), citing *In re Diviney*, 226 B.R. at 777. Application of these factors supports the award of punitive damages. As outlined above, Defendants took an aggressive course of action in the state court without a solid legal basis for doing so. Defendants' actions were willful, reckless, and appear somewhat vindictive. Exercising the probate estate's right of redemption is not a provocative act.

The purpose of punitive damages is to deter the offending creditor from continuing to violate the discharge injunction. *In re Culley*, 347 B.R. 115, at *5.

All things considered, the Court finds and concludes that an award of punitive damages is warranted here. Defendants' conduct was willful and in reckless disregard of the law. Defendants' conduct also comes within the alternative test discussed above. The Court finds and concludes that an award of $16,838.30 in punitive damages is reasonable and appropriate.

F.    Damages for Violation of the Stipulated Order.

Plaintiff seeks contempt sanctions for Defendants' violation of the Stipulated Order. The evidence at the final hearing demonstrated that Defendants violated the Stipulated Order when they sued to foreclose their first mortgage and judgment lien on the Condominium. In their prayer for relief, Defendants asked that $60,000 of the special master's sale proceeds be paid to Plaintiff, with the balance paid to Defendants. Thus, for example, if the Condominium sold for $110,000,

-13-

Defendants would be paid $50,000. This is contrary to the Stipulated Order. While the language of decretal paragraph 1 of the Stipulated Order is somewhat confusing, when read in tandem with recital 6, the order can only mean that Defendants mortgage and lien interests are limited to $40,000. Their prayer for relief should have been similarly limited. Instead, the prayer for relief was written as though the Stipulated Order had never been entered. Nevertheless, the Court will not assess additional damages because they would be cumulative.

### III. CONCLUSION

Defendants willfully and/or recklessly violated the discharge injunction and caused actual damages and attorney fees of $33,161.70. To this amount the Court will add a punitive damage award of $16,838.30, for a total judgment of $50,000. The Court will enter a separate final judgment.

David T. Thuma
United States Bankruptcy Judge

Entered: June 23, 2017.

Copies to:

All case participants listed in CM/ECF.

-14-

# Notice Recipients

District/Off: 1084-1          User: aderosa          Date Created: 6/23/2017
Case: 15-01047-t             Form ID: pdfor1        Total: 5

**Recipients of Notice of Electronic Filing:**

| | | |
|---|---|---|
| aty | Jennie Bebles | filings@ybebles.com |
| aty | R Trey Arvizu, III | trey@arvizulaw.com |
| aty | W. T. Martin Jr. | martinlaw@zianet.com |
| aty | W. T. Martin Jr. | martinlaw@zianet.com |

                                                                    TOTAL: 4

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

| | | | | |
|---|---|---|---|---|
| aty | Kenneth Dugan | Martin, Dugan and Martin Law Firm | 509 W. Pierce St | PO Box |
| | 2168 | Carlsbad, NM 88221-2168 | | |

                                                                    TOTAL: 1

**FILED**
U.S. Bankruptcy Appellate Panel
of the Tenth Circuit
Page: 1 of 23
**April 3, 2018**

**Blaine F. Bates**
**Clerk**

PUBLISH

### UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE TENTH CIRCUIT

| | |
|---|---|
| IN RE FRED DALE VAN WINKLE,<br><br>Debtor. | BAP No. NM-17-031<br>BAP No. NM-17-032<br>BAP No. NM-17-033 |
| TAMMY SPRAGUE, personal representative of the estate of Fred Dale Van Winkle,<br><br>Plaintiff – Appellee,<br><br>v.<br><br>JOHN WILLIAMS, ELLEN B. WILLIAMS, and BELLEVIEW VALLEY LAND CO., INC.,<br><br>Defendant – Appellants. | Bankr. No. 13-11743<br>Chapter 7<br><br><br>OPINION |

Appeal from the United States Bankruptcy Court
for the District of New Mexico

W.T. Martin, Jr. (Jennie D. Behles, Albuquerque, New Mexico with him on the brief) of Martin, Dugan & Martin, Carlsbad, New Mexico, Attorneys for Defendant – Appellants.

R. "Trey" Arvizu, III Las Cruces, New Mexico, Attorney for Plaintiff – Appellee.

Before **KARLIN**, Chief Judge, **NUGENT**, and **MOSIER**, Bankruptcy Judges.

**KARLIN**, Chief Judge.

John Williams, Ellen Williams, and Belleview Valley Land Co., Inc. (the

"Appellants") appeal three bankruptcy court rulings: (1) the *Order Denying*

**EXHIBIT "13"**

*Motion to Dismiss for Lack of Jurisdiction;*[1] (2) the *Order Granting Partial Summary Judgment and Denying Other Relief;*[2] and (3) the *Final Judgment,*[3] which ordered Appellants to pay $50,000 in actual and punitive damages. Appellants contend the bankruptcy court erred in denying their motion to dismiss for lack of jurisdiction, failing to certify issues to the New Mexico Supreme Court, finding Appellants violated the discharge injunction and a court order, and awarding compensatory and punitive damages. Because we interpret New Mexico law to allow a judgment lien to reattach upon redemption by the owner of foreclosed property, we reverse the bankruptcy court's finding that Appellants violated the discharge injunction, affirm the finding that Appellants violated a court order, and remand for further findings regarding damages.

## I.   Facts

In 2008, Fred Van Winkle (the "Debtor") brought an action against the Appellants to quiet title in Otero County, New Mexico. Appellants counterclaimed and in 2010 ultimately obtained a money judgment against the Debtor for $261,656 (the "Judgment Lien"). Appellants filed transcripts of that judgment in Otero, Roosevelt, and Lincoln Counties, New Mexico because the Debtor owned two tracts in Otero County (one seven acre tract and one thirty acre tract—the "Otero Land"), his residence, a condominium, in Lincoln County (the "Condo"), and a one-half interest in 311 acres in Roosevelt County.

The Debtor filed this Chapter 7 proceeding in May 2013. The Debtor claimed as exempt $60,000 in equity in the Condo under New Mexico's homestead exemption. In Schedule D (Creditors Holding Secured Claims), the

---

[1]   Appellants' App. at 358.

[2]   Appellants' App. at 950.

[3]   Appellants' App. at 1051. Although the Appellants appealed the three orders separately, the Bankruptcy Appellate Panel entered an *Order Joining Appeals* on July 7, 2017. BAP ECF No. 4.

-2-

Debtor listed both the first mortgage on the Condo in the amount of $12,000 in favor of First National Bank of Ruidoso (the "First Mortgage") as well as the Judgment Lien.

In September 2013, soon after receiving his discharge, the Debtor filed a motion to avoid the Judgment Lien on the Condo, seeking to avoid the lien to the extent it impaired the $60,000 homestead exemption allowed by New Mexico law. Appellants objected (as the record reveals they did at almost every turn), stating the obvious—that the Debtor could only exempt the $60,000 sought, and no more. Before the matter could be decided, the Debtor passed away (in April 2014).

The Debtor's daughter, Tammy Sprague, became the personal representative of his probate estate.[4] Sprague and the Appellants entered into a stipulated order resolving the *Motion to Avoid Judicial Lien* (the "Stipulated Order"). It valued the Condo at $100,000 and avoided the Judgment Lien to the extent it impaired the Debtor's $60,000 exemption—capping the Judgment Lien against the Condo to the remainder after payment of the First Mortgage and the $60,000 exemption.

## I. Foreclosure of the Otero Land

In August 2013, Appellants obtained stay relief to allow them to complete the 2010 action to foreclose the Judgment Lien against the Otero Land. In May 2014, the New Mexico court entered a final judgment of foreclosure; that judgment expressly provided that no *in personam* deficiency could be entered against the Debtor.

The appointed special master conducted a sale of the Otero Land in July 2014. Appellants Ellen and John Williams were the high bidders, credit bidding $67,000 of the Judgment Lien. The special master recorded a deed conveying the Otero Land to the Williamses. Appellants requested the New Mexico court amend

---

[4]    Even though the Debtor died in April 2014, we will continue to refer to him as "the Debtor," or as "Sprague," as appropriate for clarity.

-3-

the foreclosure judgment to specify that the deficiency judgment was then $271,905 plus interest, after crediting the bid against the balance due (the "Deficiency Judgment"). The Deficiency Judgment provided

> [t]he deficiency is a lien on the debtor's . . . real estate. While no deficiency judgment is granted on an *in personam* basis against the Estate of Fred Van Winkle, deceased, the lien created by the deficiency is collectable as provided . . . [by New Mexico law]. The deficiency also remains collectable by the [p]laintiffs through legal action, or actions, to enforce judgment liens as they may exist in other New Mexico counties.[1]

Appellants recorded a transcript of the Deficiency Judgment in Otero County in August 2014 (although the only land the Debtor had owned in Otero County was the subject of the foreclosure).

In March 2015, approximately eight months after the sale, Sprague amended the Debtor's Schedule B (Personal Property) to add as an asset of the bankruptcy estate the New Mexico statutory right of redemption in the Otero Land. She then filed a motion seeking abandonment of the estate's interest in that right of redemption. Neither Appellants nor the trustee objected, and the bankruptcy court granted the motion. Immediately thereafter, Sprague timely filed a petition in state court to redeem the Otero Land and deposited in the court registry the $73,200 required by statute. Appellants responded first by asserting Sprague was required to pay the entire remaining Deficiency Judgment to successfully redeem. They also filed a new petition to foreclose the Deficiency Judgment along with a motion for summary judgment. The petition to redeem remains pending in the state court, and Appellants still hold title to the Otero Land.

### 2.    Foreclosure of the Condo

Appellants were simultaneously trying to enforce the Judgment Lien against the Condo. One of the Appellants, John Williams, purchased the First

---

[1]    *Amended Order Approving Special Master's Report & Granting Deficiency Judgment* at 3-4, *in* Appellants' App. at 676-77.

-4-

Mortgage from First National Bank of Ruidoso in August 2013. In May 2015, Appellants filed a complaint in Lincoln County seeking to foreclose the First Mortgage and the Judgment Lien encumbering the Condo. The prayer for relief in the amended foreclosure complaint requested, among other things, that Williams be granted judgment on the note he claimed to have purchased for $15,034, plus "[i]nterest at the rate of 20% per annum . . . ; plus [] Late Charges . . . ; plus [] Rent in the amount of $13,650 through April 20, 2015."[6] Ultimately, Appellants prayed that the proceeds of any Special Master's sale be applied to satisfy (1) the First Mortgage to Williams; (2) the homestead exemption; and (3) "the balance of [Appellants'] judgment lien—payable to [Appellants]."[7]

### 3.   The Adversary Proceeding

Soon after the Condo foreclosure was filed, Sprague filed an adversary proceeding in the bankruptcy court alleging the Appellants violated the discharge injunction and the terms of the Stipulated Order. The parties agreed to a stay of both foreclosure actions. Appellants filed a motion to dismiss the adversary proceeding for lack of jurisdiction (the "Motion to Dismiss"),[8] which the bankruptcy court denied along with a motion to reconsider that dismissal.[9]

Sprague filed a *Motion for Partial Summary Judgment as to Liability* for violation of the discharge injunction and for failure to comply with the Stipulated

---

[6]   *Complaint for Judgment for Debt and Money Due on Promissory Note, to Foreclose Real Estate Mortgage and to Foreclose Judgment Lien* at 7, *in* Appellants' App. at 1481.

[7]   *Opinion* at 6, *in* Appellants' App. at 939.

[8]   *Motion to Dismiss for Lack of Jurisdiction*, *in* Appellants' App. at 320. Appellants argued (1) the adversary proceeding was not a core proceeding; (2) the bankruptcy court lacked jurisdiction under *Stern v. Marshall*, 564 U.S. 462 (2011); and (3) continuing in the bankruptcy court impaired Appellants' right to a jury trial. *Memorandum Opinion* at 4, *in* Appellants' App. at 349.

[9]   *Order Denying Motion to Reconsider*, *in* Appellants' App. at 620; *Memorandum Opinion*, *in* Appellants' App. at 611. The *Order Denying Motion to Dismiss for Lack of Jurisdiction* and the *Memorandum Opinion* are appealed in BAP appeal NM-17-033.

Order. Appellants responded, but also sought to rescind their agreement to stay the foreclosure cases[10] and to certify legal issues to the New Mexico Supreme.[11] The bankruptcy court entered the *Order Granting Partial Summary Judgment and Denying Other Relief* and the *Opinion* that: (1) denied certification of issues to the New Mexico Supreme Court; (2) granted partial summary judgment against Appellants for violation of the discharge injunction; (3) declined to enter summary judgment on the issue of violation of the Stipulated Order without additional factfinding; and (4) denied Appellants' motion to set aside the stay of the foreclosure actions.[12]

The bankruptcy court conducted a trial on the issue of whether Appellants violated the Stipulated Order and whether damages were warranted for violation of the discharge injunction and the Stipulated Order. In its *Final Judgment* and *Opinion*, the bankruptcy court held that Appellants had willfully violated the discharge injunction by their actions in the Otero Land foreclosure and had violated the Stipulated Order by their actions in the Condo foreclosure.[13] The bankruptcy court awarded Sprague $33,161.70 in actual damages and attorneys' fees, and $16,838.30 in punitive damages, for an even $50,000 in damages.

## II.    Appellate Jurisdiction & Standards of Review

"With the consent of the parties, this Court has jurisdiction to hear timely-filed appeals from 'final judgments, orders, and decrees' of bankruptcy courts

---

[10]    *Motion to Set Aside the Stipulated Order in Regard to Stay, in* Appellants' App. at 779.

[11]    *Petition for Certification to the New Mexico Supreme Court, in* Appellants' App. at 861.

[12]    *Order Granting Partial Summary Judgment and Denying Other Relief, in* Appellants' App. at 950; *Opinion, in* Appellants' App. at 934. These two orders are appealed in BAP NM-17-031.

[13]    *Final Judgment, in* Appellants' App. at 1051; *Opinion, in* Appellants' App. at 1037. These orders are appealed in BAP NM-17-032.

-6-

within the Tenth Circuit."[14] An order resolving all claims asserted in an adversary proceeding is a final order for purposes of appeal.[15] Neither party elected for these appeals to be heard by the United States District Court pursuant to 28 U.S.C. § 158(c). Accordingly, this Court has jurisdiction over these matters.

Appellate courts review the denial of a motion to dismiss for lack of subject matter jurisdiction *de novo.*[16] Similarly, a grant of summary judgment is reviewed *de novo.*[17] The denial of a motion for certification of a question of state law is reviewed for abuse of discretion.[18] Whether a creditor violated the discharge injunction is a question of law reviewed *de novo.*[19] Whether the violation of the discharge injunction was willful is a factual finding reviewed for clear error.[20] A determination that an action violated a court order is reviewed for an abuse of discretion.[21] Finally, an award of damages and attorneys' fees for

[14]    *Straight v. Wyo. Dep't of Trans. (In re Straight)*, 248 B.R. 403, 409 (10th Cir. BAP 2000) (quoting 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1)).

[15]    *Adelman v. Fourth Nat'l Bank & Tr. Co, N.A.. of Tulsa (In re Durability, Inc.)*, 893 F.2d 264, 266 (10th Cir. 1990) ("the appropriate 'judicial unit' for application of [] finality requirements in bankruptcy is not the overall case, but rather the particular adversary proceeding . . . pursued within the broader framework cast by the petition."); *see Montgomery v. City of Ardmore*, 365 F.3d 926, 934 (10th Cir. 2004) (quoting *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1104 (10th Cir. 2002)) ("a notice of appeal which names the final judgment is sufficient to support review of all earlier orders that merge in the final judgment.").

[16]    *Merrill Lynch Bus. Fin. Servs., Inc. v. Nadell*, 363 F.3d 1072, 1074 (10th Cir. 2004); *Smith v. Colo. Sup. Ct. (In re Smith)*, No. CO-07-028, 2007 WL 4227255, at *2 (10th Cir. BAP Dec. 3, 2007).

[17]    *Dillon v. Fibreboard Corp.*, 919 F.2d 1488, 1490 (10th Cir. 1990).

[18]    *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1235 (10th Cir. 2012).

[19]    *In re Houlik*, 481 B.R. 661, 668 (10th Cir. BAP 2012) (citing *Culley v. Castleberry (In re Culley)*, No. NM-05-105, 2006 WL 2091199, at *2 (10th Cir. BAP July 24, 2006)).

[20]    *Id.*

[21]    *In re Lucre Mgmt. Grp., LLC*, 365 F.3d 874, 875 (10th Cir. 2004) (citing *Fed. Trade Comm'n v. Kuykendall*, 312 F.3d 1329, 1333 (10th Cir. 2002)); *cf.*

(continued...)

violation of the discharge injunction or for violation of a court order is reviewed for abuse of discretion.[22]

### III. Analysis

#### 1.    The Bankruptcy Court's Jurisdiction

Appellants argue the bankruptcy court erred in determining it had jurisdiction over the adversary proceeding in light of the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine "precludes federal district courts from exercising appellate jurisdiction over actually-decided claims in state courts" and "adjudicating claims inextricably intertwined with previously-entered state court judgments."[23] This is because the Supreme Court is the only federal court empowered to exercise appellate jurisdiction to reverse or modify a state court judgment.[24] As very recently clarified by the Tenth Circuit Court of Appeals in *Mayotte v. U.S. Bank, N.A.*,[25] a *Rooker-Feldman* issue only exists to the extent a federal action "tries to *modify or set aside* a state-court judgment because the

---

(...continued)

*Auto-Owners Ins. Co. v. Summit Park Townhome Assoc.*, ___ F.3d ___, Nos. 16-1348, 16-1352, 2018 WL 1559980, at *7 (10th Cir. Mar. 30, 2018) (giving deference to trial court's interpretation of its own orders (citing *Chi., Rock Island & Pac. R.R. v. Diamond Shamrock Ref. & Mktg. Co.*, 865 F.2d 807, 811 (7th Cir. 1988))).

[22]    *Peyrano v. Sotelo (In re Peyrano)*, No. EO-16-032, 2017 WL 2731299, at *3 (10th Cir. BAP June 26, 2017) (citing *Anchondo v. Anderson, Crenshaw & Assoc.*, 616 F.3d 1098, 1101 (10th Cir. 2010)) (reviewing award of attorneys' fees for abuse of discretion). Courts review the constitutionality of punitive damages *de novo*. *Culley*, No. NM-05-105, 2006 WL 2091199, at *2 (10th Cir. BAP July 24, 2006) (citing *Cooper Indus. Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 436 (2001)).

[23]    *Culley*, 2006 WL 2091199, at *2 (citing *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233 (10th Cir. 2006)) (explaining that in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005), the Supreme Court has limited the *Rooker-Feldman* doctrine to "cases brought by state-court losers complaining of injuries caused by state-court judgments.").

[24]    *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

[25]    *Mayotte v. U.S. Bank Nat'l Ass'n for Structured Asset Inv. Loan Tr. Mortg. Pass-Through Certificates, Series 2006-4*, 880 F.3d 1169, 1174 (10th Cir. 2018).

state proceedings should not have led to that judgment." In other words, there is a *Rooker-Feldman* issue if the federal suit alleges that a defect in the state court proceedings should invalidate the state judgment.

Applying this reasoning here, we must consider whether the success of the claims Sprague raised in the adversary proceeding was contingent upon demonstrating any prior state court judgment was reached in error. Sprague's adversary complaint sought damages for Appellants' violation of the discharge injunction under 11 U.S.C. § 542[26] and for violation of the Stipulated Order. Appellants admit no state court has made findings or entered a decision determining those issues. The only state court findings centered around whether Appellants could foreclose the Judgment Lien and the amount of the Deficiency Judgment; Sprague's complaint challenged none of those findings.

Furthermore, bankruptcy courts clearly have jurisdiction to review alleged violations of their own orders, including civil contempt matters arising out of core matters.[27] Issuing an order to enforce its own orders—the discharge order and the Stipulated Order—neither required the bankruptcy court to challenge the state court proceedings nor to set aside or unwind any state court decision as explained in *Mayotte*. Appellants argue that even if the state court had not yet issued a decision, *Rooker-Feldman* was nonetheless implicated because the parties had briefed some overlapping issues that the bankruptcy court might need to decide. They are wrong. The state court did not have the opportunity to enter a decision on those issues because the parties had agreed to stay the state court matters pending resolution of the adversary proceeding in bankruptcy court.

---

[26] All future references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated.

[27] *In re Skinner*, 917 F.2d 444, 447-8 (10th Cir. 1990) (concluding bankruptcy court had authority to issue sanctions for violation of automatic stay); *see also In re Unioil*, 948 F.2d 678, 682 (10th Cir. 1991) (holding "bankruptcy court had the inherent power to enforce its [own] order").

In light of *Mayotte*, which was issued after the parties briefed the issue, but before oral argument (at which time Appellants still argued the doctrine applicable), it is simply frivolous to argue the bankruptcy court lacked jurisdiction.[28] Accordingly, the bankruptcy court committed no error in determining it had jurisdiction over Sprague's adversary complaint.

## 2. Certification of Issues to the New Mexico Supreme Court

"Whether to certify a question of state law to the state supreme court is within the discretion of the federal court."[29] Federal courts must "'apply judgment and restraint before certifying,' and 'will not trouble our sister state courts every time an arguably unsettled question of state law'' arises.[30] Federal courts are bound to apply state law when necessary and "must determine what decision the state court would make if faced with the same facts and issue."[31]

As a preliminary matter, it is unclear whether Appellants are challenging the bankruptcy court's decision declining to certify questions, or this Court's own motions panel decision, which also denied certification. They elected not to brief the issue in their opening brief, instead incorporating by reference earlier briefing

---

[28]     Appellants argued this Court should apply *Gogola v. Zingale*, 141 F. App'x 839 (11th Cir. 2005), an unpublished decision from the Eleventh Circuit, instead of *Mayotte*.

[29]     *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988) (first citing *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974); and then citing *Holler v. United States*, 724 F.2d 104, 105-06 (10th Cir. 1983)) (affirming denial of certification of issue to New Mexico Supreme Court); *Massengale v. Okla. Bd. of Exam'rs in Optometry*, 30 F.3d 1325, 1331 (10th Cir. 1994) ("Certification of state law questions is not automatic . . . but discretionary.").

[30]     *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1235-36 (10th Cir. 2012) (quoting *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007)); *Armijo*, 843 F.2d at 407 ("Certification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law.") (citing *L. Cohen & Co. v. Dun & Bradstreet*, 629 F.Supp. 1419, 1425 (D. Conn. 1986)).

[31]     *Armijo*, 843 F.2d at 407 (first citing *Farmers All. Mut. Ins. Co. v. Bakke*, 619 F.2d 885, 888 (10th Cir. 1980); and then citing *Hartford v. Gibbons & Reed Co.*, 617 F.2d 567, 569 (10th Cir. 1980)).

-10-

on the motion made to this Court.[32] They also elected not to address the issue at oral argument. Because Appellants have failed to sufficiently set forth the bankruptcy court's error in denying certification, and because "[a]n issue or argument insufficiently raised in the opening brief is deemed waived,"[33] we decline to consider the certification argument.

### 3.    Violation of the Discharge Injunction

Appellants argue that their actions in recording the Deficiency Judgment, after the foreclosure sale of the Otero Land, and then demanding payment in full in response to the Debtor's petition for redemption, do not constitute postdischarge attempts to collect a prebankruptcy debt against the Debtor, notwithstanding the original debt's prebankruptcy origins. They base this argument on New Mexico case law interpreting New Mexico's redemption statute (New Mexico Statute § 39-5-18), which they claim allows judgment lienholders to re-foreclose, on an *in rem* basis, any remaining balance due on the already foreclosed property even after redemption by the former property owner.

In New Mexico, the holder of a money judgment can create a judgment lien against a debtor's real property by filing a transcript of the judgment with the clerk of the county where the real estate is located.[34] That lien can be foreclosed "in the same manner as ordinary suits for the foreclosure of mortgages."[35] After foreclosure, a debtor may redeem the property within nine months by paying the

[32]    Appellants' Br. 48 ("The issue was fully briefed and argued in the *Motion for Certification*. For that reason, Issue III will not be further briefed.").

[33]    *Becker v. Kroll*, 494 F.3d 904, 913 n.6 (10th Cir. 2007) (citing *Headrick v. Rockwell Int'l Corp*, 24 F.3d 1272, 1277-78 (10th Cir. 1994)); *Krumm v. Holder*, 594 Fed. App'x 497, 501 (10th Cir. 2014) (stating party waives an inadequately briefed issue); *Mooring Capital Fund, LLC v. Knight*, 388 F. App'x 814, 823 n.4 (10th Cir. 2010) (stating where brief does not develop issue beyond cursory identification, issue is considered waived).

[34]    N.M. Stat. Ann. § 39-1-6 (1978).

[35]    N.M. Stat. Ann. § 39-4-13 (1978).

purchaser the amounts set forth in New Mexico Statute § 39-5-18, or by filing a petition for redemption that is accompanied by payment of the same amounts to the county clerk.[36]

In *Construction Engineering & Manufacturing Co. v. Don Adams Mining Co.*,[37] the New Mexico Supreme Court held that, although a debtor need only pay the amount paid at a foreclosure sale, plus taxes, interest, and penalties, in order to redeem a foreclosed property, "[o]nce the mortgagor redeems foreclosed property, it again becomes part of his real estate and thus subject to the [prior] judgment lien and foreclosure. A foreclosure suit would then be the proper remedy to effect payment of the amount of the deficiency."[38]

In *Turner v. Les File Drywall*,[39] the New Mexico Supreme Court effectively reiterated its holding that redeemed property is again subject to a previously foreclosed judgment lien. In *Turner*, the debtor/original owner of the foreclosed property sold his right of redemption to a third party. The third party then exercised the right of redemption. When the holder of the lien tried to re-foreclose the property now owned by the third party, the state court denied the requested relief. On appeal, the New Mexico Supreme Court rejected the lienholder's argument that a debtor can assign no greater rights than he possessed, instead favoring application of the rule that the property of one is not subject to the payment of debts held by another. As a result, it held that the judgment lien would not follow the redeemed real estate if the debtor owner transferred the property (in good faith) to a third party who then redeemed it. The clear implication of this decision is that while a creditor *cannot* re-foreclose on property redeemed by a third party, that same creditor *can* re-foreclose on

---

[36]   N.M. Stat. Ann. § 39-5-18 (1978).

[37]   572 P.2d 1246 (N.M. 1977).

[38]   *Id.* at 1248. *See also* N.M. Stat. Ann. § 39-4-13 (1978).

[39]   868 P.2d 652 (N.M. 1994).

-12-

property redeemed by the original debtor.

To rebut these holdings, Sprague relies on § 524(a)(2), which "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such [discharged] debt as a personal liability of the debtor."[40] Sprague argued, and the bankruptcy court concluded, that when the Debtor received his discharge, that discharge intervened to eliminate any part of the judgment that was not satisfied by the first sale of the property. The bankruptcy court noted that it would not make policy sense to allow the repeated foreclosure of property postredemption, and it ultimately held that once the Debtor redeemed the property from the sale, it became "after-acquired" property. As such, Appellants could not then seek to attach the Judgment Lien to the redeemed property since it was not property owned on the date of the bankruptcy petition. From that reasoning, the bankruptcy court held that Appellants' actions to pursue collection of its Deficiency Judgment against that "after-acquired" property violated the discharge injunction.

These conclusions misapply the New Mexico Supreme Court's holdings in *Construction Engineering* and *Les File Drywall* that redeemed real property "*once again* becomes part of the mortgagor's real estate subject to prior judgment liens."[41] In New Mexico, judgment liens attach to real property acquired by a judgment debtor after the date a transcript of judgment is filed, including property lost at foreclosure but reacquired through redemption.[42] However, nothing in the New Mexico Supreme Court's interpretation of the law indicates property redeemed is newly acquired property—rather, the property "again becomes part of

[40]    11 U.S.C. § 524(a)(2).

[41]    *Turner*, 868 P.2d at 653 (citing *Constr. Eng'g*, 572 P.2d at 1248) (emphasis added).

[42]    *Opinion* at 10, *in* Appellants' App. at 943. *See also Const. Eng'g*, 572 P.2d at 1248.

-13-

[a debtor's] real estate."[43] While this statutory scheme, which allows repeated foreclosures, appears to conflict with New Mexico's stated public policy behind redemptions,[44] it is nonetheless the law of New Mexico.

The *Special Master's Deed* indicates title to the Otero Land passed to Appellants on July 8, 2014.[45] Sprague timely filed a petition to redeem on April 20, 2015.[46] Appellants objected to Sprague's redemption in the state court and simultaneously filed another action to foreclose the Deficiency Judgment. While Appellants were admittedly procedurally premature in seeking to re-foreclose their Deficiency Judgment, as they still held title to the Otero Land because the state court redemption proceeding was stayed pending resolution of the bankruptcy issues, their complaint did not seek collection of the discharged debt *in personam*.[47] As a result, the filing of the postredemption foreclosure action was not in violation of § 524(a)(2) because, under New Mexico law, a deficiency judgment may become a postredemption lien on the real property once properly transcribed. So long as Appellants were not seeking to hold the Debtor personally liable for the deficiency judgment, and were instead merely pursuing any remaining value in the non-exempt real estate, their actions did not constitute a

---

[43]    *Const. Eng'g*, 572 P.2d at 1248.

[44]    *See Chase Manhattan Bank v. Candelaria*, 90 P.3d 985, 987 (N.M. 2004) ("One of the purposes of the redemption statute is to give the property owner . . . a reasonable opportunity to redeem the property.") (citing *W. Bank. of Las Cruces v. Malooly*, 895 P.2d 265, 271 (N.M. Ct. App. 1995); *see also Mortg. Elec. Registration Sys., Inc. v. Montoya*, 186 P.3d 256, 258 (N.M. Ct. App. 2008) (quoting *HSBC Bank USA v. Fenton*, 125 P.3d 644, 646 (N.M. Ct. App. 2005) *superseded by statute*, N.M. Stat. Ann. § 39-5-18 (2007)) ("[T]he commonly stated purposes of statutory redemption are to encourage full value bidding at foreclosure sales and to protect mortgagors.").

[45]    Appellants' App. at 450.

[46]    *Opinion* at 5, *in* Appellants' App. at 938.

[47]    *Id.* at 6, *in* Appellants' App. at 939.

discharge violation."

Nothing in the record suggests Appellants sought *in personam* relief, and in fact, the Deficiency Judgment expressly indicated it was a lien on the Debtor's real estate and "no deficiency judgment [was] granted on an in personam basis against the Estate of Fred Van Winkle."⁴⁹ We thus find that Appellants did not, in trying to enforce the Deficiency Judgment against the Otero Land, commit any "act, to collect, recover or offset any such [discharged] debt *as a personal liability of the debtor*," under § 524(a)(2). We therefore REVERSE the bankruptcy court's holding of a discharge violation.

### 4.    Violation of the Stipulated Order

Although we hold that Appellants did not violate the discharge injunction, we now review whether their actions taken in the Condo foreclosure violated the terms of the Stipulated Order. This question is quickly answered by a careful review of two documents: the Stipulated Order and the complaint Appellants filed in state court to foreclose Williams' first mortgage and Appellants' Judgment Lien on the Condo.⁵⁰

The parties agreed by the terms of the Stipulated Order that the Judgment Lien was "partially avoided and attache[d] only to the extent of any value over and above the stipulated value of the [Condo] ($100,000) less the payoff of the First Mortgage less the Debtor's allowed Homestead Exemption ($60,000)."⁵¹ In

---

⁴⁸    *Turner*, 868 P.2d at 653; *Const. Eng'g*, 572 P.2d at 1248; *see also Dewsnup v. Timm*, 502 U.S. 410, 417-18 (1992) (explaining lien rights pass through bankruptcy unaffected).

⁴⁹    *See Opinion* at 5, *in* Appellants' App. at 938 (quoting the *Amended Order Approving Special Master's Report & Granting Deficiency Judgment* at 3, *in* Appellants' App. at 448).

⁵⁰    *First Amended Complaint for Judgment for Debt and Money Due on Promissory Note, to Foreclose on Real Estate Mortgage and to Foreclose Judgment Lien, in* Appellants' App. at 1521.

⁵¹    Stipulated Order at 2, *in* Appellants' App. at 121. The Order also provided
(continued...)

-15-

their prayer for relief in the subsequent foreclosure complaint, however,
Appellants requested the proceeds of the foreclosure sale be distributed in the
following priority: "(1) satisfaction of the [First Mortgage]-payable to John
Williams;[51] (2) $60,000 for the homestead exemption-payable to the [Debtor's]
Estate; and (3) the balance of [Appellants'] judgment lien-payable to
[Appellants]."[53]

    The bankruptcy court correctly determined that Appellants violated the
Stipulated Order by requesting payment of the entire remaining balance of the
Judgment Lien, instead of limiting the amount due on the First Mortgage and
Judgment Lien to a combined total of $40,000, as the Stipulated Order clearly
contemplated. This example illustrates the distribution contemplated by the
Stipulated Order. If the Condo sold for $110,000 on the date of the foreclosure
complaint (thus using the numbers in that complaint), Williams should have
received approximately $20,199 on the First Mortgage (assuming no advances,
etc.), the Debtor would have received the $60,000 representing the homestead
exemption, the Appellant Judgment Lienholders would have received $19,801
($100,000 stipulated value minus $20,199 then minus $60,000), and all sale
proceeds in excess of $100,000—or $10,000 in this example—would have

---

[51]    (...continued)
this: "when the amount of the payoff of the First Mortgage is known, the Court
will enter a further order establishing the exact amount of [Appellants'] judicial
lien that can be applied against the [Condo]." *Id.* It does not appear that
subsequent order has been entered.

[52]    The complaint indicated the note balance was $15,034 (purchase price),
plus $5,125 interest through April 20, 2015, plus daily accrual of $8.24, plus $40
in late charges. It also generally referenced amounts advanced and attorney fees.
At oral argument, Appellants counsel indicated the balance on the note now
"exceeds $50,000." As an aside, Appellants also incorrectly sought a finding that
on top of the principal and interest due on the note, accrued rents in the amount of
$13,650 through April 20, 2015 should be added to its judgment. However,
Appellants' interest in any rents is limited to security for repayment of the
promissory note, not an additional obligation to be added to principal, as
Appellants' counsel admitted during oral argument.

[53]    *Opinion* at 5, *in* Appellants' App. at 1041.

-16-

belonged to the Debtor.

Because Appellants' demand for payment of the entire remaining balance
of the Judgment Lien disregarded the limitations in the Stipulated Order, the
bankruptcy court correctly found Appellants in contempt of that order.

### 5.   Damages

The bankruptcy court awarded $33,161.70 in actual damages and attorneys'
fees and $16,838.30 in punitive damages, for a total judgment of $50,000. The
actual damages were derived from the attorneys' fees and costs itemized at trial;
the bankruptcy court did not explain how it arrived at the punitive damage award.
The bankruptcy court based the actual damage award on its determination that
Appellants willfully violated the discharge injunction. It elected not to also assess
damages for the contempt of the Stipulated Order, effectively finding that the
time spent by the Debtor's counsel in prosecuting the discharge injunction
essentially overlapped the time spent on the contempt of the Stipulated Order.

Appellants first argue the bankruptcy court erred in assessing any damages
because no violation of the discharge or the Stipulated Order occurred. While we
reverse the bankruptcy court's finding of a violation of the discharge injunction,
we affirm the bankruptcy court's determination that Appellants violated the
Stipulated Order, so some damage award is undoubtedly appropriate. Bankruptcy
courts clearly have the power to enter monetary sanctions against a party for civil
contempt,[54] and the amount of sanctions awarded for civil contempt is reviewed
for abuse of discretion.[55]

[54]   *In re Skinner*, 917 F.2d 444, 448 (10th Cir. 1990) (holding bankruptcy
courts may impose sanctions for civil contempt to compel compliance with a
court order or compensate parties for losses caused by noncompliance pursuant to
§ 105); *In re Scrivner*, 535 F.3d 1258, 1265 n.3 (10th Cir. 2008) (same).

[55]   *Auto-Owners Ins. Co. v. Summit Park Townhome Assoc.*, ___ F.3d ___,
Nos. 16-1348, 16-1352, 2018 WL 1559980, at 8 (10th Cir. Mar. 30, 2018)
(holding abuse of discretion standard requires appellate court to "consider
whether the [trial] court's determination appears reasonable in light of the
(continued...)

-17-

Appellants next argue the bankruptcy court erred in awarding any fees without receiving expert testimony regarding the reasonableness of the attorneys' hourly rates and hours billed. We reject this argument as Appellants neither objected to the reasonableness of the itemized hours nor to the $200-225 hourly rate sought. Instead, in their post-trial brief, they argued that the reasonableness of fees must be shown through expert testimony, and because no such testimony was received, no fees could be allowed.

The bankruptcy court is authorized "to independently determine reasonable fees" under the Bankruptcy Code.[36] As a result, we see no reason why expert testimony is necessary for the court to determine whether the attorneys' fees were reasonable in this case. This is especially the case when the objecting party fails to object to either any specific time entries or to the hourly rate.

Appellants also argue the bankruptcy court did not have jurisdiction to award actual damages for Sprague's time, instead arguing her fees should be determined by the probate court.[37] We disagree. First, because her time was incurred in prosecuting the adversary filed in the bankruptcy court, the bankruptcy court was in the best position to determine what fee should be allowed. Second, awarding fees for that personal representative's time in the

---

[35]     (...continued)
complexity of the case, the number of strategies pursued, and *the responses necessitated by the other parties maneuvering*. But we do not require the [trial] court to identify and justify every hour allowed or disallowed.") (emphasis added) (citations omitted) (first citing *AeroTech, Inc. v. Estes*, 110 F.3d 1523, 1528 (10th Cir. 1997); and then citing *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996))).

[36]     *In re Market Ctr. E. Retail Prop., Inc.*, 730 F.3d 1239, 1246 (10th Cir. 2013) (citing *In re Commercial Fin. Servs., Inc.*, 427 F.3d 804, 810 (10th Cir. 2005)) (holding § 330 authorizes bankruptcy court to determine reasonableness of fees).

[37]     Appellants also claim a personal representative's compensation is "limited to the statutory rate of $35.00 a day and approximately $.50 per mile." Appellants' Br. 71. They cite no authority for this proposition, and the Court could find none.

probate estate would result in those fees being paid by the Debtor's beneficiaries out of estate assets, not by Appellants—the parties responsible for so much unnecessary time and labor their actions caused the probate estate's representative.

The bankruptcy court has discretion to enter monetary sanctions for contempt of the Stipulated Order, and it is competent to determine whether the damages originally awarded, including attorneys' fees and the representative's costs and fees, remain reasonable, upon remand, in light of these holdings.[58] But because we reverse the bankruptcy court's finding that Appellants violated the discharge injunction, and the bankruptcy court did not make specific findings for damages related solely to the violation of the Stipulated Order, we remand for the calculation of actual and punitive damages resulting only from Appellants' contempt of the Stipulated Order.

Finally, specifically with regard to punitive damages, we do not suggest—by noting the bankruptcy court did not indicate how the punitive damage award was arrived at—that the bankruptcy court's decision to award punitive damages was in error. We agree that the record is replete with examples where positions taken by the Appellants appeared to be an unnecessarily relentless pursuit to collect the Judgment Lien, often without regard to the law or the practicalities of litigation.

This Court identified, in a thorough review of the record on appeal, numerous actions that support the bankruptcy court's conclusion that Appellants were "litigious" and "aggressive," including: the premature filing of the second foreclosure on the Otero Land prior to the state court declaring the redemption

---

[58]    *In re Skinner*, 917 F.2d 444, 448 (10th Cir. 1990); *see Commercial Fin. Servs..*, 427 F.3d at 810 (citing *In re Miniscribe Corp.*, 309 F.3d 1240, 1244 (10th Cir. 2002)) ("bankruptcy courts have wide discretion in awarding compensation to attorneys, trustees, and professionals so long as it is reasonable.").

effective and while it still held title; improperly delaying the redemption process by arguing Sprague must pay the entire amount due on the First Mortgage to properly redeem, which was clearly unsupported by state law;[59] seeking rents in addition to the balance of the First Mortgage on the Condo when not entitled to do so under the loan documents; seeking a writ of mandamus from the United States District Court for the District of New Mexico to obtain a ruling on the *Rooker-Feldman* jurisdictional issues when it was clear that doctrine was not applicable;[60] continuing to assert that the bankruptcy court lacked jurisdiction when the disputes clearly involved violations of the discharge order and contempt of the bankruptcy court's own order, none of which had been decided by the state court; originally arguing, against clear Tenth Circuit authority, that the Debtor's estate lost its homestead exemption upon the Debtor's post-petition death;[61] agreeing to a stipulation as to the Condo and then attempting to set the agreement aside; and agreeing to stay the state court foreclosures and then attempting to set that agreement aside. Even in this Court, Appellants submitted a voluminous (1,679 pages), internally redundant, and mostly unnecessary record on appeal.

Accordingly, by remanding, we only suggest this Court is unable to ascertain how the bankruptcy court arrived at the punitive damage award and whether the amount remains appropriate in light of our reversal of the bankruptcy

---

[59]     *Exhibit E, Plaintiffs' Motion for Summary Judgment to Foreclose Judgment Lien and Supporting Brief* at 16, *in* Appellants' App. at 278.

[60]     While Appellants' argument to the bankruptcy court that it did not have jurisdiction over clearly core matters—the discharge injunction and enforcement of its own orders—was in itself a stretch, seeking a writ of mandamus in the district court, and then continuing to assert at oral argument that this Court should follow Eleventh Circuit precedent instead of binding Tenth Circuit precedent (*Mayotte v. U.S. Bank Nat'l Ass'n for Structured Asset Inv. Loan Tr. Mortg. Pass-Through Certificates, Series 2006-4*, 880 F.3d 1169, 1174 (10th Cir. 2018)), is even more troubling.

[61]     *Order Regarding to Motion to Avoid Judicial Lien and Setting Scheduling Conference* at 1-2, *in* Appellants' App. at 110-11.  *See Mansell v. Carroll*, 379 F.2d 682, 684 (10th Cir. 1967) (holding exemptions are fixed on date of filing petition); *Grattan v. Trego* 225 F. 705 (8th Cir. 1915) (holding debtor's estate entitled to homestead exemption after death).

court's finding that Appellants also violated the discharge injunction with its actions regarding the Otero Land.[62] Because we remand for a recalculation of damages, we do not further review the award of punitive damages.

### 6. Abandonment

To the extent Appellants allege Sprague acted in bad faith by obtaining an order abandoning the right of redemption for lack of value and then redeeming the Otero Land, we dismiss these allegations outright. Appellants and the Chapter 7 Trustee had the opportunity to object to the abandonment if they believed the property had value to the estate; neither elected to do so. And given the years of litigation surrounding that property, Appellants are hard-pressed to argue they were unaware of its value when faced with that motion to abandon.

It is also well settled that property may be burdensome to the bankruptcy estate despite retaining some value—especially when the asset at issue is embroiled in litigation, as it was here.[63] The Chapter 7 Trustee clearly did not believe the right of redemption retained any value for the estate, as evidenced by the filing of his final report,[64] noting that the Judgment Lien encumbered the Otero Land—which lien, by then, Appellants claimed exceeded $271,905, and for which land they only bid $67,000 at the foreclosure sale. It is this kind of

---

[62] See e.g. BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 575 (1996) (explaining to meet due process requirements regarding notice of the severity of potential penalty, an award of punitive damages must not be excessive). See also Diviney v. Nationsbank of Texas, N.A. (In re Diviney), 225 B.R. 762 (10th Cir. BAP 1998) (holding a court should both analyze, in determining whether punitive damages are warranted, whether a party acted with actual knowledge (or reckless disregard) that he was violating a federally protected right and the nature of the defendant's conduct, his ability to pay, his motives, and whether there was provocation by the debtor).

[63] In re Eurogas, Inc., 560 B.R. 574, 585-86 (Bankr. D. Utah 2016) (finding Chapter 7 Trustee exercised reasonable business judgment in determining asset involved in litigation was burdensome to the estate).

[64] Chapter 7 Trustee's Final Account and Distribution Report Certification that the Estate has been Fully Administered and Application to be Discharged, in Appellants' App. at 141; Order Approving Trustee's Final Report, Court Costs, and Trustee's Commission and Expenses, in Appellants' App. at 139.

-21-

allegation that furthers our finding that Appellants seem willing to make most any argument, regardless of its merits, to impede the Debtor's—and now his probate estate's—opportunity for the fresh start anticipated by the Bankruptcy Code.

### 7.    Appeal-related attorney fees.

The last issue we address concerns Sprague's prayer for appeal-related attorney fees. The Tenth Circuit has held that a prevailing party on appeal is not automatically entitled to an award of appeal-related attorney fees. Generally, the Tenth Circuit looks to see if attorneys' fees are allowed by a specific statute, and in the absence of a statutory provision, a party must make a specific application for appeal-related attorneys' fees.[65] In either case, the decision to award appeal-related attorneys' fees falls within the appellate court's discretion. If the court determines such fees are appropriate, it may then remand to the trial court the determination of the appropriate amount of fees.[66]

This Court denies Sprague's general request for appeal-related attorneys' fees for three reasons: (1) there is no explicit statutory provision entitling her to appeal-related attorneys' fees; (2) there was no separate application for fees as required; and (3) she is not the prevailing party on a significant issue that requires remand.

### IV.    Conclusion

Because we find that New Mexico redemption law mandates it, we REVERSE the bankruptcy court's determination that Appellants violated the discharge injunction. And although we AFFIRM the bankruptcy court's

---

[65]    *Crumpacker v. Kan. Dept. of Human Res.*, 474 F.3d 747, 755 (10th Cir. 2007) (quoting *Hoyt v. Robson Cos.*, 11 F.3d 983, 985 (10th Cir. 1993) (holding the district court does not have jurisdiction to award appeal-related attorneys' fees without a remand to do so)); Fed. R. Bankr. P. 8020(a) ("If the . . . BAP determines that an appeal is frivolous, it may, after a *separately filed motion or notice* from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee.") (emphasis added).

[66]    *Hoyt*, 11 F.3d at 985.

determination that Appellants violated the Stipulated Order, we REMAND the award of actual and punitive damages to the bankruptcy court to determine what damages are attributable to the violation of the Stipulated Order.

FILED
12TH JUDICIAL DISTRICT COURT
OTERO COUNTY NM
9/28/2018 3:03 PM
KATINA WATSON
CLERK OF COURT
Ian Bolinger

**STATE OF NEW MEXICO**
**COUNTY OF OTERO**
**TWELFTH JUDICIAL DISTRICT COURT**

**BELLEVIEW VALLEY LAND CO.**, a New
Mexico corporation, and **JOHN H. WILLIAMS**
and **ELLEN B. WILLIAMS**, husband and wife,

    Plaintiffs,

v.

                                          **Cause No. CV-2010-01054**
                                          **Judge James Waylon Counts**

**TAMMY SPRAGUE**, Personal Representative
of the Estate of Fred Van Winkle, Deceased,

    Defendant/Petitioner,

and

**BRIAN VAN WINKLE** and **JUDITH A.**
**VAN WINKLE**, husband and wife,

    Defendants-in-Intervention

### PETITIONER'S AMENDED REPLY TO PLAINTIFFS' RESPONSE TO PETITIONER'S MOTION TO SUBSTITUTE TAMMY SPRAGUE, BRIAN VAN WINKLE AND HALEY VAN WINKLE AS PETITIONERS

Petitioner, Tammy Sprague, as personal representative of the estate of Fred Van Winkle,

through her counsel of record, Law Office of Kyle H. Moberly, P.C., replies to Plaintiffs' Response

to Petitioner's Motion to Substitute Tammy Sprague, Brian Van Winkle and Haley Van Winkle as

Petitioners ("**Plaintiffs' Response**") as follows:

Petitioner's Amended Reply to Plaintiffs' Response to
Petitioner's Motion to Substitute Tammy Sprague,
Brian Van Winkle, and Haley Van Winkle as Petitioners

Belleview Valley Land Co v Sprague
CV-2010-01054

Page 1 of 7

**EXHIBIT "14"**

In Plaintiffs' Response, Plaintiffs essentially had the following objections to Petitioner's Motion to Substitute Tammy Sprague, Brian Van Winkle and Haley Van Winkle as Petitioners (the "Motion").[1]

1.    **Assignment of Right of Redemption is Not Fraudulent.** Plaintiffs claim that the Motion is a "blatant fraud upon this court, a fraud upon Plaintiffs, and should not be permitted under any circumstances." More specifically, Plaintiffs claim that Petitioner's assignment of the right of redemption (the "**Assignment**") to Tammy Sprague, Brian Van Winkle and Haley Van Winkle (collectively, the "**Heirs**") "is not bona fide and violates the Uniform Fraudulent Transfer Act." Presumably, Plaintiffs mean that the Assignment violates New Mexico's Uniform Voidable Transactions Act, NMSA 1978, Sections 56-10-14 through 56-10-29, which, prior to 2016, was called the "Uniform Fraudulent Transfer Act." But, even if that is what they meant to say, the Assignment is bona fide and does not violate New Mexico's Uniform Voidable Transactions Act because Petitioner was merely acting on behalf of the Heirs when she filed the Petition for Redemption and, therefore, the Assignment does not transfer anything to the Heirs that did not already belong to them.

Petitioner filed the Petition for Redemption on behalf of the Heirs. This was done for the Heirs' convenience and to provide their counsel a single person to act as their representative

---

[1]    In Plaintiffs' usual fashion, Plaintiffs' Response is long and confusing. As the U.S. Bankruptcy Appellate Panel of the Tenth Circuit (the "**BAP**") stated in its Order Denying [Plaintiffs'] Motion for Attorneys' Fees on Appeal, Plaintiffs "submitted an excessively voluminous (1,679 pages), internally redundant, and mostly unnecessary record on appeal. That record vastly increased the time this Court had to expend deciding this appeal, and most likely caused a similar increase for the [Petitioner]." The same is true of Plaintiffs' Response.

Petitioner's Amended Reply to Plaintiffs' Response to
Petitioner's Motion to Substitute Tammy Sprague,
Brian Van Winkle, and Haley Van Winkle as Petitioners

Belleview Valley Land Co v Sprague
CV-2020-01054

Page 2 of 7

in managing the redemption. They had the right to redeem the real estate that was sold by a special master on July 8, 2014, pursuant to the Final Judgment Foreclosing Plaintiffs' Judgment Lien that the Court entered on May 22, 2014 (the "**Property**"). NMSA 1978, Section 39-5-18(D) provides that the term "owner" includes the owner's "heirs." The Heirs, namely, Tammy Sprague, Brian Van Winkle and Haley Van Winkle, are the heirs of Fred Van Winkle, who owned the Property until he died on April 28, 2014. It was a part of his estate until the special master deeded it to Plaintiffs John H. Williams and Ellen B. Williams pursuant to the above-described sale.

The Heirs borrowed the funds necessary to redeem the Property and they are responsible for repaying that loan. See lines 6 through 9 on page 33 and lines 20 through 24 on page 35 of the transcript of Petitioner's deposition on April 10, 2017, a copy of the pages of that transcript that are cited herein is attached hereto as **Exhibit A** (the "**Transcript of Petitioner's Deposition**"). The estate of Fred Van Winkle did not have sufficient funds to redeem the Property; Fred Van Winkle only had about $1,200 when he died. See lines 3 through 8 on page 27 of the Transcript of Petitioner's Deposition. The Heirs did not loan the funds to the estate of Fred Van Winkle. They merely gave them to Petitioner to hold and disburse on their behalf. See lines 7 through 11 on page 38 of the Transcript of Petitioner's Deposition. The Heirs gave additional funds to Petitioner to disburse on their behalf to purchase their father's interest in their grandmother's farm in Roosevelt County, New Mexico, from his bankruptcy trustee. See lines 20 through 25 on page 40 and lines 1 through 10 on page 41 of the Transcript of Petitioner's Deposition. Plaintiffs have known all of this since at least April 10, 2017. Therefore, it should be no surprise to Plaintiffs that the Heirs are

Petitioner's Amended Reply to Plaintiffs' Response to
Petitioner's Motion to Substitute Tammy Sprague,
Brian Van Winkle, and Haley Van Winkle as Petitioners

Belleview Valley Land Co v Sprague
CV-2010-01054

Page 3 of 7

the real owners of the Petition for Redemption and the funds deposited with the Court to redeem the Property (the "**Funds**").

Petitioner was effectively the Heirs' "nominee." A "nominee" is defined as "[a] person designated to act in place of another, usu. in a very limited way" and also as "[a] party who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others." Black's Law Dictionary 1211 (10th ed. 2014). Petitioner was "designated to act in place of" the Heirs to file the Petition for Redemption. Petitioner "holds bare legal title [to the right of redemption] for the benefit of" the Heirs. Petitioner held the funds the Heirs borrowed to redeem the Property and deposited them into the Court's registry for the Heirs' benefit. Therefore, the Assignment merely transferred Petitioner's bare legal title to the Petition for Redemption and the Funds to the Heirs.

Since the Heirs were the equitable owners of the Petition for Redemption and the Funds prior to the Assignment, the Assignment merely transferred Petitioner's bare legal title to the Petition for Redemption and the Funds to the Heirs. As a result, the Assignment is not a voidable transaction under New Mexico's Uniform Voidable Transactions Act or what used to be call a fraudulent transfer or fraudulent conveyance under prior New Mexico law. *In re Garcia*, 367 B.R. 778 (Bankr. N.M., 2007) (The debtors did not have an equitable interest in the property they conveyed to the parents of one of them shortly before they filed bankruptcy; they had bare legal title only. Therefore, the conveyance was not a fraudulent transfer).

2.     **Heirs are Interested Parties.** Plaintiffs claim that the Heirs are not "interested parties" as a result of the Assignment because the Assignment was not effective. This claim is based

Petitioner's Amended Reply to Plaintiffs' Response to
Petitioner's Motion to Substitute Tammy Sprague,
Brian Van Winkle, and Hilary Van Winkle as Petitioners

Belleview Valley Land Co v Sprague
CV-2010-01054

Page 4 of 7

Case 13-11743-t7     Doc 122-2     Filed 10/29/20     Entered 10/29/20 17:03:37 Page 55 of 63

on Plaintiffs' assertion that the right of redemption could not be assigned to the Heirs because Petitioner had "already exercised [it] and [therefore it] is no longer a valid right."

There is nothing in the statute authorizing and governing the exercise of the right of redemption, NMSA 1978, Section 39-5-18, that prohibits the assignment of the right of redemption after a party files a petition for redemption. Furthermore, the New Mexico Court of Appeals mentioned, without objection, in its opinion in *HSBC Bank USA v. Fenton*, 2005-NMCA-138, Note 1, 138 N.M. 665, 125 P.3d 644, that the district court that presided over that case allowed a party "to be designated as a petitioner by substitution for" a party who originally filed a petition for redemption. Thus, Petitioner could assign the right of redemption to the Heirs after she filed the Petition for Redemption.

Furthermore, as described in more detail above, the Heirs were the equitable owners of the Petition for Redemption and the Funds prior to the Assignment and, therefore, they are the real parties in interest with respect to the Petition for Redemption.

3.    **Substitution of Heirs as Petitioner is Necessary and Does Not Prejudice Plaintiffs.** Plaintiffs claim that substitution of the Heirs for Petitioner is not necessary and is not permitted due to prejudice to Plaintiffs, including that it will delay this proceeding. Petitioner denies that claim.

The certificate of redemption that the clerk of the court issues after the conclusion of the hearing of the Petition for Redemption will presumably be issued to whomever is the petitioner. Therefore, in order for that certificate to be issued to the real parties in interest, which are the Heirs, they must be allowed to be designated as the petitioner by substitution.

Petitioner's Amended Reply to Plaintiffs' Response to
Petitioner's Motion to Substitute Tamary Sprague,
Brian Van Winkle, and Haley Van Winkle as Petitioners

Bellevista Valley Land Co v Sprague
CV-2010-01031

Page 5 of 7

Plaintiffs will not be prejudiced by the substitution of the Heirs for Petitioner because the Heirs are the real owners of the Petition for Redemption and the Funds and they always have been and Plaintiffs have known that for a long time.

Substitution of the Heirs for Petitioner will not delay the hearing of the Petition for Redemption or Plaintiffs' Complaint to Foreclose Judgment Lien and/or Deficiency Judgment Lien and its Motion for Summary Judgment to Foreclose Judgment Lien, both of which should be denied as being premature as stated by the BAP in its opinion (see discussion below). Petitioner would have filed the Motion over three years ago if the parties had not agreed to stay this proceeding while they resolved in bankruptcy court Petitioner's claim that Plaintiffs violated the bankruptcy discharge injunction. Therefore, the Motion and, if it was granted, any issues raised by the substitution of the Heirs for the Petitioner would have had to have been heard and addressed eventually, unless Plaintiffs had been found to have violated the discharge injunction.

The Court should pay no heed to Plaintiffs' plea that "this Court . . . not delay this proceeding any further." Plaintiffs are responsible for most of the delay since the Petition for Redemption was filed. As the BAP stated in its opinion, "the record is replete with examples where positions taken by the [Plaintiffs] appeared to be an unnecessarily relentless pursuit to collect the Judgment Lien, often without regard to the law or the practicalities of litigation" and that Plaintiffs "were 'litigious' and 'aggressive,' including: the premature filing of the second foreclosure on the Otero Land [which is the subject of Plaintiffs' Complaint to Foreclose Judgment Lien and/or Deficiency Judgment Lien and its Motion for Summary Judgment to Foreclose Judgment Lien] prior to the state court declaring the redemption effective and while it still held title; improperly delaying

Petitioner's Amended Reply to Plaintiffs' Response to
Petitioner's Motion to Substitute Tammy Sprague,
Brian Van Winkle, and Haley Van Winkle as Petitioner

Belleview Valley Land Co v Sprague
CV-2010-01054

Page 6 of 7

the redemption process by arguing [Petitioner] must pay the entire amount due on the First Mortgage (sic) [should be Judgment Lien] to properly redeem, which was clearly unsupported by state law . . ." *Sprague v. Williams (In re Van Winkle)*, 583 B.R. 759, 773 (B.A.P. 10th Cir., 2018). Any further delay in this proceeding caused by the Court considering and granting the Motion will pale in comparison to the delays caused by Plaintiffs' "aggressive" and "unnecessarily relentless" efforts to collect the remainder of its judgment over the last three years.

For the foregoing reasons, and for the reasons stated in the Motion, the Motion should be granted and the Heirs should be substituted as petitioners in this matter.

Respectfully submitted,

**LAW OFFICE OF KYLE H. MOBERLY, P. C.**

By:     /s/ *Kyle H. Moberly*
         Kyle H. Moberly
         State Bar # 245
         Attorney for Petitioner
         2460 S. Locust Ste. E
         Las Cruces, NM 88001
         (575) 541-1278

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2018, Petitioner's Amended Reply to Plaintiffs' Response to Petitioner's Motion to Substitute Tammy Sprague, Brian Van Winkle and Haley Van Winkle as Petitioners was served on Plaintiffs' counsel of record electronically through the Odyssey File & Serve/Tyler Technology system.

/s/ *Kyle H. Moberly*
**KYLE H. MOBERLY**

Petitioner's Amended Reply to Plaintiffs' Response to
Petitioner's Motion to Substitute Tammy Sprague,
Brian Van Winkle, and Haley Van Winkle as Petitioners

Belleview Valley Land Co v Sprague
CV-2010-01054

Page 7 of 7

Sprague v Williams, et al.
Adv No. 15-010471

# Exhibit A

Tammy Sprague
April 10, 2017

---

**Page 1**

```
 1         IN THE UNITED STATES BANKRUPTCY COURT
 2             FOR THE DISTRICT OF NEW MEXICO
 3   In Re:
 4   FRED DALE VAN WINKLE,
 5                          Debtor,   No. 13-1174 t7
 6
 7   TAMMY SPRAGUE, PERSONAL REPRESENTATIVE
     OF THE ESTATE OF FRED DALE VAN WINKLE,
 8
 9                          Plaintiff,
10   -vs-                   Adv. No. 15-010471
11   JOHN WILLIAMS AND ELLEN B.
     WILLIAMS, husband and wife
12   and BELLEVIEW VALLEY LAND CO., INC.,
13                          Defendants.
14
15            DEPOSITION OF TAMMY SPRAGUE
16
17            April 10, 2017
              9:05 a.m. to 11:34 a.m.
              443 Mechem Drive
18            Ruidoso, New Mexico
19
     PURSUANT TO THE BANKRUPTCY RULES OF CIVIL
20
     PROCEDURE, this deposition was:
21
22   TAKEN BY:  W.T. MARTIN, JR. ESQ.
                ATTORNEY FOR DEFENDANTS
23
24   REPORTED BY:  JAN WIMBERLY, CCR No. 13
                   Dunn's & Reporting Service
                   P.O. Box 2812
25                 Alamogordo, New Mexico  88311-2022
```

---

**Page 3**

```
 1                      INDEX
 2                                PAGE
 3   TAMMY SPRAGUE
 4   Examination by Mr. Martin           4
 5   Reporter's Certificate             79
 6   Signature/Correction Page          81
 7
 8                   EXHIBITS
 9   EXHIBIT       DESCRIPTION         PAGE
10   Exhibit No. 1  Check No. 10005, $147,000    31
11   Exhibit No. 2  Wells Fargo statement, August   32
                    2014
12
     Exhibit No. 3  Court Order                 39
13
14
15
16
17
18
19
20
21
22
23
24
25
```

---

**Page 2**

```
 1            APPEARANCES
 2   For the Plaintiff
 3      ARVIZU LAW OFFICE
        P.O. Box 1479
 4      Las Cruces, NM 88004-1479
        575-527-8600
 5      BY: R. TREY ARVIZU III, ESQ.
 6   For the Defendants:
 7      MARTIN, DUGAN & MARTIN
        P.O. Box 2168
 8      Carlsbad, NM 88221-2168
        505-887-3528
 9      BY: W.T. MARTIN, JR., ESQ
10
11   ALSO PRESENT: John Williams
12
13   TRANSCRIPTION NOTE:
14
     Ellipses points (...) at the end of a sentence
15   denote an incomplete thought or sentence.
16   A dash (--) indicates an interruption of speaker or
     a change of thought.
17
     "[sic]" means "thus" or "so." If the attorney or
18   deponent misuses or mispronounces a word, "[sic]" is
     used to show it is not the reporter's error.
19
20
21
22
23
24
25
```

---

**Page 4**

```
 1            TAMMY SPRAGUE,
 2   having been first duly sworn, testified as follows:
 3            EXAMINATION
 4   BY MR. MARTIN:
 5      Q.  Would you state your full name, please.
 6      A.  Tammy Laree Sprague -- Van Winkle-Sprague.
 7   Van Winkle is my maiden name.
 8      Q.  Have you ever given a deposition before?
 9      A.  I have not.
10      Q.  Okay.  Well, I'm not one of these to go
11   and spend 30 minutes on how it works or ground
12   rules, but let me go through a couple of things.  If
13   you do not understand the question I've asked,
14   please tell me.  And can we have an agreement that
15   if you don't -- if you don't understand a question,
16   you're going to tell me; otherwise, if you don't, we
17   can -- it's understood that you do understand the
18   question and are able to answer it to the best of
19   your knowledge and ability?
20      A.  Yes.
21      Q.  Okay.  You had said a moment ago that you
22   didn't feel very good today.  Is there any reason
23   why your health condition would stop you from giving
24   this deposition today?
25      A.  Probably just irritability more than
```

---

Sprague v Williams, et al.
Adv No. 15-010471

Page 25

1 Q. And I believe your brother Brian Van
2 Winkle and your sister Haley Van -- I'm sorry this
3 is daughter -- yeah, your sister Haley Van Winkle
4 each consented to you being the personal
5 representative?
6 A. Correct.
7 Q. Now your dad, according to this, had no
8 Will --
9 A. Correct.
10 Q. -- is that correct? Did you do a search
11 for a Will?
12 A. We did.
13 Q. And you could not find one?
14 A. No.
15 Q. When did you complete your inventory of
16 the estate?
17 A. I have not -- I'm sorry, can you give me a
18 little bit more detail of what you're asking?
19 Q. What I asked you is when did you complete
20 the inventory of the estate.
21 A. Nothing filed as far as in the probate,
22 just when I actually assessed what was in my
23 father's possession.
24 Q. So you have never filed an inventory in
25 the probate; is that correct?

Page 26

1 A. I have not. I have been told that we had
2 three years to make that filing. I was told that in
3 the Carrizozo courthouse, they told me that I had
4 three years. And this has been complicated with the
5 bankruptcy court, and so I haven't completed it.
6 Q. So you at this point have not completed an
7 inventory?
8 A. I did complete an inventory of what he had
9 as far as his bills and things like that.
10 Q. We'll come back to that in just a second.
11 A. All right.
12 Q. Who told you that you had three years to
13 file an inventory?
14 A. The clerk. When I filed -- when I got the
15 application, she said that I had up to three years
16 to take to wrap everything up.
17 Q. Do you ever recall being told that you had
18 90 days to file an inventory under the Probate Code?
19 A. I do not.
20 Q. Do you ever recall that?
21 A. I do not.
22 Q. Or three months?
23 A. I do not.
24 Q. Okay. So where we are, if I understand
25 this correctly, is you have not filed an inventory

Page 27

1 at this point in time in the probate proceeding?
2 A. I have not filed anything.
3 Q. Okay. What have you determined was in the
4 estate at the time of his death?
5 A. The cash, small amount of cash in his
6 checking account.
7 Q. And that was how much?
8 A. Approximately $1,200.
9 Q. And what else was in his estate?
10 A. The property tied up in litigation.
11 Q. That would be the Otero County property,
12 Lincoln County property, Roosevelt County property?
13 A. Correct. But there is confusion on my
14 part, because it was tied up in the bankruptcy
15 hearings, as to whether or not it was still -- had
16 been released or not.
17 Q. Okay. Any other property besides the real
18 estate and the $1,200 cash?
19 A. Furnishings in his home.
20 Q. Okay. Anything else?
21 A. Personal -- personal effects, clothing.
22 Q. At the time --
23 A. A vehicle.
24 Q. Vehicle, okay.
25 A. Um-hmm.

Page 28

1 Q. At the time of his death, did he have any
2 sources of income?
3 A. Social Security.
4 Q. Any other sources of income?
5 A. No, other than the -- he received -- once
6 a year, he did receive money from the USDA, but that
7 was also relinquished to the bankruptcy court when
8 it came in.
9 Q. And that's on the crop program, correct?
10 A. Correct, um-hmm.
11 Q. Are you still -- is the estate still
12 continuing to receive the crop payment from USDA?
13 A. Yes, um-hmm.
14 Q. When is the last time the estate received
15 a payment?
16 A. In October of 2016. And it is set to
17 expire in October of 2017.
18 Q. The program's ending at that time, is it
19 not?
20 A. Correct.
21 Q. Did the estate receive a payment from the
22 USDA for 2016?
23 A. In October of 2016.
24 Q. What about 2015?
25 A. Yes.

Page 33

1 Representative.
2 Q. Now, does that particular document contain
3 information that you deposited this $147,000 check
4 into that account?
5 A. Yes, it does.
6 Q. In your answers to the interrogatories in
7 relation to this $147,000, you indicated that this
8 was a loan to you; is that correct?
9 A. Correct.
10 Q. Who loaned you the money?
11 MR. ARVIZU: Objection. I'm going to
12 instruct my client not to answer the question.
13 MR. MARTIN: What is your reason?
14 MR. ARVIZU: This is under review by
15 Judge Thuma, there's a motion to compel that's been
16 filed and he has not ruled on the motion to compel.
17 MR. MARTIN: So you are refusing to answer
18 that --
19 MR. ARVIZU: Yes.
20 MR. MARTIN: -- today.
21 MR. ARVIZU: Yes.
22 MR. MARTIN: On the basis that Judge Thuma
23 has not ruled on the motion to compel?
24 MR. ARVIZU: Correct.
25 MR. MARTIN: Let me ask you this, so we

Page 34

1 can get it on the record --
2 MR. ARVIZU: Okay.
3 MR. MARTIN: -- Trey. What is -- other
4 than the fact that it is the subject of a motion to
5 compel, what is your basis for objecting to the
6 disclosure of who loaned the money?
7 MR. ARVIZU: Client's request.
8 MR. MARTIN: Let me put on the record that
9 that is not a valid reason for refusal to answer the
10 question or respond. The question directly relates
11 to issues in this case and if it doesn't directly
12 relate to this issues in this case, it certainly
13 leads to evidence that is relevant.
14 Q. (By Mr. Martin) Let me ask you this: You
15 have direct -- you have said you do not want to have
16 the name of the person that loaned you this money to
17 be disclosed --
18 A. Correct.
19 Q. -- is that correct?
20 A. Correct.
21 Q. Why do you not want to disclose who loaned
22 you the money?
23 A. They asked not to be disclosed.
24 Q. Have you signed a promissory note to them?
25 A. Yes, I have.

Page 35

1 Q. Is this more than one person?
2 A. I don't know.
3 Q. You don't know?
4 A. I don't know. It was a single person that
5 gave me the loan.
6 Q. And you have signed a promissory note?
7 A. I have signed a personal agreement in the
8 form of informal promissory note.
9 Q. So it's not a promissory note, it's just
10 some document that is an informal agreement?
11 A. It has not been filed anywhere that I'm
12 aware of.
13 Q. What are your terms of repayment?
14 A. Upon the settlement of the redemption and
15 the sale of the property.
16 Q. So as I understand your answer, your terms
17 of repayment are dependent upon what happens with
18 the redemption?
19 A. Correct.
20 Q. What is your obligation to repay, if you
21 are not successful in the redemption?
22 A. Then my brother, my sister and I will
23 divide the debt in three ways and make personal
24 payments.
25 Q. Are you making any payments on this debt

Page 36

1 now?
2 A. Not at this time.
3 Q. Is the lender a person or is it some kind
4 of entity of some nature?
5 A. I would assume that it came from a holding
6 company.
7 Q. You would assume that it came from a
8 holding company?
9 A. It came from a holding company.
10 Q. What type of holding company?
11 A. A personal holding company.
12 Q. What kind of business is this holding
13 company in?
14 A. I would assume that they are going to be
15 holding profits that they made from personal
16 business.
17 Q. To your knowledge, what type of business
18 does this holding company conduct or engage in at
19 the present time?
20 A. I don't know.
21 Q. Do you have an ownership interest in this
22 holding company?
23 A. No, I do not.
24 Q. Does your husband have an ownership
25 interest in this holding company?

Sprague v Williams, et al.
Adv No. 15-010471

Page 37

1  A. No, we do not.
2  Q. Do any of your other family members have
3  an ownership interest in this holding company?
4  A. No.
5  Q. How did you find this holding company?
6  A. I didn't find a holding company.
7  Q. How did you become aware of this holding
8  company?
9  A. I borrowed money from the individual that
10 owns the holding company.
11 Q. How did you become aware of the
12 individual?
13      MR. ARVIZU: Hey, Tom.
14      MR. MARTIN: Yes.
15      MR. ARVIZU: Let's stop this right now.
16 Let's not go down this road, let's just hold off on
17 this until Judge Thuma takes the motion to compel --
18      MR. MARTIN: I haven't asked for the
19 identity.
20      MR. ARVIZU: I understand, but you're
21 playing 20 questions here.
22      MR. MARTIN: Well, I have every right to.
23      MR. ARVIZU: Well, I'm just saying let's
24 hold off on this line of questioning.
25      MR. MARTIN: I'm not going to stop.

Page 38

1      MR. ARVIZU: Well, I'm going to instruct
2  you not to answer any further questions on this.
3      MR. MARTIN: And I'm going to enter an
4  objection to the instruction to stop responding to
5  perfectly legitimate discovery questions. Give me
6  just a moment, please.
7  Q. (By Mr. Martin) You deposited the $147,000
8  into the estate account to make it an asset of the
9  estate, correct?
10 A. I deposited it into there to disburse it
11 out of there.
12 Q. For?
13 A. For business.
14 Q. Of the estate?
15 A. For business of the estate, correct.
16 Q. What did you pledge to secure this debt?
17 A. Nothing. My name.
18 Q. In 2015, you -- and when I say "you," I'm
19 talking in terms of the estate or you as personal
20 representative -- you started the process of
21 attempting to redeem the property in Otero County?
22 A. Correct.
23 Q. And did you deposit an amount in the court
24 registry which was $73,200.94?
25 A. I believe that's the right amount.

Page 39

1  Q. Again, this is public record, but let me
2  mark that as Exhibit 3. This is a conformed copy of
3  a -- or filed-stamped copy of an order. Do you
4  recognize that document?
5      (Exhibit No. 3 marked.)
6  A. Yes, I do.
7  Q. Okay. And does that document reflect the
8  amount that was deposited into the court registry?
9  A. I believe it does.
10 Q. Okay. Where did the $73,200.94 come from?
11 A. Out of that $147,000.
12 Q. Did you write the check?
13 A. Yes, I did.
14 Q. And did you write the check on or about
15 April 20, 2015?
16 A. This is dated April 21st, and so I'm
17 assuming that I wrote it that day.
18 Q. Okay. And do you have the canceled check?
19 A. It would be a matter of bank record, yes.
20 Q. Do you have the bank statement for April
21 of 2015 on the estate?
22 A. Yes.
23 Q. And would you have a copy of the canceled
24 check?
25 A. It would be an electronic copy.

Page 40

1  Q. Understood. But do you have a copy of
2  that?
3  A. There should be a copy with the bank
4  statement, I can't verify that.
5  Q. I would ask your attorney to have you
6  provide us with a copy of that particular bank
7  statement, please.
8  A. The entire statement?
9  Q. Yes, ma'am.
10 A. Okay.
11 Q. How long do you think it would take you to
12 be able to find that copy and, through your
13 attorney, provide us with that?
14 A. A week, four days, five days.
15 Q. Fairly quickly then?
16 A. Yes.
17 Q. Okay. Can we agree on trying to get it
18 done within five days?
19 A. Yes.
20 Q. Now, out of this $147,000 that was loaned
21 and it became an estate asset, did you use the
22 remainder of the money for estate purposes?
23 A. I used 12,500 to purchase my grandmother's
24 farm back from the bankruptcy trustee.
25 Q. Do you still -- does the estate still have

Sprague v Williams, et al.
Adv No. 15-010471

Tammy Sprague
April 10, 2017

Page 41

1  that property in Roosevelt County?
2     A.  It was deeded over to me and my brother
3  and my sister.  We were able -- we obtained it
4  through the bankruptcy trustee.
5     Q.  So title to that undivided one-half
6  interest is in the three children?
7     A.  Correct.
8     Q.  And that's where the title is as of today;
9  is that correct?
10    A.  Yes, that's correct.
11    Q.  Do you have it under contract for sale or
12  anything, or are you just --
13    A.  No, I do not.
14    Q.  -- are you all just holding it right now?
15    A.  It's family property on my mother's side,
16  no intent to sell.
17    Q.  Okay.
18       MR. MARTIN:  Give me just a moment,
19  please.
20    Q.  (By Mr. Martin) You obtained the $147,000
21  check on approximately August 22nd, 2014, that's the
22  date of the check?
23    A.  Correct.
24    Q.  And you did not attempt to exercise the
25  redemption until April of 2015.  What was your

Page 42

1  reason for waiting so long to attempt to exercise
2  the redemption?
3     A.  It just took me that long to get
4  everything in order and to hire appropriate counsel.
5     Q.  Now, when you say to "get everything in
6  order," explain that, please.  What do you mean "get
7  everything in order"?
8     A.  It just took me that long to take action,
9  that's all I can say.
10    Q.  Why didn't you attempt to start the
11  redemption shortly after you obtained the $147,000?
12    A.  Because I wasn't clear on what the ruling
13  was on the position, I just needed legal counsel.
14    Q.  I'm not asking what counsel said, so
15  please understand that.  At that time, you had
16  Mr. Arvizu, who had been representing your dad --
17    A.  Correct.
18    Q.  -- and now you, correct, as far as the --
19    A.  Correct.
20    Q.  I'm not asking what he's told you, so
21  again understand that, but did you attempt to obtain
22  advice from him about the redemption?
23    A.  Yes.
24    Q.  Did you seek a second opinion on the
25  redemption?

Page 43

1     A.  Yes.
2     Q.  Was is this Mr. --
3     A.  Moberly.
4     Q.  Is that how you pronounce it, Moberly?
5     A.  Correct, un-hmm.
6     Q.  I'm not asking, again, what either one
7  said, okay?
8     A.  Um-hmm.
9     Q.  Please understand that.  Was there a
10  difference of opinion between Mr. Arvizu and
11  Mr. Moberly about the redemption and the exercising
12  of the redemption?
13    A.  None that I'm aware of.
14    Q.  Okay.  Let me jump, if I may, to another
15  topic.  There was some discussion prior to the start
16  of this deposition about the issue of damages based
17  upon the partial summary judgment entered by the
18  bankruptcy court.  Can you tell me what damages you
19  are claiming at this point?
20    A.  I would be claiming my attorneys' fees,
21  both Mr. Moberly and Mr. Arvizu.
22    Q.  Do you know what those amounts are?
23    A.  Mr. Arvizu is 16,000 plus.
24    Q.  In relation to the -- is that the entire
25  charge for his representation in the bankruptcy?

Page 44

1     A.  That is his representation from the time
2  that we began the redemption.
3     Q.  And what are Mr. Moberly's charges?
4     A.  I can get you the exact amount.
5     Q.  Okay.
6     A.  $9,167.20.
7     Q.  And what documents are you looking at?
8     A.  Just my own personal notes.
9     Q.  And again, on Mr. Moberly, are you
10  claiming that that is in relation to the redemption?
11    A.  Yes, sir.
12    Q.  Okay.  And not his entire representation
13  of you?
14    A.  He didn't represent me until we started
15  the redemption process.
16    Q.  Didn't he represent the -- if I've got my
17  timing correct, didn't he represent the estate when
18  there was the issue of trespass?
19    A.  No, sir, he did not.
20    Q.  And the deed that you did?
21    A.  No, he did not.  I represented --
22    Q.  Why was he in court then?
23    A.  Because he represented Mr. Pete Joyce.  I
24  represented myself pro se.
25    Q.  Are any of his charges in relation to